IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: CHASE BANK USA, N.A. "CHECK LOAN" CONTRACT LITIGATION<br><br>_____<br><br>THIS DOCUMENT RELATES TO:<br>   ALL CASES<br>_____/ | MDL No. 2032<br><br>Case No. 3:09-md-2032 MMC<br><br>**ORDER GRANTING PLAINTIFFS' MOTION TO CERTIFY CLASS; GRANTING DEFENDANTS' MOTION TO FILE SUPPLEMENTAL DECLARATION; DENYING DEFENDANTS' MOTION TO STRIKE; DIRECTIONS TO PARTIES** |

     Before the Court is plaintiffs' Motion for Class Certification, filed October 15, 2010. Defendants Chase Bank U.S.A., N.A., Chase Issuance Trust and JPMorgan Chase & Co. (collectively, "Chase") have filed opposition, to which plaintiffs have replied.[1]  The matter came on regularly for hearing March 18, 2011. Elizabeth J. Cabraser of Lieff, Cabraser, Heimann & Bernstein, LLP appeared on behalf of plaintiffs. Julia B. Strickland of Stroock & Stroock & Lavan LLP appeared on behalf of Chase. Having read and considered the

---

[1] On March 4, 2011, after plaintiffs had filed their reply, Chase filed an Administrative Motion for Leave to File a Supplemental Declaration; plaintiffs filed opposition thereto. Each exhibit attached to the proposed supplemental declaration consists of further excerpts from deposition transcripts previously offered by plaintiffs. Because the additional excerpts provide context for the excerpts on which plaintiffs rely, the Court hereby GRANTS Chase's administrative motion, see Fed. R. Evid. 106, and deems the Supplemental Declaration of Robert L. Klein (see Document No. 144-1) filed as of the date of its submission.

parties' respective written submissions, including the parties' respective supplemental submissions filed with leave of court after the hearing, and having considered the oral arguments, the Court rules as follows.

**BACKGROUND**

In the operative complaint, the Master Class Action Complaint filed July 26, 2009 ("MCAC"), plaintiffs allege a claim for breach of the implied covenant of good faith and fair dealing.[2] According to plaintiffs, each plaintiff has or had a credit card issued by Chase pursuant to a "Cardmember Agreement," which agreement stated, at the time plaintiffs borrowed the funds at issue herein, that the cardholder must make a minimum monthly payment of 2% of the outstanding balance, and, additionally, that Chase reserved the right to change the terms of the Cardmember Agreement. (See MCAC ¶¶ 1, 31, 33, 38.) Plaintiffs also allege they each received from Chase a solicitation that included "credit card checks" with "two options," one of which provided a loan with a "fixed APR until the balance is paid in full"; each plaintiff accepted that option. (See MCAC ¶¶ 1, 26.)[3]

In November 2008, Chase advised some of the plaintiffs, by written notice, that Chase was raising the minimum monthly payment from 2% to 5% of the balance on their respective accounts, and, in June 2009, notified those plaintiffs who had not been mailed the November 2008 notice that their minimum monthly payment was increasing from 2% to 5%. (See MCAC ¶¶ 39-40.) According to plaintiffs, Chase's intent in sending such notices was to "force [p]laintiffs and [c]lass members to (a) accept higher APR loans to maintain the 2% minimum payment requirement, (b) make a late payment and trigger a penalty APR – generally 29.99% – and late fees, and/or (c) pay off or transfer the loans to other available credit sources, thus shortening the life of what Chase views is an underperforming investment." (See MCAC ¶ 131.)

---

[2] All other claims alleged in the MCAC were dismissed by order filed November 20, 2009.

[3] Further details concerning plaintiffs' allegations as to the nature of the offers are set forth in the Court's November 20, 2009 order. (See Order at 2:21-3:27.)

Plaintiffs seek to proceed with their claim on behalf of a class, specifically, persons who "entered into a loan agreement with Chase, whereby Chase promised a fixed APR until the loan balance was paid in full, and (i) whose minimum monthly payment was increased by Chase to 5% of the outstanding balance, or, (ii) who were notified of a minimum payment increase by Chase and subsequently closed their account or agreed to an alternative change in terms offered by Chase." (See Pls.' Mot. at i:8-11.)

## DISCUSSION

A plaintiff, to be entitled to an order certifying a class, must "establish[ ] the four prerequisites of [Rule] 23(a)," see Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996), which are as follows: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." See Fed. R. Civ. P. 23(a).

Further, the plaintiff must establish "at least one of the alternative requirements of [Rule] 23(b)." See Valentino, 97 F.3d at 1234. Rule 23(b)(3), upon which plaintiffs herein rely, provides for certification of a class where "the court finds that the questions of law or fact common to members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." See Fed. R. Civ. P. 23(b)(3).

**A. Rule 23(a)**

For the reasons stated below, the Court finds plaintiffs have established the four prerequisites of Rule 23(a).

**1. Rule 23(a)(1): Numerousity**

Because the proposed class consists of approximately 1,050,000 "account" holders (see Gibbs Decl., filed October 15, 2010, Ex. 20 at 16, 19), the Court finds the class is "so numerous that joinder of all members is impracticable." See Fed. R. Civ. P. 23(a)(1).

//

### 2. Rule 23(a)(2): Commonality

"A class has sufficient commonality if there are questions of fact and law which are common to the class," but "[a]ll questions of fact and law need not be common to satisfy the rule." See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998) (internal quotation and citation omitted).

As noted above, plaintiffs allege Chase breached the implied covenant of good faith and fair dealing implicit in the Cardmember Agreement. Under Delaware law, "the implied covenant requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party from receiving the fruits of the bargain." See Dunlap v. State Farm Fire & Casualty Co., 878 A.2d 434, 442 (Del. 2005).[4] To determine whether a defendant's conduct prevented the other party from receiving the fruits of the bargain, a court "must assess the parties' reasonable expectations at the time of contracting." See Nemec v. Shrader, 991 A.2d 1120, 1126 (Del. 2010).

Plaintiffs argue that the determination of whether Chase's conduct prevented plaintiffs from receiving the fruits of the bargain presents questions of fact and law common to the class. The Court agrees.

Chase's internal records indicate that each member of the proposed class was subjected to the same discretionary act, specifically, Chase's decision to raise the minimum monthly payment requirement as to any cardholder who fell within specified objective criteria (see Gibbs Decl., filed October 15, 2010, Ex. 2 at 111-17, 127-29), and that Chase made its decision for uniform reasons (see, e.g., id. Ex. 2 at 128-29). Under such circumstances, the determination of whether Chase's conduct was "arbitrary or unreasonable," see Dunlap, 878 A.2d at 442, presents a common issue of both fact and

//
//

---

[4]The parties agree that Delaware law applies.

4

law.[5]

Moreover, the reasonable expectations of the class are measured by an objective standard,[6] and, as plaintiffs argue, can be determined here with evidence common to the class. Indeed, both parties have offered expert evidence as to then prevailing standards in the industry. (See, e.g., Levitin Decl., filed October 15, 2011, ¶ 32 (opining that "[f]or nearly two decades, the credit card industry standard for minimum monthly payments has been between 2% and 2.5%" and that any increases "have been applied to [a provider's] entire card portfolios, rather than to select subsets of non-defaulted cardholders");[7] James Decl., filed December 22, 2010, ¶¶ 18-19 (opining that after January 2003, "many large issuers of bank credit cards increased the minimum payment requirements" and that such "upward trend was widely reported in news media").) In addition, Chase has offered survey results to support its argument that cardholders did not have a reasonable expectation that minimum monthly payments would not change. (See Klein Decl., filed December 22, 2010,

---

[5] Contrary to Chase's argument, plaintiffs are not required to prove that each plaintiff relied to his or her detriment on a fraudulent statement. The authority on which Chase cites for such proposition, Merrill v. Crothall-American, Inc., 606 A.2d 96 (Del. 1992), is distinguishable, as that case, in contrast to the instant complaint, involved a claim that an employer fraudulently induced the plaintiff to enter into a contract.

[6] Chase cites no Delaware authority for its contention that the subjective expectations of each class member must be considered, and, to the extent Chase proposes the Court certify such issue to the Delaware Supreme Court, the Court declines to do so. The Delaware Supreme Court has held the test for determining the "reasonable expectations" of a contracting party, for purposes of a claim alleging the breach of an express contractual provision, is objective. See Steigler v. Insurance Co. of North America, 384 A.2d 398, 401 (Del. 1978) (holding ambiguous term in contract "should be read to accord with the reasonable expectations of an ordinary purchaser," specifically, the meaning an "ordinary person" would give said term). Neither Steigler nor any other case of which the Court is aware suggests the Delaware Supreme Court would hold differently where the claim concerns an alleged breach of an implied term or covenant.

[7] Contrary to Chase's argument, the opinions offered by Professor Adam J. Levitin, the expert disclosed by plaintiffs, are not inadmissible. Professor Levitin's declaration includes facts (see, e.g., Levitin Decl. ¶¶ 2-5) demonstrating he has sufficient "knowledge and experience" to offer his opinions as to the historical practices of credit providers. See Hangarter v. Provident Life & Accident Ins. Co., 373 F.3d 998, 1017-18 (9th Cir. 2000) (setting forth test for admissibility of non-scientific expert opinion). To the extent Chase's argument bears on said declarant's credibility as opposed to his qualifications (see, e.g., Defs.' Mot. to Strike, filed December 22, 2010, at 9:8-17), such argument goes to the weight of the proffered evidence, not its admissibility. See Hangarter, 373 F.3d at 1017 n. 14. Accordingly, Chase's motion to strike the declaration is DENIED.

¶¶ 10-11.)

Chase argues commonality nonetheless is lacking by reason of differences in the language used in the various form letters by which the offers were made. Chase first made the argument in its written opposition, but failed to identify any particular differences on which Chase relied. At the hearing conducted March 18, 2011, the Court noted that deficiency, and afforded the parties leave to submit supplemental briefing and/or evidence to address the issue of whether the offers contained any material differences. In its supplemental submission, Chase points to differing suggestions as to how a cardholder might use the funds obtained by the credit card checks;[8] relying on such distinctions, Chase argues that a cardholder's reasonable expectations as to whether or not the terms of the loan would change will differ based on the use of the funds. In other words, Chase contends, the reasonable expectations of a cardholder who borrowed funds to remodel a kitchen will differ from the reasonable expectations of a cardholder who borrowed funds to take a vacation.

The Court is not persuaded that reasonable expectations as to the terms of the loans will vary based on the cardholder's anticipated use of the funds. As plaintiffs point out in their supplemental submission, each offer sets forth the same basic terms, specifically, that the cardholder, in return for payment of a transaction fee, could use a check to borrow funds, which funds were to be repaid to Chase at a fixed APR. (See Pls.' Supp. Filing, filed April 15, 2011, Exs. A, B, C); see, e.g., Allapattah Services, Inc. v. Exxon Corp., 333 F.3d 1248, 1260-61 (11th Cir. 2003) (holding where agreements for sale of gas to plaintiff gasoline dealers were "materially similar" and defendant allegedly "reduced the price of wholesale gas for all dealers," issue of whether defendant breached implied duty of

---

[8]For example, one offer suggested that cardholders "write checks to retailers, contractors, car dealers, or anyone else who accepts checks." (See MCAC Ex. A at second unnumbered page.) Another offer suggested: "Take a vacation"; "Make home renovations"; "Cover educational expenses"; "Purchase home furnishings"; "Transfer high rate balances"; "Do whatever you choose." (See MCAC Ex. A at fifth unnumbered page.) Another offer suggested: "Take a tropical vacation"; "Get a new computer"; "Spruce up the kitchen"; "Make a down payment on a car"; "Buy a new couch"; "Do whatever you choose." (See MCAC Ex. A at thirteenth unnumbered page.)

6

good faith and fair dealing when it stopped providing reduction "was a question common to the class").

Chase additionally argues that plaintiffs have not shown commonality as to injury. Contrary to Chase's argument, however, no plaintiff has conceded he or she has not been injured, and, to the extent the amount of damages incurred by any particular class member may differ,[9] such differences do not defeat certification, even where individualized evidence may be necessary for purposes of a damages calculation. See Yokoyama v. Midland Nat'l Life Ins. Co., 594 F.3d 1087, 1094 (9th Cir. 2010) (holding "individualized issues sufficient to render class certification inappropriate" do not include individualized issues pertaining to "damage calculations").

Accordingly, the Court finds plaintiffs have demonstrated commonality.

**3. Rule 23(a)(3): Typicality**

"The typicality requirement looks to whether the claims of the class representatives [are] typical of those of the class, and [is] satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." See Rodriguez v. Hayes, 591 F.3d 1105, 1124 (9th Cir. 2010) (alterations in original) (internal quotations and citations omitted).

Here, the claims of each named plaintiff and class member are based on the same conduct by Chase, specifically, Chase's decision to change the terms of the subject loans, and rely on the above-referenced common evidence to make similar, if not the same, arguments in support of liability. Such showing is sufficient to demonstrate typicality, see id., and Chase's arguments to the contrary are not persuasive.

First, Chase asserts some versions of the Cardmember Agreement include a provision that states: "Your account is a consumer account and should be used only for personal, family or household purposes." (See O'Donnell Decl., filed December 22, 2010,

---

[9] Some class members, for example, retained the 2% minimum monthly payment by agreeing to pay a higher interest rate, while others did not accept a higher interest rate and, instead, made higher minimum monthly payments.

7

Ex. A2 ¶ 2.) Chase asserts it has a contractual right to close the account of a cardholder whose agreement includes such provision and who did not use the funds for one of the specified purposes. Chase contends that at least one of the named plaintiffs, Brian Wilkinson, used the funds for an unspecified purpose, and argues any such cardholder's claim would not be typical. Chase does not contend, however, it has in fact closed any account based on an unspecified use. Moreover, if Chase were to close the account of any such class member,[10] and, by so doing, in some manner affected the calculation of damages, any such difference, as discussed above, would not defeat certification. See Yokoyama, 594 F.3d at 1094 (holding "amount of damages is invariably an individual question and does not defeat class action treatment").

Next, Chase asserts that some class members defaulted on their contractual obligations to Chase after Chase changed the terms of their loans, and, consequently, that their claims are not typical of those made by non-defaulting class members. Because any such defaults would have occurred after the alleged breach, however, the claims of any defaulting class members would still arise "from the same course of events" and the "legal arguments to prove the defendant's liability" would remain the same. See Rodriguez, 591 F.3d at 1124.[11]

Lastly, even assuming, as Chase asserts, the named plaintiffs, at the time Chase changed the terms of the loans, had outstanding balances larger than those of the average class member, the claims of those named plaintiffs, under the authority discussed above, nonetheless are deemed "typical." See, e.g., id.; see also Yokoyama, 594 F.3d at 1094.

Accordingly, the Court finds plaintiffs have demonstrated the claims of the named plaintiffs are typical of the claims of the class.

---

[10] The Cardmember Agreement provides that Chase may close the account of any cardholder "at any time for any reason without prior notice." (See O'Donnell Decl., filed December 22, 2010, Ex. A2 ¶ 7.)

[11] To the extent Chase may be entitled to a setoff based on a cardholder's outstanding obligation to Chase, any such individual issues concerning damages are, as noted, insufficient to defeat certification.

8

**4. Rule 23(a)(4): Adequacy of Representation**

"Adequate representation," for purposes of Rule 23(a)(4), "depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive." Local Joint Exec. Board of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc., 244 F.3d 1152, 1162 (9th Cir. 2001) (internal quotation and citation omitted).

Here, plaintiffs' chosen counsel is qualified to present the claims of the class in the instant litigation (see declarations attached to Pls.' Admin. Mot., filed July 15, 2009), and there is no suggestion the named plaintiffs' interests are antagonistic to those of the class members or that the instant action is collusive. Additionally, the record reflects that the named plaintiffs have adequately assisted counsel in conducting the litigation to date.

Accordingly, the Court finds plaintiffs have demonstrated the named plaintiffs "will fairly and adequately protect the interests of the class." See Fed. R. Civ. P. 23(a)(4).

**B. Rule 23(b)(3)**

As noted, Rule 23(b)(3) requires, in addition to the prerequisites of Rule 23(a), a showing that "questions of law or fact common to members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." See Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) "cover[s] cases in which a class action would achieve economies of scale, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Amchen Products, Inc. v. Windsor, 521 U.S. 591, 615 (1997) (internal quotation, citation and alteration omitted).

Here, to support its argument that issues common to the class do not predominate, Chase reiterates its arguments that commonality and typicality are lacking. The Court finds plaintiffs have demonstrated in their written submissions and at the hearing that issues common to all class members predominate over any individual issues. Further, the Court finds that resolving the class members' claims through a single class action is superior to

9

requiring each class member to bring an individual action, which, in addition to the economic burden placed on those individual class members, would "unnecessarily burden the judiciary." See Hanlon, 150 F.3d at 1023.

Accordingly, the Court finds certification is proper under Rule 23(b)(3).

**CONCLUSION**

For the reasons stated above:

1. Plaintiffs' motion for class certification is hereby GRANTED and a class, defined as follows, is certified:

> All persons or entities in the United States who entered into a loan agreement with Chase, whereby Chase promised a fixed APR until the loan balance was paid in full, and (i) whose minimum monthly payment was increased by Chase to 5% of the outstanding balance, or (ii) who were notified by Chase of a minimum payment increase and subsequently closed their account or agreed to an alternative change in terms offered by Chase.

2. Plaintiffs David Greenberg, James Hanisch, Jacob Kuramoto, Carole Lazinski, Melissa Neuman, Richard Reinertson, Regina Smolensky, Frederic Soliman, Brian Wilkinson, and Orly Williams shall serve as class representatives.

3. Interim Class Counsel, appointed by the Court in its order of July 24, 2009, are hereby appointed as Class Counsel.

4. No later than June 17, 2011, the parties shall meet and confer as to a proposed form of notice to be mailed to the class and the proposed manner of service thereof. No later than July 1, 2011, the parties shall submit to the Court, pursuant to Rule 23(c)(2)(B), either (a) a joint proposed form of notice and proposed manner of service, along with a proposed order approving said notice and manner of service, or (b) separate proposed forms of notice, manner of service and orders, along with a joint memorandum that sets forth the parties' respective reasons for any differences in the language proposed and/or differences in the manner of service proposed.

//
//
//

1  5. The parties, in connection with the above-referenced July 1 submission, shall
2  propose a date for conducting a Further Case Management Conference.
3  **IT IS SO ORDERED.**

5  Dated: May 13, 2011

_____
MAXINE M. CHESNEY
United States District Judge