IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: CHASE BANK USA, N.A. "CHECK LOAN" CONTRACT LITIGATION, | MDL No. 2032 |
| | Case No. 3:09-md-2032 MMC (JSC) |
| THIS DOCUMENT RELATES TO: | **ORDER RE: ATTORNEY-CLIENT PRIVILEGE DISCOVERY DISPUTE** |
| ALL CASES | |

This discovery dispute arises from Defendants refusal to produce 2,890 responsive documents on attorney-client and work product privilege grounds. At the direction of the Court, and in order to provide guidance to the parties, Defendants submitted twenty of the challenged documents for the Court's in camera review and decision as to whether the privilege applies.

I.  **ANALYSIS**

   **A. Delaware Law Governs the Privilege**

   As a preliminary matter, the parties somewhat disagree as to the law governing the Court's privilege determination. In federal diversity cases, such as this, privileges are determined under the state law that otherwise governs decision of the case. Fed. R. Evid. 501; Star Editorial, Inc. v. U.S. Dist. Ct. for the Central Dist. of Cal., 7 F.3d 856, 859 (9th Cir. 1993). Since Delaware law governs decision of this case (Dkt. No. 70 at 13, No. 172 at 4 n.4), Delaware law also governs the attorney-client privilege analysis.

### B. Attorney-Client Privilege Under Delaware Law

The purpose of the attorney-client privilege is to enable the client "to communicate without fear in order to seek legal advice." Riggs Nat. Bank of Washington, D.C. v. Zimmer, 355 A.2d 709, 713 (Del. Ch. 1976). Delaware Rule of Evidence ("DRE") 502 classifies communications as privileged if there is a: (1) communication, (2) which is confidential, (3) made for the purpose of facilitating the rendition of professional legal services to the client, and (4) between a protected pairing under DRE 502(b). Moyer v. Moyer, 602 A.2d 68, 72 (Del. 1992); Ramada Inns, Inc. v. Dow Jones & Co., 523 A.2d 968, 970 (Del. Super. Ct. 1986). DRE 502(b) defines these "protected pairings" as: (1) between the client or the client's representative and the client's lawyer or the lawyer's representative, (2) between the lawyer and the lawyer's representative, (3) by the client or the client's representative or the client's lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another in a matter of common interest, (4) between representatives of the client or between the client and a representative of the client, or (5) among lawyers and their representatives representing the same client. DRE 502(b). The party asserting the attorney-client privilege bears the burden to demonstrate that the communication satisfies the above elements. Rembrandt Techs., L.P. v. Harris Corp., 2009 WL 402332, at *5 (Del. Ch. Feb. 12, 2009).

The attorney-client privilege is not applicable if "the primary purpose of a communication is to solicit or render advice on non-legal matters." Hercules, Inc. v. Exxon Corp., 434 F.Supp. 136, 147 (D.C.Del. 1977). The inclusion of a lawyer in a communication in and of itself does not confer privilege: "something more than the mere presence of counsel is required; counsel must 'infuse' the communication with legal advice." Id. The privilege therefore only applies when "the attorney is 'acting as a lawyer' giving advice with respect to the legal implications of a proposed course of conduct." Id.; see also Khanna v. McMinn, 2006 WL 1388744, at *37-38 (Del. Ch. May 9, 2006) (stating that "business diction" as opposed to legal advice will not be privileged, even if transmitted to or written by general counsel); Texaco v. Phoenix Steel Corp., 264 A.2d 523, 526 (Del. Ch. 1970) (finding that

2

communications were not privileged simply because lawyers were writers or recipients since "the privilege would never be available to allow a corporation to funnel its papers and documents into the hands of its lawyers for custodial purposes and thereby avoid disclosure"); 3Com Corp. v. Diamond II Holdings, Inc., 2010 WL 2280734, at *6 (Del. Ch. 2010) ("internal communications between a company's officers and directors and its general counsel may be privileged depending upon whether the communications are legal or business in nature").

The burden rests on the proponent of the privilege to prove that the communication provides primarily legal and not business advice even for communications written by in-house counsel, especially where numerous recipients of the communication are outside the legal department. See, e.g., Lyondell-Citgo Refining, LP, v. Petroleos de Venezuela, S.A., 2004 WL 3019767, at *1 (S.D.N.Y. Dec. 29, 2004) (finding that the moving party did not meet "its burden of proving that the document contained legal, as opposed to business, advice" and "the inclusion of people outside the legal department in the recipient list further supported the conclusion that the email contained business advice").

Defendants argue that the "aggregation" of information "for the purpose of facilitating . . . legal advice" is protected by attorney-client privilege, even if the communication in question does not involve direct interaction with an attorney. Under Delaware law a communication may be privileged even if does not include an attorney as an author or recipient. See DRE 502(b)(4); 3Com Corp., 2010 WL 2280734, at *6 n.33; IBM v. Comdisco, Inc., 1992 WL 52143, at *2 (Del. Super. Ct. March 11, 1992). The lack of an attorney participant, however, supports an "inference that the communication is not privileged" unless the communication's participants are "discussing information of a legal nature that they received from a communication that did, in fact, involve . . . legal representatives" or are "disclosing privileged information to a colleague." 3Com Corp., 2010 WL 2280734, at *6 n.33. A communication does not become privileged simply because the author mentions a legal issue. Instead the primary purpose of the communication must be analyzed to determine if it is related to legal advice or instead to further a business objective.

3

In the same way that a non-privileged communication does not become privileged by the presence of an attorney, it likewise does not become privileged by the mere suggestion of a legal issue ancillary to the main purpose of the communication.  In addition, marking a document "confidential" or "attorney work product" is not enough to confer privilege without analysis of the document's actual contents.  Carlton Investments v. TLC Beatrice Int'l Holdings, 1996 WL 132983, at *9 (Del. Ch. 1996).

### C. Application of Delaware Privilege Law to Communications Reviewed In Camera

The Court has reviewed twenty emails submitted by Defendants for in camera review as well as the privilege log relating to these twenty emails (Dkt. No. 181, Ex. A).  Defendants produced in camera not only the email at issue in this log but also additional emails in the pertinent email string.  Based on the privilege log, which identifies one single email associated with a respective log number, the Court assumes that Defendants provided these additional emails for context.  The Court further assumes that these additional emails in the string have been identified separately and individually to Plaintiffs elsewhere in the privilege log to the extent they have not been produced.  The Court also notes that with the exception of Log 1048, no attachments were supplied by Defendants to the Court with the email strings in question.

#### a. Log No. 6383: Privileged

The Court agrees with Defendants' characterization of this email as primarily for the purpose of obtaining and implementing legal advice.

#### b. Log No. 4468: Not Privileged

The Court finds that Log No. 4468 is not protected by the attorney-client privilege.  Simply suggesting something needs "legal approval" is not sufficient to confer privilege if the communication otherwise involves business strategy of a non-legal nature.

#### c. Log No. 5701: Not Privileged

The Court finds that Log No. 5701 is not protected by the attorney-client privilege.  Merely forwarding a communication to a lawyer with the subject line "legal review needed"

4

is not sufficient to confer the privilege to the initial communication if it does not on its own qualify as a privileged communication. If the law were otherwise, all communications could be protected as privileged simply by forwarding them to an attorney. Although the Court is ruling only on Log No. 5701, the Court offers the additional guidance that the email in the supplied string sent at 3:29 PM by Jose Garcia is an example of a communication properly protected by the attorney-client privilege whereas the email sent at 1:20 PM by Elaine Franck is not.

### d. Log No. 6579: Not Privileged

The Court finds that Log No. 6579 is not protected by the attorney-client privilege. Stating an intention to pass an issue "along to the legal team to ensure they are aware" or noting that "counsel is reviewing the issues" does not confer the privilege on a communication that is not otherwise facilitating the receipt of legal advice.

### e. Log No. 6098: Privileged

The Court finds that Log No. 6098 is privileged.

### f. Log No. 6270: Privileged

The Court finds that Log No. 6270 is privileged as a forward of "legal guidance."

### g. Log No. 7908: Privileged

The Court finds that Log No. 7908 contains direct communication "between a paralegal and a business contact gathering and discussing information requested by counsel" and is therefore privileged.

### h. Log No. 1048: Not Privileged

The Court finds that Log No. 1048 is not privileged. Forwarding "draft customer service training materials" to a lawyer does not create a privilege when the exact same materials are being forwarded to a significant number of non-legal personnel. While the attorney's comments on the draft training materials would certainly be privileged, the materials themselves and the email at Log No. 1048 are not privileged given the large number of non-legal personnel who were sent the email and asked to review the materials.

### i. Log No. 1085: Privileged

As a preliminary matter, the email provided by Defendants at Exhibit 9 matches the description provided in Dkt. No. 185 but does not match the email identified in the log provided in Dkt. No. 181, Ex. A. The log identifies Log No. 1085 as an attachment sent March 25, 2009 at 12:57 PM while the communication Defendants provided to the Court and identified as Log No. 1085 was sent March 24, 2009 at 10:17 PM and does not include an attachment. The Court is ruling on the email provided by Defendants for <u>in camera</u> review.

The Court finds that the March 24, 2009 10:17 PM email to William Wallace and Robert Birnbaum from Stephanie Jacobsen, with copies to Jill Centella, Lisa Young and Andrew Semmelman, is privileged. The email includes a response drafted by three lawyers and asks for approval from Mr. Birnbaum, a lawyer, on a subject related to this litigation.

### j. Log No. 1112: Not Privileged

The Court finds that Log No. 1112 is not privileged. Merely discussing the possibility of submitting "draft customer service scripting for legal review and approval" or wondering "has legal seen this yet" is not enough to confer privilege to a communication for which the primary purpose was not to facilitate the rendition of legal advice.

### k. Log No. 1189: Not Privileged

The Court finds that Log No. 1189 is not privileged. Merely labeling a communication as an "attorney-client privileged draft" (or, more precisely, not changing a pre-existing subject line in an email string) or adding an attorney as a recipient are insufficient to confer privilege when the communication is not otherwise for the purpose of facilitating legal advice or services.

### l. Log No. 1211: Not Privileged

The Court finds that Log No. 1211 (July 6, 2009 10:37 AM) is not privileged as it does not in any way facilitate the rendition of legal advice or services. For the purpose of guidance, the email in the provided string of July 3, 2009 8:34 is privileged as it reflects the advice given by an attorney. The July 2, 2009 5:55 PM email, however, is not privileged as its primary purpose is not to facilitate the rendition of legal services. Again, merely stating

6

that something is going to at some point be reviewed by legal does not confer the privilege. To the extent Defendants contend that merely stating a desire to have something reviewed by legal is itself a communication facilitating the rendition of legal services, such statement can be redacted from an email. Defendants also argue that this communication is protected as attorney work-product. It is unclear how work-product protection applies to Log No. 1211, which is written by a non-lawyer and sent to a non-lawyer.

### m. Log No. 4530: Privileged

The Court agrees that Log No. 4530 is properly designated as privileged as it is a forward of legal advice rendered by an attorney. Given this finding, the Court need not address Defendants' additional assertion of work-product protection.

### n. Log No. 958: Not Privileged

The Court finds that Log No. 958 is not privileged. The purpose of the August 18, 2009 1:31 PM email is not to obtain or facilitate legal advice, particularly as neither the sender nor the recipients are attorneys. The line quoted by Defendants ("Jill- Can you please provide Legal Approval since this is 'min-due' related?") from the end of the first email in the string could properly be redacted if Defendants contend that merely suggesting the need for legal review of a communication is a communication facilitating the rendition of legal services. It does not, however, transform the entire email string or even the email in which it appears into a protected communication.

### o. Log No. 983: Not Privileged

The Court finds that Log No. 983 is not privileged. Drafts of a guide "prepared to assist customer service representatives in their conversations with customers" that were previously "subject to legal review" are not privileged when circulated to non-lawyers without a context suggestive of a legal purpose.

### p. Log No. 988: Not Privileged

The Court finds that Log No. 988 is not privileged. That "an attorney is a recipient of an email midway through the chain" is insufficient to privilege the July 28, 2009 11:30 AM email that is otherwise not protected under attorney-client privilege. Draft letters circulated

for a purpose other than that of facilitating or seeking legal advice likewise do not meet the threshold burden to show privilege. Finally, as previously noted, marking that a communication is "subject to legal review" is not enough to render the communication privileged.

### q. Log No. 1035: Not Privileged

The Court agrees with Defendants that the referenced email ("I called Jill yesterday but she's OOO, I believe related to the litigation . . .") is privileged; however, this email is not Log No. 1035. Though part of the same string, Log No. 1035 (June 24, 2009 12:10 PM) involves business strategy and not legal advice. The protected email farther down in the chain is not enough to confer privilege on every subsequent email in the chain; each communication must survive independent analysis. Defendants can redact protected communications within an email string but may not simply withhold the entire string because of one protected communication or piece of a communication.

### r. Log No. 1075: Not Privileged

The Court finds that Log No. 1075 is not privileged. It is not proper to automatically confer the privilege on every communication of which a lawyer is a recipient, particularly when the communication in question is sent to a large number of recipients, many of whom are not attorneys. As discussed previously, a communication is likewise not privileged simply because the subject line (which was derived from earlier emails) is marked as such. It is the content of the communication at issue and not the assigned label that determines privilege.

### s. Log No. 4564: Not Privileged

The Court agrees with Defendants that the email in the string sent at 11:55 AM is privileged; however, Log No. 4564, which is neither from nor to an attorney and does not appear to be related to the rendition of legal advice, is not privileged. The Court again notes that merely stating a communication is "subject to legal review" does not by itself properly attach attorney-client privilege to a communication. In regard to work-product protection, Defendants have not adequately explained how work product protection applies, and it is not

readily obvious to the Court how the very short communication between non-attorneys that is Log No. 4564 would fall under attorney work product.

### t. Log No. 4570: Not Privileged

The Court finds that Log No. 4570 is not privileged. Defendants note that many of the emails in this chain are also contained in the email chain attached to Log No. 4564. The Court, however, is only ruling on Log No. 4570, which is not contained in the email chain provided with Log No. 4564. Log No. 4570 (Oct. 19, 2009 12:55 PM) refers to suggestions made by a non-attorney without even being copied to an attorney and is not for the purpose of facilitating the rendition of legal advice.

## II.  CONCLUSION

Given the foregoing findings, Defendants are **ORDERED** to produce the following communications: Log Nos. 4468, 5701, 6579, 1048, 1112, 1189, 1211, 958, 983, 988, 1035, 1075, 4564, and 4570. The following communications are deemed protected by the attorney-client privilege under the law of Delaware: Log Nos. 6383, 6098, 6270, 7908, 1085 and 4530. Defendants are further **ORDERED** to apply the analysis outlined above to (1) re-evaluate the remaining 2,870 disputed documents at issue in this case and (2) produce those documents not properly shielded by Delaware attorney-client privilege as defined in this Order. The parties shall meet and confer on an appropriate time line for Defendants' further production. Finally, the Court emphasizes that a single email of a "legal nature" does not privilege the entire email thread and that "subsequent emails in the thread should only be withheld if they reveal legal advice or a request for such, not simply because a topic discussed at some point in the email chain has some legal implications" (Dkt. No. 181 at 5 n.5).

**IT IS SO ORDERED.**

Dated: July 28, 2011

JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE