IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: CHASE BANK USA, N.A. "CHECK LOAN" CONTRACT LITIGATION | MDL No. 2032 |
| | Case No.: 3:09-md-2032 MMC (JSC) |
| | **ORDER RE: JOINT STATEMENTS OF DISCOVERY DISPUTES (Dkt. No. 264 )** |
| ——————————————————— THIS DOCUMENT RELATES TO: ALL CASES | |

Now pending before the Court are several discovery disputes.  The Court has reviewed each of the parties' joint statements and concludes that oral argument is not necessary.  See L.R. 7-1(b).  Each dispute is addressed below in the order in which they were filed.

**1.      Class Member Data (Dkt. No. 264-1, Ex. A)**

The Court finds that the requested class member data predating January of 2007 is relevant to Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing and therefore must be produced.  Chase does not dispute that the requested data will show the minimum payment terms that applied to some Class members' accounts at the time they

initiated their LOL loans.  Moreover, when offered, Chased refused to stipulate that it "will not rely upon, at trial or otherwise, class member data from the period prior to January 2007 which Chase has not produced."  (Joint Statement, Ex. F.)  Chase does not explain why it should be allowed to rely upon data which it has refused to produce to Plaintiffs.

That being said, in light of Chase's representation that the data is not readily accessible and therefore time-consuming and costly to gather, as well as the voluminous productions already made by Chase, the Court finds it is appropriate for Chase and Plaintiffs to share the costs of the production of the pre-2007 data, that is, to split the cost 50-50.  See Fed. R. Civ. P. 26(b)(2)(C)(iii).  This Order to share costs applies only to the pre-2007 data.  Within five business days of the date of this Order the parties shall meet and confer in person as to the costs, methods, and timing of this production.

The Court also finds that the data as to the non-LOL balances, including the applicable APR, is relevant.  Plaintiffs' expert Bruce McFarlane calculates the "Lost Loan Damages" by, among other things, apportioning the minimum payment among the various loan balances for a particular customer depending on the APR of the non-LOL balances.  (Joint Statement Ex. C at p. 18 & n.26.)  In light of this calculation, Chase's assertion that the issue of payment allocation is absent from Plaintiffs' damages experts' reports is puzzling.

Just because the data is relevant, however, does not mean it must be produced. Plaintiffs' expert was able to calculate class damages based on certain assumptions as to APR, specifically, that the APR for the non LOL balances was higher than the LOL balances, as well as an assumption as to the rate of the non LOL balances.  (Id.)  While obtaining the data sought might enable the expert to more precisely calculate class damages, it is unclear from the Joint Statement whether the difference in the damages calculation would be more than de minimis.  On the other hand, while Chase implies that it would be burdensome to produce the data sought, it offers no specifics whatsoever.  Accordingly, the parties may need to file a further Joint Statement which addresses these questions.

Before the parties file such further Joint Statement, however, they must meet and confer in person in an attempt to resolve this dispute.  For example, if Chase agrees not to

United States District Court
Northern District of California

2

1    challenge Plaintiffs' expert's damages calculation on the ground that he made assumptions as

2    to the missing data then arguably Plaintiffs do not need the data, at least not as much.  Or

3    perhaps an agreement can be reached as to the expert's assumptions, without any agreement

4    as to whether his methodology is proper.  This in person meet and confer must occur within

5    five business days of this Order.

6    **2.      Financial Documents (Dkt. No. 264-3, Ex. E)**

7            Plaintiffs seek disclosure of "Chase's internal analyses of the effect of the change in

8    terms at issue in this litigation on Chase's bottom line."  (Dkt. No. 264-3, p. 1.)  Chase

9    represents that it has conducted a diligent and thorough search for the documents and is

10   unable to locate any additional documents other than what has already been produced or

11   identified on privilege logs.  (Id. at 6.)  Because nothing in the Joint Statement leads the Court

12   to doubt Chase's representation on this matter, Plaintiffs' motion to compel this discovery is

13   DENIED.

14   **3.      Customer Complaint Records (Dkt. No. 264-3, Ex. D)**

15           Plaintiffs seek Chase's customer complaint records related to the two changes in terms

16   at issue.  Plaintiffs contend that following Chase's implementation of the change in terms,

17   Chase received hundreds of thousands of complaints and that these complaint records

18   constitute "critical evidence" regarding whether Chase's conduct in imposing the changes in

19   terms was consistent with class members' reasonable expectations.  (Dkt. No. 264-3, p. 1.)

20           This case involves a single claim for breach of the implied covenant of good faith and

21   fair dealing under Delaware law.  (Dkt. No. 70, p. 1.)  Under Delaware law, a party is liable

22   for breaching this covenant "when their conduct frustrates the overarching purpose of the

23   contract by taking advantage of their position to control implementation of the agreement's

24   terms."  Dunlap v. State Farm Fire and Casualty Co., 878 A.2d 434, 442 (Del. 2005).  To

25   conduct this analysis, a court "must assess the parties' reasonable expectations at the time of

26   contracting . . . ."  Nemec v. Shrader, 991 A.2d 1120, 1125-26 (Del. 2010).  Customer

27   complaint records related to Chase's changes in terms are evidence of how the customers

28   understood their contractual relationship at the time they entered into their contract.  The

1   requested discovery is thus, at a minimum, reasonably calculated to lead to the discovery of

2   admissible evidence.  Fed. R. Civ. P. 26(b).  The Court declines Chase's invitation to rule in

3   advance—and without ever having reviewed the records—that the records sought are wholly

4   inadmissible and could not possibly lead to the discovery of any admissible evidence.  Id.

5   ("Relevant information need not be admissible at trial if the discovery appears reasonably

6   calculated to lead to the discovery of admissible evidence").

7            Chase asserts that there are 175,000 pieces of correspondence responsive to Chase's

8   request, but it does not explain what producing relevant documents would entail.  Within five

9   business days of the date of this Order the parties are ordered to meet and confer in person

10   regarding the method and timing of production and—importantly—limiting the production so

11   as not to be unduly burdensome.

12   **4.    Chase's Discovery Responses (Dkt. No. 264-2, Ex. B)**

13            Plaintiffs seek "production of documents" and "compliant responses" to their seventh

14   requests for production ("RFPs") and their second requests for admission ("RFAs").  (Dkt.

15   No. 264-2, 1.)  Chase objects to every RFP at issue, and denies nearly every RFA at issue.

16   Chase neither admits nor denies RFA 11.

17            The Court finds that Chase's objections to Plaintiffs' seventh RFP are not improper

18   and therefore DENIES Plaintiffs' motion to compel further responses to these requests.  The

19   Court also finds that Chase's responses to Plaintiffs' second RFA numbers 1 through 10 do

20   not violate the Federal Rules and therefore DENIES Plaintiffs' motion to compel further

21   responses to these requests for admission.  With respect to RFP number 11, Chase must

22   admit, deny, or "state in detail why [it] cannot truthfully admit or deny it" as required by Fed.

23   R. Civ. P. 36(a)(4).  Plaintiffs' motion to compel a further response is therefore GRANTED

24   with respect to RFA number 11.  Chase shall provide Plaintiffs with a further response to

25   RFA no. 11 within five business days of this Order.

26   **5.    Chase Customer Service Representative Survey (Dkt. No. 264-2, Ex. C)**

27            Plaintiffs seek documents related to a Chase customer service representatives' focus

28   group alluded to by Shirley Fung during her deposition.

Chase represents that no such focus group ever existed and that its comprehensive data searches have not revealed documents responsive to Plaintiffs' request. (Dkt. No. 264-2, p. 5.) Because nothing in the Joint Statement leads the Court to doubt Chase's representation to that effect, Plaintiffs' motion to compel this discovery is DENIED.

**6.      Documents Regarding Chase's June 2009 Change In Terms Population Criteria (Dkt. No. 264-4, Ex. F)**

Plaintiffs seek "specific documents related to the criteria used by Chase to determine which cardholders received the June 2009 Change-In-Terms notice." (Dkt. No. 264-4, p. 1.) Specifically, Plaintiffs seek documents related to Chase's June 2009 "Waterfall" analysis and its "disaster purge." (Id. at 1—2.)

Once again Chase represents that its comprehensive data searches have not revealed additional documents beyond those already produced that are responsive to Plaintiffs' request. (Id. at 3-4.) Because nothing in the Joint Statement leads the Court to doubt Chase's representation to that effect, Plaintiffs' motion to compel this discovery is DENIED.

**7.      Class Representative Documents (Dkt. No. 264-4, Ex. G)**

Plaintiffs seek "documents related to class representatives' accounts to the extent such documents are in Chase's possession custody, or control and have not yet been produced." (Dkt. No. 264-4, p. 1.) As the parties' Joint Statement demonstrates, Plaintiffs did not seek to meet and confer regarding the request prior to filing the motion; rather, although Plaintiffs contend the documents sought are responsive to a request made in January 2010, they did not advise Chase that its production was incomplete until March 2, 2012—the last day of fact discovery. Accordingly, Plaintiffs' motion is DENIED. That being said, the documents sought are responsive to Plaintiffs' long-standing request; thus, Chase is precluded from relying on any documents responsive to Plaintiffs' request that it has not produced.

**CONCLUSION**

Chase shall provide Plaintiffs with a response to RFA no. 11 within five business days of this Order. The parties are ordered to meet and confer *in person* with respect to dispute numbers one and three as described above within five business days of this Order. Should

5

any dispute remain following that meet and confer, such dispute shall be brought to this Court's attention via a Joint Statement consistent with the Court's standing order.  Such Joint Statement shall be filed within 10 business days of this Order and must specify when and where the in person meet and confer took place, as well as the participants.  Further, the parties are advised that before ruling on any remaining dispute, the Court may order the parties to meet and confer again in person at the courthouse before the Court makes any ruling.

**IT IS SO ORDERED.**

Dated:  April 4, 2012

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE

United States District Court
Northern District of California

6