Elizabeth J. Cabraser (State Bar No. 83151)
Michael W. Sobol (State Bar No. 194857)
Roger N. Heller (State Bar No. 215348)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA  94111-3336
Telephone:     (415) 956-1000
Facsimile:     (415) 956-1008

*Plaintiffs' Liaison Counsel*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: Chase Bank USA, N.A. "Check Loan" Contract Litigation | MDL No. 2032<br>Case No. 3:09-md-02032 MMC (JL) |
| | The Honorable Maxine M. Chesney |
| THIS DOCUMENT APPLIES TO ALL ACTIONS | **PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**<br><br>Dates:  August 3, 2012<br>Time:  9:00 a.m.<br>Ctrm:  Courtroom 7, 19th Floor |

Please take notice that on August 3, 2012, at 9:00 a.m., in Courtroom 7, 19th floor of the United States District Court for the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiffs David Greenberg, James Hanisch, Jacob Kuramoto, Carole Lazinski, Melissa Neuman, Richard Reinertson, Regina Smolensky, Frederic Soliman, Lt. Brian Wilkinson, and Orly Williams will move for an order (i) preliminarily approving the Parties' proposed class Settlement, (ii) approving the Parties' proposed Notice Program and directing that the Class be notified of the Settlement, (iii) appointing The Garden City Group, Inc. as Settlement Administrator and Litinomics, Inc. as Payment Advisor, and (iv) setting a hearing date and schedule for final approval of the Settlement and consideration of Class Counsel's fee application.

Plaintiffs' motion is based on this notice, the attached memorandum of points and authorities, the accompanying declaration of Eric H. Gibbs, and such other matter as the Court may consider.

Dated:  July 23, 2012

By:   /s/ *Michael W. Sobol*

Elizabeth J. Cabraser
Michael W. Sobol
Roger N. Heller
**LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 30th Floor
San Francisco, CA  94111-3336
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

*Plaintiffs' Liaison Counsel*

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT
CASE NO. 3:09-MD-02032 MMC (JL)

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................................ 1

II. SUMMARY OF THE CLASS CLAIMS AND PROPOSED SETTLEMENT ........................... 2

    A. The Class Claims Being Settled ................................................................................. 2

        1. The Legal Theory of Recovery ...................................................................... 2

        2. The Parties' Evidence On Liability ................................................................. 3

        3. The Parties' Evidence on Damages ............................................................... 3

    B. Overview of the Settlement ......................................................................................... 4

        1. The Settlement Fund ....................................................................................... 4

            a) Administrative Costs ........................................................................... 5

            b) Taxes and Tax Expenses ..................................................................... 5

            c) Attorney Fees, Costs, and Expenses .................................................... 5

            d) Service Awards .................................................................................... 5

            e) Direct Payments to Class Members ..................................................... 5

            f) Uncashed and Undeliverable Settlement Checks ................................ 6

        2. The Allocation Plan ........................................................................................ 6

        3. Additional Relief For Class Members Who Accepted the Alternative Offer ............. 7

        4. Mutual Release ............................................................................................... 7

III. LEGAL ANALYSIS ......................................................................................................... 8

    A. Overview of the Class Action Settlement Process ...................................................... 8

    B. The Proposed Settlement Merits Preliminary Approval. .............................................. 8

        1. The Proposed Settlement Comes After Extensive Litigation, Is the Product of
            Extensive Arms-Length Negotiations and Is Non-Collusive, Making it
            Presumptively Fair, Reasonable, and Adequate. ........................................... 9

2.    The Settlement Has No Obvious Deficiencies. ........................................................... 9

3.    The Settlement Treats All Class Members Fairly. ................................................... 10

4.    The Settlement Falls Well Within the Range of Possible Approval. ........................ 11

C.    The Parties' Proposed Notice Plan Satisfies Due Process and Should Be Adopted. ....... 11

1.    The Proposed Method Of Notice Is Reasonably Calculated To Apprise Class Members of the Settlement. .......................................................................................... 11

2.    The Proposed Form Of Notice Adequately Informs Class Members Of The Settlement And Their Right To Object. .................................................................. 12

3.    A Second Opt-Out Opportunity Is Not Required. .................................................... 12

4.    Notice Of The Settlement Will Also Be Provided To Appropriate Federal and State Officials. ......................................................................................................... 13

D.    Appointment of a Settlement Administrator and Payment Advisor ................................ 13

E.    The Parties' Proposed Schedule for Final Approval Proceedings. .................................. 14

IV.    CONCLUSION ................................................................................................................ 15

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT
CASE NO. 3:09-MD-02032 MMC (JL)

# TABLE OF AUTHORITIES

**Cases**                                                                                                                 **Page**

*Colesberry v. Ruiz Food Products Inc.*
  CVF-04-5516-AWI, 2006 WL 1875444 (E.D. Cal. June 30, 2006)................................ 11, 12

*Collins v. Cargill Meat Solutions Corp.*
  274 F.R.D. 294 (E.D. Cal. 2011) ............................................................................ 9

*Dennis v. Kellogg Co.*
  No. 11-55674, 2012 WL 2870128 (9th Cir. July 13, 2012).................................... 9

*Harris v. Vector Marketing Corp.*
  No. C-08-5198, 2011 WL 1627973 (N.D. Cal. April 29, 2011)............................. 8

*In re Bluetooth Headset Products Liab. Litig.*
  654 F.3d 935 (9th Cir. 2011) ................................................................................ 9

*In Re MagSafe Apple Power Adapter Litig.*
  No. 5:09-CV-01911 (N.D. Cal. May 29, 2012) .................................................... 14

*In re TFT-LCD (Flat Panel) Antitrust Litig.*
  MDL 3:07-MD-1827 SI, 2011 WL 7575003 (N.D. Cal. Dec. 27, 2011) ............... 10

*In re Prudential Ins. Co. of Am. Sales Practices Litigation,*
  177 F.R.D. 216 (D.N.J. 1997).............................................................................. 12

*In re Tableware Antitrust Litig.*
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) ............................................................ 8,11

*Linney v. Cellular Alaska P'ship,*
  C-96-3008-DLJ, 1997 WL 450064 (N.D. Cal. July 18, 1997)
  *aff'd,* 151 F.3d 1234 (9th Cir. 1998) ................................................................... 9

*Milano v. Interstate Battery Sys. of Am., Inc.*
  No. 4:10-DV-02125 (N.D. Cal. July 5, 2012) ..................................................... 14

*Nemec v. Shrader,*
  991 A.2d 1120 (Del. 2010) .................................................................................. 2

*Rodriguez v. W. Publ'g Corp.*
  563 F.3d 948 (9th Cir. 2009) .............................................................................. 10

*Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco,*
  688 F.2d 615 (9th Cir. 1982) .............................................................................. 13

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT
CASE NO. 3:09-MD-02032 MMC (JL)

*Vizcaino v. Microsoft Corp.*
   290 F.3d 1043 (9th Cir. 2002) ................................................................................ 10

**Rules**

Fed. R. Civ. P. 23(e) ................................................................................ 8, 11, 12

**Statutes**

28 U.S.C. § 1715 ................................................................................ 13

**Other Authorities**

Manual for Complex Litigation (Third) § 30.212 ................................................................................ 12

Manual for Complex Litigation (Fourth) §§ 21.63 (2004) ................................................................................ 1, 8

*Newberg on Class Actions* § 8:32 ................................................................................ 12

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT
CASE NO. 3:09-MD-02032 MMC (JL)

I.      **INTRODUCTION**

After more than three years of hard-fought litigation, Class Representatives and Class Counsel are now pleased to report that the Parties have agreed to settle this certified class action.[1]  Pursuant to the Settlement, Chase will pay $100 million to create a common Settlement Fund.  Every Class Member will be mailed a settlement check (there is no claims process) for a pro rata share of the Net Settlement Fund after Administrative Costs, Taxes and Tax Expenses, and reasonable attorneys' fees and expenses and incentive awards are paid.  The $100 million gross Settlement Fund achieved for the Class pursuant to the Settlement represents about one-half of the up-front transaction fees the Class Members originally paid for certain promotional credit card loans, and is an excellent result, particularly in light of the claims alleged and the risks and delay associated with ongoing litigation, trial, and appeal.

The named Plaintiffs and six law firms appointed by the Court to represent the Class believe the Settlement to be in the best interests of the Class and wish to begin the court approval process that is required for all class action settlements.  *See, e.g.,* Manual for Complex Litigation, Fourth, § 21.63.  Plaintiffs respectfully request that the Court review the Parties' negotiated settlement agreement—attached as Exhibit 1 to the accompanying Declaration of Eric H. Gibbs and cited herein as "Settlement"—and enter an order that:

1.      Preliminarily approves the Settlement;

2.      Approves the Parties' proposed Notice Program and forms of notice attached to the Settlement as Exhibits 3 and 4, and directs that the class be notified of the Settlement;

3.      Appoints The Garden City Group, Inc. as Settlement Administrator and Litinomics, Inc. as Payment Advisor;  and

4.      Sets a hearing date and schedule for final approval of the Settlement and consideration of Class Counsel's fee application.

---

[1] Capitalized terms not otherwise defined herein have the same meaning as set forth in the Settlement.

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT
CASE NO. 3:09-MD-02032 MMC (JL)

## II.    SUMMARY OF THE CLASS CLAIMS AND PROPOSED SETTLEMENT

### A.    The Class Claims Being Settled

#### 1.    The Legal Theory of Recovery

In a Master Class Action Complaint filed on behalf of roughly one million cardholders, Plaintiffs alleged multiple causes of action.  (*See* Master Compl. (Dkt. No. 24).)  After Chase successfully moved to dismiss all but one claim, only Plaintiffs' claim under the implied covenant of good faith and fair dealing remained.  (*See* Order re: MTD at 10-12, 22 (Dkt No. 70).)  The Court certified that claim for class treatment in May 2011, for a class defined as follows:

> All persons or entities in the United States who entered into a loan agreement with
> Chase, whereby Chase promised a fixed APR until the loan balance was paid in full,
> and (i) whose minimum monthly payment was increased by Chase to 5% of the
> outstanding balance, or (ii) who were notified by Chase of a minimum payment
> increase and subsequently closed their account or agreed to an alternative change in
> terms offered by Chase.

(*See* Order re: Class Cert. (Dkt. No. 172).  Trial was scheduled to begin in July 2012, (Pretrial Prep. Order (Dkt. No. 202)), and there was a motion to decertify the class and cross-motions for summary judgment/partial summary judgment pending when the Parties agreed to settle, (*see* Def. Motion to Decertify (Dkt. No. 289)).

The Parties disagreed over the precise showings required under Delaware's implied covenant law, but agreed that Plaintiffs would, at minimum, need to show (i) that Chase exercised its right to change the Cardmember Agreement in an arbitrary or unreasonable manner, and (ii) that, as a result, Class Members were deprived of a reasonably-expected benefit.  *See Nemec v. Shrader*, 991 A.2d 1120, 1126 (Del. 2010).  Chase also maintained that Plaintiffs would need to show that both Parties to the cardholder agreement—*i.e.*, Chase and the cardholder—would have agreed to limitations on Chase's lending power, and that Chase did not have any legitimate business purpose for adjusting the Class's minimum monthly payment requirements.  (*See* Def.'s MSJ at 19 (*see* Dkt. No. 290).)

## 2.    The Parties' Evidence On Liability

In their opposition to Chase's Motion for Summary Judgment, Plaintiffs surveyed their evidence and explained how they intended to prove liability.  (*See* Pl.'s Opp. to Def's MSJ (Dkt. No. 319).)  Plaintiffs put on proof that the magnitude of the minimum monthly payment increase was unprecedented and that Class Members reacted negatively towards it.  (*See id.* at 14-15.)  Plaintiffs also offered evidence that they believe showed that Chase did not apply the monthly payment increase in a uniform manner to all of its cardmembers.  (*See id.* at 3-4, 15-17.)  Finally, in Plaintiffs' view, documents in the case show that Chase intended to increase its own profits by denying Class Members the full benefits of their low APRs.  (*See id.* at 17-21.)

Chase has set forth its own view of the evidence and primary defenses in its opposition to class certification, motion to decertify, and motion for summary judgment.  (*See* Dkt. Nos. 125, 289, & 290.)  In Chase's view, increasing Class Members' monthly payments was a reasonable and sensible response to unprecedented economic turmoil and impending regulatory changes.  Chase asserted that it had carefully studied its credit card portfolio and selected a class of low-engaged customers for a Change-In-Terms to reduce its overall exposure to financial risk.  (*See* Def.'s MSJ at 5-7, 24-25.)  Chase intended to present expert evidence at trial suggesting that Class Members could not have reasonably expected that their monthly payments would remain unchanged, including a consumer expectations survey intended to show that more than 70% of respondents either had no expectation as to whether monthly payment requirements might change for a life-of-the-loan offer or else understood that the bank could increase the minimum monthly payment.  (*See* Def.'s Opp. to Class Cert. at 12-16.)

## 3.    The Parties' Evidence on Damages

The value of Class Members' implied covenant claims ultimately depends not only on the Parties' respective liability evidence, but also the evidence they have compiled regarding damages.  Chase has argued from the beginning of the case that its actions actually saved the Class money, but Plaintiffs believe that analysis is inaccurate and does not adequately take into account the market value of the loans.  In Plaintiffs' view, the Class was willing to pay up-front fees to obtain these loans, suggesting that they were not actually a financial liability but rather a financial asset.  Plaintiffs had

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT
CASE NO. 3:09-MD-02032 MMC (JL)

proposed multiple methods that could potentially be used to value this asset. (*See* Pl.'s Reply ISO Class Cert at 11-12 (Dkt. No. 149); *see also* Pl.'s Opp. to Decert. at 2, 5 n.3. (*see* Dkt. No. 310).) One method was to value the loan based on the fee that each Class Member paid for it. (*See* Pl.'s Reply ISO Class Cert at 11-12.) A second method attempted to measure the fair market cost of replacing the portion of the loan that each Class Member allegedly lost when Chase changed the payment terms. (*See* Pl.'s Opp. to Decert at 7-8.)

Chase, in turn, argued that damages were necessarily an individualized issue based on each Class Member's expectations and would need to take into account Class Members' financial circumstances at the time, including where they got the funds required to pay the increased minimum monthly payments, whether they would have made higher monthly payments anyway, and whether they secured alternative financing (or could have) and on what terms. (*See* Def.'s Opp. to Class Cert. at 22-23.) Chase was particularly critical of the "lost loan" valuation that Plaintiffs intended to present at trial through expert testimony. (*See* Def.'s Mot. to Decertify at 1, 7-12.) For example, while Plaintiffs' lost-loan model assumed that the market rate at which replacement loans could be purchased was either 7.99% or 10.99%, Chase argued that the actual rates available to Class Members varied depending on Class Members' particular financial situations and were often much lower. (*See id.* at 9-11.) Chase also argued that Plaintiffs' "lost loan" methodology failed to account for Class Member's actual repayment behavior – which at times approached or exceeded 5% per month – and assumed loans would be maintained longer than was realistic. (*See id.* at 11 (citing Expert Reports of Dominique M. Hanssens and Christopher James).)

## B. Overview of the Settlement

### 1. The Settlement Fund

Under the Settlement, Chase will deposit $100 million into an interest-bearing account to create a common Settlement Fund from which every Class Member will be mailed a settlement check. (*See* Settlement, ¶ 7.1.) If the Settlement is ultimately approved, this Settlement Fund will be distributed as follows:

### a)   Administrative Costs

Settlement funds will first be distributed to pay the cost of notifying the Class of the proposed Settlement, calculating and distributing payments to Class Members, and other Administrative Costs. (*See id.*, ¶¶ 2.2, 7.2-7.4.)  All such Administrative Costs must be approved by Class Counsel.  (*See id.*, ¶ 7.3.)

### b)   Taxes and Tax Expenses

All Taxes and Tax Expenses related to the Settlement Fund will be paid therefrom.  (*See id.*, ¶ 7.2, 7.5, 7.13-7.14.)

### c)   Attorney Fees, Costs, and Expenses

Class Counsel will separately apply for payment from the Settlement Fund to compensate them for their work on behalf of the Class and the litigation expenses they incurred in this litigation. (*See id.*, ¶¶ 8.1-8.2.)  Class Counsel's application will be limited to seeking an award of attorney fees that does not exceed 27 percent of the common Settlement Fund, and also reimbursement of their litigation expenses.  (*See id.*, ¶ 8.1).

### d)   Service Awards

Class Counsel will also separately petition the Court for service awards to be paid to the Class Representatives and other named Plaintiffs in recognition of the time, effort, and expenses they incurred pursuing claims against Chase that ultimately benefitted the entire Class.  (*See id.*, ¶ 9.1.) Class Counsel will seek no more than $7,500 for each of the court-appointed class representatives and for one named Plaintiff who extensively participated in the litigation, and no more than $1,000 for each other Plaintiff who was named in the Master Complaint or any Related Action.  (*See id*.)

### e)   Direct Payments to Class Members

The Net Settlement Fund, which consists of the money remaining in the Settlement Fund after the preceding fees and costs are paid, will be distributed to Class Members pursuant to the allocation plan described in the following section.  (*See id.*, ¶¶ 7.5-7.10.)  The Payment Advisor will be charged with utilizing the cardmember data provided by Chase to calculate each Class Member's Settlement Payment.  (*See id.*, ¶¶ 7.7-7.8.)  The resulting Distribution Plan will be submitted to Class Counsel for their review and approval, with a copy to Chase.  (*See id.*, ¶ 7.8.)  The Distribution Plan will then be

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT
CASE NO. 3:09-MD-02032 MMC (JL)

provided to the Settlement Administrator, who will mail settlement checks to Class Members.  (*See id.*, ¶¶ 7.8-7.9.)  All settlement checks returned to the Settlement Administrator with a forwarding address will be re-mailed to the new address indicated.  (*See id.*, ¶ 7.9.)

### f)   Uncashed and Undeliverable Settlement Checks

Any funds remaining as a result of uncashed or undeliverable settlement checks will be made available to pay other claims, at Chase's request and subject to Class Counsel's approval, relating to Chase's minimum monthly payment increase and asserted no later than December 31, 2013, on behalf of anyone who was sent notice of the class action or settlement. (*See id.*, ¶¶ 2.31, 7.11.)  Any remaining funds thereafter will be paid as *cy pres* to Consumer Action to support its efforts to promote consumer financial education.  (*See id.*)  No funds will revert to Chase.  (*See id.*)

### 2.   The Allocation Plan

Each Class Member will receive a total Settlement Payment that is equal to a base payment of $25 plus an additional payment intended to give the most compensation to those Class Members most affected by the changes-in-terms, taking into account such factors as the amount of up-front transaction fees paid for the check loans, the size of the Class Member's check loan balance at the time of the Change-In-Terms, and the original time the Class Member would have had to repay that remaining balance, had the Class Member only made minimum payments for as long as it would have been outstanding.  (*See id.,* ¶ 7.6.)

The Settlement accomplishes this allocation using "loan-month dollars," which is a measure of the total monthly amounts that could be financed throughout the life of the loan.  (*See id.*, ¶ 7.6, Steps 1-4.)  To illustrate the allocation, the proposed Payment Advisor provided the following data for a single Class Representative's account:  Class Representative X's three check loans (which had original total balances of $12,900, $1,500, and $2,000) allowed her to finance a total of $12,019 in July 2007, $11,762 in August 2007, $11,504 in September 2007, and so on, until her loans were fully repaid.  Adding up all of those monthly figures yields a total of $873,057 total loan-month dollars that Class Representative X had available to her under her loans' original monthly payment terms.  At the time of the Change-In- Terms, Class Representative X had a total of $485,788 loan-month dollars remaining.  When her monthly minimum payment increased from 2% to 5% of her account balance,

her remaining available loan-month dollars were reduced to $171,849, as the monthly balances she could maintain for her loans decreased in connection with the higher monthly payment requirements. Class Representative X therefore "lost" $313,939 loan-month dollars as a result of the Change-In-Terms, or about 36% of the total loan-month dollars for her loans (*i.e.* $313,939 divided by $873,057). The total transaction fees that Class Representative X paid for her three check loans was $180, and since she was deprived of 36% of the loan-month dollar benefits of those loans, her "lost fee value" under the allocation is about $65 (*i.e.* $180 multiplied by .036).

The same calculation is repeated for each Class Member, leading to a lost fee value for each Class Member and "total lost fees" for the Class as a whole.[2] (*See id.*, ¶ 7.6, Steps 4-6.) Each Class Member will then receive a flat payment of $25 *plus* a pro-rata share of the remaining Settlement Fund equal to a percentage (the same percentage for all Class Members) of their lost fee value. (*See id.*, ¶ 7.6, Steps 5-8.) For example, Class Representative X would receive approximately $72 under the Settlement (the $25 base payment plus her pro rata share of the remaining funds based on her lost fee value).

### 3. Additional Relief For Class Members Who Accepted the Alternative Offer

After receiving the Change-In-Terms, some Class Members accepted an "Alternative Offer" that allowed them to retain their 2% minimum monthly payments in exchange for accepting a higher 7.99% APR that could be increased at Chase's option after two years. As part of the Settlement, Chase has agreed that for these Alternative Offer balances, it will maintain a 2% minimum monthly payment requirement and not exercise its option to increase the APRs unless an individual Class Member is in Default. (*See id.*, ¶¶ 2.18, 7.15.)

### 4. Mutual Release

In exchange for the benefits provided by Chase under the Settlement, Class Members will release Chase and related entities from all legal claims arising from or related to the November 2008 or June 2009 Change-In-Terms or the Alternative Offer. (*See id.,* ¶¶ 2.41-2.42, 11.1-11.3.) Chase, in turn, will not sue the Class Representatives, Class Counsel, or Plaintiffs and their counsel in Related Actions for malicious prosecution or abuse of process. (*See id.*, ¶ 11.4.)

---

[2] For the small fraction of the Class for whom Chase has no record of a transaction fee, the lost fee value will be calculated using the average transaction fee paid by the Class. (*See id.*, ¶ 7.6, Step 5.)

III.     **LEGAL ANALYSIS**

    A.     **Overview of the Class Action Settlement Process**

       A class action settlement like the one proposed here must be approved by the Court before it can become effective.  *See* Fed. R. Civ. P. 23(e).  The process for court approval is comprised of three principle steps:

    1.     A preliminary approval hearing, at which the court considers whether the proposed settlement is within the range of reasonableness possibly meriting final approval;

    2.     Dissemination of notice of the proposed settlement to class members for comment; and

    3.     A "fairness hearing," or final approval hearing, at which the Court decides whether the proposed settlement should be approved as fair, adequate, and reasonable to the class.

*See* Manual for Complex Litigation (Fourth) §§ 21.632-34 (2004).

       By this motion, Plaintiffs ask the Court to take the first step in the approval process and preliminarily approve the proposed Settlement.  Plaintiffs further request that the Court appoint a Settlement Administrator and Payment Advisor, order that notice of the proposed Settlement be disseminated to Class Members pursuant to the Parties' proposed Notice Program, and establish a schedule for the final approval process.

    B.     **The Proposed Settlement Merits Preliminary Approval.**

       To preliminarily assess the reasonableness of the Parties' Settlement, the Court should review both the substance of the deal and the process utilized to arrive at the Settlement.  *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) ("preliminary approval . . . has both a procedural and substantive requirement").  In general, the Court should grant preliminary approval if the Settlement:  (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval.  *Harris v. Vector Marketing Corp.*, No. C-08-5198, 2011 WL 1627973, at *7 (N.D. Cal. April 29, 2011).

1.   **The Proposed Settlement Comes After Extensive Litigation, Is the Product of Extensive Arms-Length Negotiations and Is Non-Collusive, Making it Presumptively Fair, Reasonable, and Adequate.**

The proposed Settlement before the Court is the product of over three years of litigation and five formal mediation sessions before two different mediators (along with several informal sessions). (*See* Gibbs Decl., ¶¶ 4, 25-27.)  The Parties had completed fact and expert discovery, had extensively briefed their legal and factual positions, and were in the midst of trial preparation when they commenced their fifth and final formal mediation session, before Hon. Edward A. Infante, on May 11, 2012.  (*See id.*, ¶¶ 5-24.)  The Class was represented in those negotiations by Court-appointed Class Counsel consisting of six law firms with a strong record of successfully representing consumers in class action litigation.  (*See* Order re: Class Cert. (Dkt No. 172); Class Counsel Affidavits (Dkt Nos. 16-1 to 16-6).)

Under these circumstances, the procedure by which the Parties reached their Settlement should be viewed as informed and non-collusive, and the resulting Settlement thus presumed to be fair.  *See Linney v. Cellular Alaska P'ship*, C-96-3008-DLJ, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997) ("The involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place create a presumption that the agreement is fair."), *aff'd,* 151 F.3d 1234 (9th Cir. 1998).

2.   **The Settlement Has No Obvious Deficiencies.**

Chase will be paying a substantial amount of money to settle the class claims here and the resulting $100 million Settlement Fund is being distributed to the Class for their benefit in a logical and fair manner.  *See, e.g., Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 302 (E.D. Cal. 2011) (finding no obvious deficiencies based on the size of the settlement and methods of distribution).  In addition, Class Members will all be receiving cash via direct-mailed payments. There is no claim form or claims process.

The Ninth Circuit has recently emphasized the importance of also examining the fee provisions of a proposed settlement for potential deficiencies.  *See Dennis v. Kellogg Co.,* No. 11-55674, 2012 WL 2870128, at *8 (9th Cir. July 13, 2012); *In re Bluetooth Headset Products Liab. Litig.,* 654 F.3d 935, 947 (9th Cir. 2011).  Signs that courts should check for, as they may indicate that

9

plaintiffs' counsel negotiated a deficient class compromise to secure greater rewards for themselves, include:

> (1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded

> (2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds

> (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund

*Id.* None of those signs of a potentially deficient class settlement are present here. Class Counsel will be paid from the same Settlement Fund as Class Members, and so had every reason to negotiate the largest fund possible, and their fee will be determined by the Court. In no event will Class Counsel seek fees, excluding expenses, exceeding 27% of the Settlement Fund, which is well within the range of attorney fees previously awarded from common funds of this size. *See Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1052 (9th Cir. 2002) (table of attorney fees awarded from 1996-2001 in cases generating common funds of $50-200 million). Any portion of the requested fee that is not awarded to Class Counsel will remain part of the Settlement Fund and will not revert to Chase.

### 3. The Settlement Treats All Class Members Fairly.

Class Members will be receiving different amounts under the Settlement, but those differences properly take into account differences in the value of their claims. The value of the Class's claims depends on certain variables, such as the price the Class Member paid for the loan and the balance remaining on the loan at the time of the Change-In-Terms. The Settlement's allocation plan takes into account each of those variables but otherwise treats all Class Members the same. All Class Members, including the Class Representatives and named Plaintiffs, will be receiving Settlement Payments based on the same formula. The Class Representatives and named Plaintiffs will also be requesting reasonable service payments (also referred to as incentive awards) which are "fairly typical in class action cases" and designed to compensate those who contributed time and effort to the case on behalf of the Class. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009); *see, e.g., In re TFT-LCD (Flat Panel) Antitrust Litig.,* MDL 3:07-MD-1827 SI, 2011 WL 7575003 (N.D. Cal. Dec. 27, 2011) (granting incentive awards of $15,000 to each of 11 class representatives).

4.      **The Settlement Falls Well Within the Range of Possible Approval.**

To determine whether a settlement "falls within the range of possible approval" a court must focus on "substantive fairness and adequacy," and "consider plaintiffs' expected recovery balanced against the value of the settlement offer."  *In re Tableware Antitrust Litig.,* 484 F.Supp.2d at 1080.

The total amount paid by the Class for the low-APR loans at issue in this litigation was approximately $220 million.  The gross amount of the Settlement Fund—*i.e.* $100 million—represents approximately half of that amount and is an excellent result, particularly in light of the risks and delay of ongoing litigation, including a pending motion to decertify the Class, and a likely appeal even if Plaintiffs were to prevail at trial.  The result is even better when one considers that Class Members did receive a significant portion of the benefits for which they paid transaction fees.  Even after the payment of Administrative Costs and attorneys' fees and expenses, all Class Members will receive Settlement Payments that represent a substantial portion of the transaction fees they paid for their loans.[3]  And while Plaintiffs did put forward alternative measures of damages that, if permitted by the Court and accepted by the jury, could have netted Class Members larger amounts, those measures have been vigorously challenged by Chase.  The Settlement easily falls within the range of possible approval.

C.      <u>**The Parties' Proposed Notice Plan Satisfies Due Process and Should Be Adopted.**</u>

1.      **The Proposed Method Of Notice Is Reasonably Calculated To Apprise Class Members of the Settlement.**

When the named parties of a class action reach a proposed settlement, the court must direct notice in a reasonable manner to Class Members who would be bound by the proposal.  *See* Fed. R. Civ. P. 23(e).  The mechanics of the notice process are left to the Court's discretion, subject only to the broad reasonableness standard of due process, which requires that the notice be reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the proposed settlement and afford them an opportunity to present objections.  *See Colesberry v. Ruiz Food Products, Inc.,* CVF-04-5516-AWI, 2006 WL 1875444, at *7 (E.D. Cal. June 30, 2006) ("Rule 23(e) gives the court 'virtually complete' discretion as to the manner of service of settlement

---

[3] For example, Class Representative X, whose allocation under the settlement is discussed in section II.B.2, would receive approximately 40% of her initial transaction fees.

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT
CASE NO. 3:09-MD-02032 MMC (JL)

notice."); *In re Prudential Ins. Co. of Am. Sales Practices Litigation*, 177 F.R.D. 216, 231 (D.N.J. 1997) (collecting cases from various circuits).

Rule 23(e) is thus less exacting than Rule 23(c)(2)(B), which requires notice of class certification be given using the best means practicable, including through individual notice if reasonably possible.  The Parties previously notified the Class of the Court's certification order through individual direct mailed notice, and now propose to use the same method to inform the Class of the proposed Settlement.  (*See* Settlement, ¶¶ 5.2-5.3.)  This method, which the Court previously found to satisfy Rule 23(c)(2)(B), readily satisfies the less demanding Rule 23(e) notice standard and should be approved here as well.

### 2. The Proposed Form Of Notice Adequately Informs Class Members Of The Settlement And Their Right To Object.

Notice of a proposed settlement pursuant to Rule 23(e) should include:  (1) the essential terms of the proposed settlement; (2) disclosure of any benefits provided to the class representative; (3) information regarding attorney fees; (4) the method for objecting to the settlement; (5) the time and place of the fairness hearing; and (6) how to contact class counsel with any questions.  *Colesberry*, 2006 WL 1875444 at *7 (citing Manual for Complex Litigation, Third, §§ 30.212); *see also Newberg on Class Actions* § 8:32.

The forms of notice proposed by the Parties include all the necessary information.  (*See* Settlement, Exs. 3 & 4.)  The notices provide neutral, plain-language information to Class Members about the lawsuit, the proposed settlement, and their right to object.  They also direct Class Members to the Settlement Website, where they can review the key pleadings in the case, the Settlement Agreement, and relevant orders by the Court.  (*See id.*, ¶ 5.5.)

### 3. A Second Opt-Out Opportunity Is Not Required.

Pursuant to the prior Notice of Pendency, approved by the Court and sent to the Class after the Court granted Plaintiffs' class certification motion, Class Members were previously given an opportunity to opt-out of this class action and were informed that if they did not do so they would be bound by any judgments of the Court "regardless of whether Plaintiffs win or lose the trial or settle the case."  (*See* Approved Notice of Pendency (Dkt. Nos. 194-1, 194-2).)  While Rule 23 gives the

12

Court discretion to provide a second opt-out opportunity, Fed. R. Civ. P. 23(e)(4), the Parties believe that under the circumstances of this case, a second opt-out opportunity is not necessary.[4]  *See Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco*, 688 F.2d 615, 635 (9th Cir. 1982) (finding that due process does not require a second opt-out opportunity after settlement terms changed and noting that a second opt-out could "impede the settlement process so favored in the law").[5]

### 4.   Notice Of The Settlement Will Also Be Provided To Appropriate Federal and State Officials.

As required by the Class Action Fairness Act, 28 U.S.C. § 1715, Chase will give notice of the proposed Settlement to the appropriate state and federal regulators.  (*See* Settlement, ¶ 4.1.)

### D.   <u>Appointment of a Settlement Administrator and Payment Advisor.</u>

The Settlement contemplates two administrative roles that are necessary to ensure that its terms (beginning with class notice) are properly carried out.

First, the Parties request that the Court appoint The Garden City Group, Inc. as the Settlement Administrator.  The Garden City Group was appointed by the Court to mail the prior Notice of Pendency, and as Settlement Administrator would again be responsible for mailing class notice.  (*See* Order re: Class Notice (Dkt. No. 194); Settlement, ¶¶ 5.2-5.5.)  If the Settlement is ultimately approved, The Garden City Group would also be responsible for mailing Class Members their settlement checks, and fulfilling other administrative duties specified in the Settlement.  (*See* Settlement, ¶¶ 6.1, 7.9.)

---

[4] For instance, only .02% (287) of 1,007,806 Class Members who were mailed the Notice of Pendency opted out in the first instance and only about 1% of the mailed Notices of Pendency were returned as undeliverable with no forwarding address.

[5] Under the parties proposed Notice Program, most Class Members (*i.e.* those who were mailed the prior Notice of Pendency and thus previously had the opportunity to request exclusion) would receive Settlement Notice A, which does not include a second opt-out opportunity.  However, two groups of individuals would receive Settlement Notice B, which does provide an opportunity to opt out of the class at this time.  The first group consists of approximately 3,100 Class Members who the parties recently discovered were inadvertently not mailed the Notice of Pendency due to an administrative error.  The second group consists of approximately 16 individuals who submitted incomplete or otherwise invalid opt-out requests in response to the Notice of Pendency and failed to cure them.

13

Second, Plaintiffs request that the Court appoint Litinomics, Inc. as Payment Advisor. Litinomics was previously hired by Class Counsel in this case to analyze the cardmember data provided by Chase and calculate Class Member damages under alternative models.  As Payment Advisor, Litinomics would calculate each Class Member's share of the Settlement Fund according to the Settlement's allocation plan and provide the calculation to Class Counsel for approval.  (*See id.*, ¶¶ 7.7-7.8.)  Given Litinomics familiarity with the account data at issue, it is uniquely situated to efficiently perform this role in a cost-effective manner.

### E.     The Parties' Proposed Schedule for Final Approval Proceedings.

The next steps in the settlement approval process are to notify the Class of the proposed settlement, allow Class Members an opportunity to file any objections or comments regarding the Settlement, allow the Parties to conduct appropriate objector discovery, and hold a final approval hearing.  *See, e.g.,* Final Order and Judgment, *Milano v. Interstate Battery Sys. of Am., Inc.*, No. 4:10-DV-02125 (N.D. Cal. July 5, 2012) (Wilken, J.) (noting that objector repudiated his objection in deposition testimony); *In Re: MagSafe Apple Power Adapter Litig.*, No. 5:09-CV-01911 (N.D. Cal. May 29, 2012) (Ware, J.) (compelling objector depositions regarding their ability to post an appellate bond).  Toward those ends, the Parties propose the following schedule:

| | |
|---|---|
| Last day to mail settlement notices to the Class: | **[10 business days after entry of Preliminary Approval Order]** |
| Last day for Plaintiffs to file motion(s) in support of final approval of the Settlement, and for Class Counsel to file their fee application: | **[15 days after the last day to mail settlement notices]** |
| Last day for all Class Members to postmark comments and objections to the Settlement or fee application: | **[35 days after the last day to mail settlement notices]** |
| Last day for Class Members with Additional Accounts and Incomplete Opt-Outs to postmark or email opt-out requests: | **[35 days after the last day to mail settlement notices]** |
| Last day for the Parties to file any additional papers in support of final approval of the Settlement, responses to objections, and any replies in support of Class Counsel's fee application: | **[77 days after the last day to mail settlement notices]** |
| Fairness Hearing: | **[91 days after the last day to mail settlement notices]** |

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT
CASE NO. 3:09-MD-02032 MMC (JL)

IV.     **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the accompanying Proposed Order granting preliminary approval of the proposed settlement; directing dissemination of notice to the Class as proposed; appointing a Settlement Administrator and Payment Advisor; and setting a schedule for final approval and related deadlines.


Dated:  July 23, 2012                                Respectfully submitted,


                                                     By:     _/s/ Michael W. Sobol_____

                                                     Michael W. Sobol
                                                     Elizabeth J. Cabraser
                                                     Roger N. Heller
                                                     **LIEFF, CABRASER, HEIMANN &**
                                                     **BERNSTEIN, LLP**
                                                     275 Battery Street, 30th Floor
                                                     San Francisco, CA  94111-3336
                                                     Telephone: (415) 956-1000
                                                     Facsimile: (415) 956-1008

                                                     James C. Sturdevant
                                                     **THE STURDEVANT LAW FIRM, P.C.**
                                                     354 Pine Street, Fourth Floor
                                                     San Francisco, CA 94104
                                                     Telephone: (415) 477-2410
                                                     Facsimile: (415) 477-2420

                                                     Oren S. Giskan
                                                     **GISKAN SOLOTAROFF ANDERSON**
                                                     **& STEWART LLP**
                                                     11 Broadway, Suite 10004
                                                     Telephone: (215) 847-8315
                                                     Facsimile: (215) 964-9645

                                                     Robert S. Green
                                                     Charles D. Marshall
                                                     **GREEN WELLING P.C.**
                                                     595 Market Street, Suite 2750
                                                     San Francisco, CA 94105
                                                     Telephone: (415) 477-6700
                                                     Facsimile: (415) 477-6710

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT
CASE NO. 3:09-MD-02032 MMC (JL)

Eric H. Gibbs
Geoffrey A. Munroe
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

Jeff Westerman
**MILBERG LLP**
One California Plaza
300 South Grand Avenue, Suite 3900
Los Angeles, CA 90071
Telephone: (213) 617-1200
Facsimile: (213) 617-1975

*Plaintiffs' Executive Committee*

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT
CASE NO. 3:09-MD-02032 MMC (JL)

**ECF FILER'S ATTESTATION**

I, Eric H. Gibbs, as the e-filing counsel, attest that concurrence in filing this document has been obtained from Michael W. Sobol.  I will maintain a record of the concurrence until one year after final resolution of the action.

Dated:  July 23, 2012                                        By: /s/ *Eric H. Gibbs*

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT
CASE NO. 3:09-MD-02032 MMC (JL)