1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Elizabeth J. Cabraser (State Bar No. 83151)
Michael W. Sobol (State Bar No. 194857)
Roger N. Heller (State Bar No. 215348)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA  94111-3336
Telephone:    (415) 956-1000
Facsimile:     (415) 956-1008

*Plaintiffs' Liaison Counsel*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: Chase Bank USA, N.A. "Check Loan" Contract Litigation<br><br>_____<br><br>THIS DOCUMENT APPLIES TO ALL ACTIONS | MDL No. 2032<br><br>Case No. 3:09-md-02032 MMC<br><br>The Honorable Maxine M. Chesney<br><br>**DECLARATION OF ERIC H. GIBBS IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT** |

1    I, Eric H. Gibbs, hereby declare as follows:

2    1.    I am a partner at Girard Gibbs LLP, one of the law firms serving as a member of

3    Plaintiffs' Executive Committee in this Action.  I submit this declaration in support of Plaintiffs'

4    Motion for Preliminary Approval of Class Settlement.  This declaration is based on my direct

5    involvement in the prosecution of this matter and my review of the files comprising this litigation.  If

6    called upon to do so, I could and would testify competently thereto.

7    2.    Capitalized terms not otherwise defined herein have the same meaning as set forth in

8    the Parties' Class Settlement Agreement and Release, attached hereto as Exhibit 1 and hereafter

9    referred to as the "Settlement."

10    3.    On May 11, 2012, Class Counsel and Chase reached an agreement in principle to settle

11    this Action on behalf of the certified class, and on July 20, 2012, signed a formal settlement

12    agreement.  Each of the six law firms serving on the Plaintiffs' Executive Committee participated in

13    the negotiations and considers the final agreement to be fair, adequate, and reasonable.  The Class

14    Representatives have been informed about and support the Settlement.  Class Counsel also presented

15    at least one counsel for each Plaintiff of record in the Related Actions coordinated in MDL 2032 with

16    the key terms of the Settlement, and as of the date of this filing, no such Related Action Plaintiff or

17    their counsel have raised any complaints or other objections to the terms of the Settlement.

18    4.    Class Counsel have been litigating this case for over three years, advancing the case

19    through dispositive motions, class certification, discovery (punctuated by numerous motions to

20    resolve disputes), expert consultations, specialized trial preparation activities, and five separate formal

21    mediation sessions (and several informal sessions).  The nature of the work completed in this Action

22    indicates the breadth of knowledge Class Counsel enjoys regarding the strength of the case, the risks

23    inherent in continued litigation and trial (including post-trial appeals), and the value of the proposed

24    settlement to class members.  The highlights of this work, which serves as the foundation for Class

25    Counsel's view that the proposed Settlement is fair, adequate, and reasonable, are summarized below

26    in the following categories:

27        ➢    General Case Management

28        ➢    Law and Motion Practice – Non-Discovery Related

   ➢    Discovery Efforts

   ➢    Response to Chase's Discovery Efforts

   ➢    Law and Motion Practice – Discovery Related

   ➢    Expert Consultation

   ➢    Trial Preparations

   ➢    Mediation Sessions

**GENERAL CASE MANAGEMENT**

5.     In the course of investigating class claims and litigating this case, Class Counsel have communicated with thousands of Class Members about their Chase Life-of-Loan accounts and the impact of the minimum payment increase on their finances.  Class Members have contacted counsel through the Court-authorized class website, via the telephone number provided in the class Notice of Pendency and through the websites maintained by the law firms on the Plaintiffs' Executive Committee.  Collectively, Class Counsel have heard from thousands of Class Members and have interviewed a significant portion of these Class Members.

6.     After the individual complaints underlying this Action were consolidated in this Court, Class Counsel prepared the Master Class Action Complaint and filed it on July 26, 2009.

7.     As the litigation progressed, Class Counsel drafted Plaintiffs' portion of periodic case management statements and coordinated with Chase to file Joint Case Management Statements on July 27, 2009, December 4, 2009, April 15, 2010, July 22, 2011, October 27, 2011, and April 20, 2012, appearing before the Court for Case Management Conferences shortly after each filing.

8.     Following certification of the Class, Class Counsel engaged with Chase's counsel to develop the class Notice of Pendency.  Class Counsel informed the Court of the parties' proposed form of notice and notice plan via a joint memorandum on July 8, 2011, communicated an agreed modification on September 13, 2011, and filed a stipulation requesting that the Court order dissemination of class notice on September 23, 2011.  The Court granted that request on September 28, 2011, and notice was disseminated in approximately November 2011.  Only 287 of about 1 million Class Members opted out of the certified Class, while only 13,035 class notices were returned to the Notice Administrator as undeliverable with no forwarding address.

DECLARATION OF ERIC H. GIBBS
CASE NO. 09-CV-02032 MMC

**LAW AND MOTION PRACTICE–NON-DISCOVERY RELATED**

9.   This Action has required extensive law and motion practice, beginning even before the Panel on Multidistrict Litigation ordered that the underlying actions be consolidated in the Northern District of California.  Giskan Solotaroff Anderson & Stewart, LLP, for instance, sought a preliminary injunction in the Central District of California in February 2009 to restore Class Members' original Life-of-Loan terms.  Since then, Class Counsel has filed or opposed the following motions:

a.   On July 15, 2009, Class Counsel filed an Administrative Motion for Entry of Initial Case Management Order and Appointment of Interim Counsel, which the Court granted on July 24, 2009.  This motion and order established the current Plaintiffs' Executive Committee.

b.   On August 13, 2009, Class Counsel filed a Joint Administrative Motion for Entry of Stipulated Protective Order, which the Court granted on August 21, 2009.  Pursuant to this Protective Order, most subsequent filings have been lodged under seal with accompanying administrative motions to seal.

c.   On September 21, 2009, Chase filed a motion to dismiss the Master Complaint, supported by a request for judicial notice.  Class Counsel opposed the motion and the accompanying request for judicial notice and filed a separate request for judicial notice on October 19, 2009.  The Court granted the motion in part and denied it in part on November 20, 2009, sustaining Plaintiffs' claim that Chase breached the implied covenant of good faith and fair dealing.  On December 22, 2009, Chase filed an Answer to the Master Complaint.

d.   On October 15, 2010, Class Counsel moved to certify the Class.  The motion was followed by related motion practice regarding Chase's request to seal the filing and for more time to review Plaintiffs' expert consultant and potentially engage its own.  Chase filed its opposition to class certification and moved to strike the declaration of Plaintiffs' expert in support of the motion on December 12, 2010.  Class Counsel filed a reply regarding class certification and opposition to the motion to strike on February 25, 2011.  Chase replied regarding the motion to strike on March 4, 2011, and also moved to file a supplemental expert declaration, which Class Counsel opposed.  Following a hearing, both parties filed supplemental materials in mid-April 2011.  The Court granted

Plaintiffs' motion to certify the class and denied Chase's motion to strike Plaintiffs' expert declaration.

e.     On March 8, 2012, Chase filed a motion to transfer venue.  Class Counsel opposed the motion on March 22, 2012, and Chase replied on March 29, 2012.  The Court denied the motion on April 11, 2012.

f.     On April 13, 2012, Class Counsel filed a motion for partial summary judgment regarding Chase's preemption defense.  Chase opposed the motion on May 5, 2012, and Plaintiffs replied on May 11, 2012.

g.     On April 13, 2012, Chase filed motions to de-certify the Class and for summary judgment on both preemption grounds and the merits of the case.  Class Counsel opposed the de-certification motion on May 1, 2012, and the summary judgment motion on May 3, 2012.  Chase replied on May 11, 2012.

h.     Class Counsel and Chase reached an agreement in principle to settle the case on May 11, 2012, before the Court ruled on the motions for partial summary judgment, summary judgment, and de-certification.  Class Counsel and Chase reported the agreement to the Court by telephone and in a May 17, 2012, joint filing.  The Court ordered the pending motions deemed withdrawn without prejudice on May 18, 2012.

10.     Pursuant to the stipulated Protective Order, most filings in this Action were lodged under seal subject to an administrative motion to seal.  Class Counsel implemented the procedures set forth in Civil Local Rule 79-5(d) to lodge under seal Plaintiffs' class certification motion, reply regarding class certification, response to Chase's statement of recent decision, motion for partial summary judgment, and oppositions to Chase's motions to de-certify the Class and for summary judgment.  Class Counsel also lodged several statements regarding discovery disputes and documents relating to pending disputes under seal.  Class Counsel opposed Chase's motions to keep the class certification motion and two of the discovery dispute statements under seal.

**DISCOVERY EFFORTS**

11.     Class Counsel commenced formal discovery shortly after the Court established Plaintiffs' Executive Committee and appointed the committee interim counsel.

4

1           a.     Class Counsel served Plaintiffs' First Request for Production of Documents on

2    August 24, 2009, and served another six sets of requests between January 2010 and January 2012.  In

3    total, Class Counsel served 88 requests for production of documents.

4           b.     Class Counsel served Plaintiffs' First Set of Interrogatories on January 8, 2010,

5    and a second set on August 17, 2011.  In total, Class Counsel served 26 interrogatories, some of

6    which included numerous sub-parts.

7           c.     Class Counsel served Plaintiffs' First and Second Requests for Admission on

8    January 27, 2012.

9         12.     Class Counsel reviewed approximately 75,000 pages of documents produced by Chase

10   in response to requests for production.  Chase also produced a substantial amount of account data that

11   was analyzed by Class Counsel and Plaintiffs' damages expert.

12        13.     Class Counsel also deposed a number of current and former Chase executives and

13   employees.  Class Counsel deposed:

14          a.     Deborah E. Walden, Executive Vice President in Chase's Card Services

15   division, on September 22, 2010, and January 11, 2011;

16          b.     Thomas O'Donnell, a Senior Vice President of Marketing at Chase, on

17   September 23-24, 2010 and February 29, 2012;

18          c.     Suzanne Morgan, a Senior Business Operations Manager in Chase's marketing

19   services department, on January 12, 2011 and March 2, 2012;

20          d.     Robert Klein, an expert retained by Chase, on January 21, 2011 and February

21   23, 2011;

22          e.     Christopher M. James, an expert retained by Chase, on February 11, 2011, and

23   on March 27, 2012;

24          f.     Joseph Garcia, an Operational Readiness Manager at Chase, on September 8,

25   2011;

26          g.     William Wallace, a Senior Vice President at Chase, on October 12, 2011;

27          h.     Gordon Smith, Chief Executive Officer of Chase's Card Services division, on

28   November 8, 2011;

1       i.      Rick Taglione, a Senior Finance Director at Chase, on November 30, 2011 and

2   December 1, 2011;

3       j.      Elaine Weeks-Trueblood, Director of Business Operations at Chase, on

4   December 7, 2011;

5       k.      Shirley Fung, a former Business Analysis Group Manager at Chase, on January

6   10, 2012;

7       l.      Stephanie Jacobson, a former Senior Manager of Public Affairs at Chase, on

8   February 22, 2012;

9       m.      Raymond Fischer, Chief Financial Officer of Chase's Card Services division,

10  on March 2, 2012; and

11      n.      Dominique Hanssens, an expert retained by Chase, on March 29, 2012.

12  **RESPONSE TO CHASE'S DISCOVERY EFFORTS**

13      14.     Class Counsel responded to Chase's discovery requests beginning in February 2010.

14      a.      Class Counsel served individual responses to Chase's first set of interrogatories

15  on February 10, 2010 for Plaintiffs Candelaria, Conley, Greenberg, King, Kuramoto, Lazinski,

16  Moore, Neuman, Norman, Reinertson, Smolensky, Wilkinson, Williams, and Zimet.  Class Counsel

17  served Plaintiff Hanisch's responses and objections on October 1, 2010.  In total, Class Counsel

18  served individual responses and objections to 8 interrogatories made to 15 Plaintiffs.

19      b.      Class Counsel served joint responses to Chase's second set of interrogatories

20  for Plaintiffs Moore, Hanisch, Lazinski, Reinertson, Greenberg, Williams, Kuramoto, Neuman,

21  Smolensky and Wilkinson on March 1, 2012, and individual supplemental responses and objections

22  for each on March 9, 2012.  In total, Class Counsel served joint responses and objections and

23  individual supplemental responses and objections to 18 interrogatories made to 10 Plaintiffs.

24      c.      Class Counsel served joint responses to Chase's first set of requests for

25  production of documents on February 9, 2010, and separate responses and objections for Plaintiff

26  Hanisch on October 1, 2010.  Class Counsel served joint responses and objections to Chase's second

27  set of requests for production of documents on January 23, 2012, and to Chase's third set of requests

28

6

on March 5, 2012.  In total, Class Counsel served responses and objections to 8 requests made to 15 Plaintiffs and another 19 requests made to 10 Plaintiffs.

        d.    Class Counsel also served responses to Chase's requests for documents served with deposition notices for several of the named Plaintiffs.

        e.    Class Counsel served Plaintiffs' joint responses to Chase's first set of requests for admissions on February 9, 2010, and Plaintiff Hanisch's separate responses and objections on October 1, 2010.  Class Counsel served Plaintiff Hanisch's responses and objections to Chase's second set of requests for admission on November 19, 2010.  In total, Class Counsel served responses and objections to 17 requests made to 15 Plaintiffs and one additional request made to one Plaintiff.

    15.    Plaintiffs searched diligently for documents requested by Chase and endeavored to provide as much relevant information as possible.  Class Counsel ultimately produced approximately 700 pages of Plaintiffs' documents to Chase.

    16.    Chase sought information about the case from several Plaintiffs' and their experts through deposition.  Class Counsel defended the following depositions:

        a.    Plaintiff Michael Moore on August 27, 2010;

        b.    Plaintiff Carole Lazinski on September 10, 2010;

        c.    Plaintiff Regina Smolensky on September 11, 2010;

        d.    Plaintiff Orly Williams on September 21, 2010;

        e.    Plaintiff David Greenberg on September 26, 2010;

        f.    Plaintiff Richard Reinertson on September 27, 2010;

        g.    Plaintiff Brian Wilkinson on September 28, 2010;

        h.    Plaintiff Jacob Kuramoto on October 4, 2010;

        i.    Plaintiff Melissa Neuman on October 5, 2010;

        j.    Plaintiff James Hanisch on October 6, 2010;

        k.    Adam Levitin, an expert retained by Plaintiffs, on November 4, 2010 and March 20, 2012;

        l.    Jane Nettesheim, an expert retained by Plaintiffs, on March 15, 2012;

7

1    m. Bruce McFarlane, an expert retained by Plaintiffs, on March 23, 2012; and

2    n. Celinda Lake, an expert retained by Plaintiffs, on April 3, 2012.

## LAW AND MOTION PRACTICE–DISCOVERY-RELATED

17. Discovery was extremely hard-fought in this Action and Class Counsel and Chase engaged in significant meet-and-confer communications, often weekly during significant stretches of the litigation and at times daily, to work through disputes about discovery requests and responses.  In addition, Class Counsel engaged in the following discovery-related motion practice:

    a. On August 13, 2010, Class Counsel moved to compel Chase to produce documents responsive to Plaintiffs' document requests.  Following Chase's opposition and the production of several thousand documents, Class Counsel withdrew the motion on October 5, 2010.

    b. On February 19, 2011, Class Counsel filed a separate statement regarding a discovery dispute over Chase's failure to produce documents it claimed were protected by the "bank examination privilege."  Chase filed its own statement shortly thereafter, and on March 17, 2011, the Court ordered that before it could order production Plaintiffs must first disclose the requested documents to the Office of the Comptroller of the Currency ("OCC"), the holder of the privilege, to determine whether that entity would invoke the privilege.  A large portion of the documents for which the protection was asserted were ultimately produced.

    c. On June 10, 2011, Class Counsel filed a separate statement regarding a discovery dispute over whether Chase over-withheld responsive documents on attorney-client privilege and work product grounds, and Chase filed a related statement on June 13, 2011.  Following a discovery conference, Class Counsel identified 20 documents for *in camera* review and both sides fully briefed the issue.  On July 28, 2011, the Court ordered Chase to produce many of the 20 sample documents and to re-review the remaining documents in question.

    d. On October 21, 2011, Class Counsel filed a joint statement regarding a discovery dispute over the deposition of Gordon Smith, the Chief Executive Officer of Chase's Card Services division.  Class Counsel later filed supporting documents and successfully argued in favor of the deposition at a hearing on November 3, 2011.

8

1      e.      On January 19, 2012, Class Counsel filed a separate statement regarding a

2   discovery dispute over whether Chase over-redacted documents on "relevance" grounds. Chase

3   responded on January 27, 2012. Following a hearing on February 15, 2012, the Court ordered Chase

4   to re-review the documents, meet and confer with Class Counsel, and submit a joint letter brief with

5   Plaintiffs if necessary. Class Counsel and Chase engaged in meet-and-confer, and filed a joint report

6   on March 2, 2012, updating the Court about their progress.

7      f.      On January 24, 2012, Class Counsel filed a separate statement regarding a

8   discovery dispute over the requested deposition of Stephanie Jacobson, Chase's former media contact

9   for the Card Services division, and a request for leave to take additional testimony from Thomas

10   O'Donnell, the Chase employee with primary responsibility for developing the minimum payment

11   change-in-terms. Chase responded on January 31, 2012. Following a hearing on February 15, 2012,

12   the Court permitted the depositions to proceed.

13      g.      On February 7, 2012, Class Counsel filed a separate statement regarding a

14   discovery dispute over further testimony on certain Rule 30(b)(6) topics. Following a February 15,

15   2012, hearing, the Court denied Plaintiffs further such testimony.

16      h.      On February 7, 2012, Class Counsel also filed a separate statement regarding a

17   discovery dispute over whether Chase continued to over-withhold documents on attorney-client

18   privilege and work product grounds. Chase responded on February 10, 2012. Following a hearing on

19   February 15, 2012, the Court ordered Chase to re-review the documents, meet and confer with Class

20   Counsel, and submit a joint letter brief with Plaintiffs if necessary.

21      i.      On February 28, 2012, Class Counsel filed a joint statement regarding a

22   discovery dispute over Chase's non-production of certain Class Member account data. On April 4,

23   2012, the Court held that the data in question was relevant and should be produced, and ordered Class

24   Counsel and Chase to further meet and confer regarding this issue.

25      j.      On March 9, 2012, Class Counsel moved to compel certain discovery and filed

26   joint statements regarding the following discovery disputes: (1) the production of documents relating

27   to a customer service representative study mentioned by a Chase witness; (2) the adequacy of

28   Chase's responses to Plaintiffs' seventh request for documents and second request for admissions; (3)

production of documents regarding Chase's financial analysis of the Change-In-Terms; and (4) production of documents relating to customer complaints about the minimum payment increase. Class Counsel filed separate statements regarding the following discovery disputes: (1) production of documents relating to Chase's population criteria for the June 2009 Change-In-Terms, and (2) production of specific documents relating to the Class Representatives. On April 4, 2012, the Court ordered the production of customer complaint records and ordered Class Counsel and Chase to meet and confer regarding this issue, and denied the motion to compel responses to the discovery requests except for one request for admission and to compel production of the customer service representative study, financial analysis, population criteria, and specific Class Representative documents.

k.  On March 9, 2012, Chase filed motions (1) to compel Plaintiffs to respond to particular discovery requests seeking information about actual replacement funds obtained by the Class Representatives after the Change-In-Terms; (2) for a protective order regarding document CHASE0051406 on attorney-client privilege and work product grounds; and (3) for a protective order regarding multiple versions of a document titled "Life of Loan Update" on privilege grounds. Chase filed a joint statement regarding the "Life of Loan Update" documents on March 23, 2012, which included Class Counsel's opposition to Chase's request, and the Court denied the requested protective order on April 3, 2012. Chase filed a joint statement regarding document CHASE0051406 on April 6, 2012, which included Class Counsel's opposition to Chase's request, and the Court granted the protective order on May 3, 2012.

l.  On March 16, 2012, Class Counsel filed a joint statement regarding a discovery dispute over the production of specific documents relating to the named Plaintiffs. This statement replaced the separate Plaintiffs' statement filed on March 9, 2012, on the same issue.

m.  On April 13, 2012, Class Counsel filed a joint statement regarding a discovery dispute over whether Chase over-redacted documents on relevancy grounds. This statement followed Class Counsel's and Chase's meet-and-confer efforts following the Court's February 16, 2012 order relating to the same documents. The Court ordered Chase to produce the documents in question on May 7, 2012.

n.     On April 23, 2012, Class Counsel filed a further joint statement regarding a discovery dispute over the production of customer complaint records.  This statement addressed the failure of Class Counsel and Chase to agree on a date for production.  On April 27, 2012, the Court ordered Chase to produce the documents on a rolling basis by June 15, 2012.

**EXPERT CONSULTATION**

18.     Plaintiffs retained four experts to assist with prosecution of this Action.  Information provided by these experts informed Class Counsel about industry practices regarding minimum payments, consumer expectations regarding the same, and potential methods to calculate damages.

19.     Adam Levitin, a law professor who focuses on the credit card industry in his academic research, was asked to opine on credit card industry practices regarding minimum payments, the lack of precedent for Change-In-Terms at issue, and related issues.  Mr. Levitin submitted a declaration in support of Plaintiffs' class certification motion and provided a full expert report that was served on Chase on February 10, 2012.  Mr. Levitin also provided a rebuttal expert report, rebutting opinions of Chase's designated experts, on March 9, 2012.

20.     Jane Nettesheim, a financial economist, was retained to opine on the appropriate economic methodology to employ to measure the harm suffered by the Class as a result of the Change-In-Terms.  Ms. Nettesheim provided a full expert report that Plaintiffs served on Chase on February 10, 2012, and a rebuttal expert report which Plaintiffs served on Chase on March 9, 2012.

21.     Plaintiffs retained Bruce McFarlane, a certified public accountant and certified management accountant, to implement Plaintiffs' damages methodology and calculate damages for Class Members.  Mr. McFarlane further analyzed the substantial account data produced by Chase to develop summary statistics for Class Counsel's use and utilized the data to build Plaintiffs' damages model.  Mr. McFarlane provided a full expert report that Plaintiffs served on Chase on February 10, 2012, and a supplemental report served on April 12, 2012.

22.     Plaintiffs retained Celinda Lake, a nationally recognized polling strategist, to evaluate the consumer survey conducted by Chase's expert Robert Klein.  Ms. Lake provided  a rebuttal expert report that Plaintiffs served on Chase on March 9, 2012.

DECLARATION OF ERIC H. GIBBS
CASE NO. 09-CV-02032 MMC

**TRIAL PREPARATIONS**

23.     Class Counsel also spent significant time preparing for trial pursuant to the Court's pretrial instructions.  Counsel drafted lists of potential witnesses and reviewed and analyzed thousands of potential trial exhibits to narrow the selection to a manageable set of documents. Counsel also began drafting jury instructions and verdict forms, and conducted legal research regarding a variety of trial-related issues.

**MEDIATION SESSIONS**

24.     The Court referred the parties to private mediation on August 3, 2009, and again on December 11, 2009.  Class Counsel and Chase first engaged in mediation before the Honorable Ellen Sickles James (Ret.) on April 21-22, 2010.  Class Counsel and Chase engaged in a second mediation session before Judge James on June 28, 2010, and subsequently engaged in a mediation session before the Honorable Edward A. Infante (Ret.) on July 6, 2010.  A fourth session of settlement talks occurred on October 24, 2011, with Judge Infante mediating.

25.     Throughout the formal mediation sessions and continued telephonic discussions with Judge Infante in 2010 and 2011, Class Counsel and Chase were unable to bridge a significant gap in their respective valuations of the case. Class Counsel thus continued vigorously litigating the case, against Chase's similarly vigorous efforts, with the expectation of resolving the merits at trial.

26.     At the case management conference held before the Court on April 20, 2012, with preparations well-underway for a July 16 trial date, the parties, at the Court's suggestion, agreed to once again try mediation.  Class Counsel and Chase thus engaged in a final mediation session with Judge Infante on May 11, 2012.

I declare under penalty of perjury that the foregoing facts are true and correct and that this declaration was executed this 23th day of July 2012, in San Francisco, California.


          /s/ Eric H. Gibbs
          Eric H. Gibbs

DECLARATION OF ERIC H. GIBBS
CASE NO. 09-CV-02032 MMC

**EXHIBIT 1**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: Chase Bank USA, N.A. "Check Loan" Contract Litigation | MDL No. 2032 |
| | Case No. 3:09-md-2032 MMC (JSC) |
| | **CLASS SETTLEMENT AGREEMENT AND RELEASE** |
| THIS DOCUMENT APPLIES TO ALL ACTIONS | |

This Class Settlement Agreement and Release (the "Agreement" or "Settlement")[1] is made by and among:  (1)  the Class, by and through the Class Representatives Michael Moore, Brian Wilkinson, Carole Lazinski, David Greenberg, Jacob Kuramoto, James Hanisch, Melissa Neuman, Orly Williams, Regina Smolensky, Richard Reinertson, and Frederic Soliman, individually and on behalf of the Class, and Class Counsel, on the one hand, and (2) Chase Bank USA, N.A., on the other.  Chase and the Class hereby stipulate and agree that, in consideration of the promises and covenants set forth in this Agreement, and upon the occurrence of the Effective Date, all Released Claims of the Class Representatives and Class Members against the Released Parties, in the above-captioned Action and all of the Related Actions, shall be settled, compromised and released upon the terms and conditions contained herein.

## I.    RECITALS

1.1.    On June 26, 2009, the JPML established MDL 2032, transferring 14 actions to the Court for coordinated proceedings, pursuant to 28 U.S.C. § 1407.  (Docket No. 1)  Following the JPML's June 26, 2009 transfer order, an additional 18 actions were transferred for coordination in MDL 2032.  The plaintiffs in these actions alleged claims against Chase, the Chase Issuance Trust, JPMorgan Chase & Co. and various "Doe" defendants, based on the monthly minimum payment Changes-in-Terms.  Additionally, the plaintiffs in some of these actions alleged claims based on Chase's assessment of a $10 monthly fee on the accounts of cardholders who received the first of the two Changes-in-Terms.

1.2.    On July 26, 2009, the Master Complaint was filed in MDL 2032, alleging, on behalf of a putative nationwide class of Chase cardholders, causes of action for breach of the implied covenant of good faith and fair dealing; unconscionability; declaratory relief; unjust enrichment/restitution; breach of contract; violations of various state consumer protection statutes; and violations of the Truth In Lending Act, 15 U.S.C. § 1601 *et. seq.*  The Master Complaint named Chase, the Chase Issuance Trust, and JPMorgan Chase & Co. as Defendants.  (Docket No. 24)

---

[1] Capitalized terms are defined in Part II below.

1.3.    On November 20, 2009, the Court issued an order (Docket No. 70) dismissing all claims, with the exception of the claim for breach of the implied covenant of good faith and fair dealing.

1.4.    On December 11, 2009, the Court issued a minute order dismissing without prejudice all claims against JPMorgan Chase & Co. (Docket No. 73)

1.5.    On December 22, 2009, Chase and the Chase Issuance Trust answered the Master Complaint.  (Docket No. 74)

1.6.    On May 13, 2011, the Court issued an order certifying the Class.  (Docket No. 172)

1.7.    On September 28, 2011, the Court approved, and ordered dissemination of, the Notice of Pendency, which was mailed on or around November 30, 2011.  A total of 287 persons submitted timely, valid requests to be excluded from the Class.

1.8.    On April 12, 2012, the Chase Issuance Trust was dismissed without prejudice, pursuant to FRCP 41(a)(1)(ii). (Docket No. 283)

1.9.    On April 13, 2012, Chase filed a motion to decertify class and a motion for summary judgment, and the Class Representatives filed a motion for partial summary judgment. These three motions are fully briefed, but not yet decided by the Court.

1.10.    A jury trial was scheduled to commence in this Action on July 16, 2012.

1.11.    On May 18, 2012, upon receiving notice from the Parties that they had reached an agreement in principle to settle this Action, the Court issued an order suspending the trial date and all other pending deadlines in this Action, and deeming the Parties' pending motions for decertification, summary judgment and partial summary judgment withdrawn without prejudice.  (Docket No. 335)

1.12.    After analyzing the relevant facts and applicable law, recognizing the burdens, risks, uncertainties, time and expense of litigation, as well as the advantages of terms and procedures for a fair and efficient resolution of Class Members' claims under this Settlement, Class Counsel and the Class Representatives have concluded that this Settlement is a fair, equitable and just resolution of the Released Claims.

1.13.    The Parties reached this Settlement after arms-length negotiations, which included multiple mediation sessions with experienced, well-respected mediators.  The Parties engaged in mediation before the Hon. Ellen Sickle James (Ret.) of JAMS on April 21 and 22, 2010 and June 28, 2010.  The Parties further engaged in mediation before the Hon. Edward A. Infante (Ret.) of JAMS on July 6, 2010, October 24, 2011 and May 11, 2012.

1.14.    The Parties' negotiations through mediation resulted in an agreement on the principal terms of a settlement, based on a mediator's proposal presented orally to the Parties on May 11, 2012, subject to negotiation and execution of this Agreement and subject to preliminary approval and final approval by the Court as required by FRCP 23.

1.15.    Chase denies all claims asserted in this Action and the Related Actions, and denies all allegations of wrongdoing and liability.  Chase nevertheless desires to settle all claims that were or are asserted, or which could have been asserted, on the terms and conditions set forth herein, for the purpose of avoiding the burden, expense and uncertainty of continuing litigation and for the purpose of putting to rest the controversies engendered by this Action and the Related Actions.  Nothing in this Agreement or any other document shall be construed as an admission or evidence of any violation of any federal or state statute, rule or regulation, or principle of common law or equity, or of any liability or wrongdoing whatsoever, or of the truth of any of the claims asserted or which could have been asserted in this Action or the Related Actions, or of the infirmity of any defenses that have been raised or could have been raised by Chase against the Master Complaint or in any of the Related Actions.  Further, Chase is not estopped from challenging allegations in this Action, in further proceedings in this Action, in the Related Actions or in any other action or proceeding.

1.16.    Chase warrants that: (a) it has taken all reasonable steps to identify from its cardmember data those Persons who are within the Class definition certified by the Court in this Action; (b) it is not aware of any Persons who are within the Class definition certified by the Court in this Action other than those Persons who were sent the Notice of Pendency (according to the records of the Settlement Administrator) and those Persons with Additional Accounts who were inadvertently not sent the Notice of Pendency; and (c) it is not aware of any additional reasonable

CLASS SETTLEMENT & RELEASE

steps that could be taken to identify any other such heretofore unidentified Persons within the Class definition, if any.

NOW, THEREFORE, in light of the foregoing, for good and valuable consideration, the receipt of which is hereby mutually acknowledged, the Parties agree to this Settlement, subject to approval by the Court, as follows.

## II.  **DEFINITIONS**

The following defined terms apply throughout this Agreement:

2.1  "Action" or "MDL 2032" means the multi-district litigation styled *In re: Chase Bank USA, N.A. "Check Loan" Contract Litigation*, MDL No. 2032, N.D. Cal. Case No. 3:09-md-2032 MMC (JSC), and all actions coordinated or consolidated therewith.

2.2  "Administrative Costs" means all costs associated with the implementation and administration of this Settlement, including, without limitation, the costs of providing notice to the Class pursuant to the Notice Program set forth in Part V of this Agreement, the other fees and expenses of the Settlement Administrator, and the reasonable fees and expenses of the Payment Advisor in connection with assisting in the estimation and calculation of the Class Members' Settlement Payment amounts pursuant to Part VII of this Agreement.  Notwithstanding the foregoing, Administrative Costs do not include payments to Class Counsel pursuant to Part VIII herein, any expenses related to the provision of Security pursuant to Section 8.5 herein, payments to Class Representatives or Related Action Plaintiffs pursuant to Part IX herein, or payments to the Class Members.

2.3  "Additional Accounts" means the 3,117 Chase credit card accounts, identified by Chase to Class Counsel on July 5, 2012, which belong to Persons within the Class definition certified by the Court in this Action, most or all of whom were inadvertently not sent the Notice of Pendency.

2.4  "Agreement" or "Settlement" means this Class Action Settlement Agreement and Release, together with all schedules and exhibits hereto, and including any modifications made with the written consent of all Parties.

CLASS SETTLEMENT & RELEASE

2.5 "Alternative Offer" means Chase's offer made to certain Class Members, whereby the Class Member could maintain his or her prior minimum monthly payment requirement in exchange for accepting an APR of 7.99% for one or more of their LOL Balance(s).

2.6 "APR" means annual percentage rate of interest.

2.7 "Balance Transfer Fees" means up-front fees paid by Class Members in connection with Qualifying Balance(s), as set forth or estimated in data previously produced by Chase to Class Counsel in discovery in the Action.

2.8 "Business Day" means any day except a Saturday, Sunday or federal holiday.

2.9 "CAFA" means the federal Class Action Fairness Act.

2.10 "Change-in-Terms" and "Changes-in-Terms" mean and include: (a) the notices sent by Chase in or around November 2008, notifying certain cardholders with LOL Balances that their minimum monthly payment requirement was increasing from 2% to 5% of their total outstanding account balance, and that their accounts would be subject to a $10 monthly fee; and (b) the notices sent by Chase in or around June 2009, notifying certain cardholders with LOL Balances that their minimum monthly payment requirement was increasing from 2% to 5% of their total outstanding account balance; and (c) the implementation of increased minimum monthly payment requirements and/or the $10 monthly fee on Class Member Accounts pursuant to the notices described in parts (a) and (b) of this paragraph; and (d) all remediation, reversal and restoration activity by Chase on Class Member Accounts relating to the increased minimum monthly payment requirements and/or the $10 monthly fee applied pursuant to the notices described in parts (a) and (b) of this paragraph.

2.11 "Chase" means Chase Bank USA, N.A.

2.12 "Chase's Counsel" means Stroock & Stroock & Lavan LLP.

2.13 "Class" means the class certified by the Court in its May 13, 2011 order as follows:

> All persons or entities in the United States who entered into a loan agreement with Chase, whereby Chase promised a fixed APR until the loan balance was paid in full, and (i) whose minimum monthly payment was increased by Chase to 5% of the outstanding balance, or

(ii) who were notified by Chase of a minimum payment increase and subsequently closed their account or agreed to an alternative change in terms offered by Chase.

(Docket No. 172).  Excluded from the Class are such Persons entitled to request exclusion pursuant to Section 6.2 of this Agreement and who do timely and validly request exclusion in response to Settlement Notice B, as determined by the Settlement Administrator.  Also excluded from the Class are: (a) Prior Opt-Outs; and (b) any Persons within the Class definition certified by the Court who, according to the Settlement Administrator's records, were not sent the Notice of Pendency and are not sent Settlement Notice B pursuant to Section 5.3 of this Agreement.  "Class Member" means any person within the Class, as determined by the Settlement Administrator.

2.14    "Class Counsel" means Lieff, Cabraser, Heimann & Bernstein LLP; The Sturdevant Law Firm, P.C.; Giskan Solotaroff Anderson & Stewart LLP; Girard Gibbs LLP; Milberg LLP, and Green & Noblin, P.C (the successor to Green Welling, P.C.).

2.15    "Class Member Accounts" means the Chase credit card accounts, held by Class Members, that were subject to any Change-in-Terms.

2.16    "Class Representatives" means Michael Moore, Brian Wilkinson, Carole Lazinski, David Greenberg, Jacob Kuramoto, James Hanisch, Melissa Neuman, Orly Williams, Regina Smolensky, Richard Reinertson, and Frederic Soliman.

2.17    "Court" means the United States District Court for the Northern District of California.

2.18    "Default" means any event or circumstance where: (1) the Class Member fails to pay when due any periodic payment or other amount owed to Chase; (2) the Class Member exceeds the credit limit in effect on the Class Member Account; (3) the Class Member does not follow the terms of his or her cardmember agreement with Chase; (4) the Class Member is subject to bankruptcy or insolvency proceedings that are initiated by or against the Class Member; (5) a payment made by the Class Member to Chase is not honored by the Class Member's bank; (6) the Class Member dies; or (7) the Class Member defaults on any other loan or credit obligation he or she has with Chase.

2.19    "Effective Date" means the fifth Business Day after which all of the following events have occurred:

        a.     This Agreement is fully executed by all signatories;

        b.     The Court has finally approved the Settlement; and

        c.     The time for appeal or petition has expired, and no appeal or petition for rehearing or review has been timely filed; or the Settlement is affirmed on appeal or review without change, no other appeal or petition for rehearing or review is pending, and the time period during which further petition for hearing, review, appeal, or certiorari could be taken has finally expired.

2.20    "Fairness Hearing" means the hearing to be conducted by the Court, after notice to the Class, for the purpose of considering final approval of this Settlement pursuant to FRCP 23(e), Class Counsel's application for an award of attorneys' fees, costs and expenses, and any application for service awards for the Class Representatives and/or Related Action Plaintiffs.

2.21    "Final Approval Order" means the order to be entered by the Court in this Action including all material provisions in Part X of this Agreement and in the form attached hereto as Exhibit 6, finally approving the Settlement.

2.22    "FRCP" means the Federal Rules of Civil Procedure.

2.23    "Incomplete Opt-Outs" means the 16 Class Members who the Settlement Administrator previously determined made invalid or untimely requests for exclusion in response to the Notice of Pendency.

2.24    "JPML" means the United States Judicial Panel on Multidistrict Litigation.

2.25    "LOL Balance" means a fixed APR credit card account balance resulting from the cardmember's acceptance of a promotional offer stating that the APR would be fixed until repaid, or fixed for the life of the loan, or containing similar language.

2.26    "Master Complaint" means the Master Class Action Complaint filed in this Action on July 26, 2009. (Docket No. 24)

2.27    "NCOA" means the national change of address database maintained by the United States Postal Service.

2.28    "Net Settlement Fund" has the meaning given to that term in Section 7.5 of this Agreement.

2.29    "Notice of Pendency" means the notice of pendency of class action transmitted to the Class by the Settlement Administrator on or about November 30, 2011, pursuant to the Court's September 28, 2011 order.  (Docket No. 194)

2.30    "Notice Program" means the methods provided for in Part V of this Agreement for giving notice to the Class of the Settlement.

2.31    "Other Claims" means any claim or demand asserted on or before December 31, 2013, in relation to any of the Changes-in-Terms by or on behalf of any Person who was sent the Notice of Pendency or Settlement Notice B pursuant to Section 5.3 hereof.

2.32    "Parties" means the Class, including the Class Representatives, and Chase.

2.33    "Payment Advisor" means Litinomics, Inc., as selected by Class Counsel and subject to approval by the Court.

2.34    "Person" means a natural person, marital community, corporation, partnership, limited partnership, limited liability company, mutual company, association, joint stock company, estate, legal representative, trust, unincorporated organization, government official, entity, department or agency (whether federal, state, local or other), public service corporation and any other type of legal entity.

2.35    "Preliminary Approval Order" means the Court's order, including all the material provisions in Parts III and V of this Agreement and in the form attached hereto as Exhibit 5, preliminarily approving the Settlement.

2.36    "Prior Opt-Outs" means the 287 cardmembers who the Settlement Administrator previously determined have submitted valid, timely requests for exclusion pursuant to the Notice of Pendency.

2.37    "Protective Order" means the stipulated protective order entered in the Action.  (Docket No. 48)

2.38    "Qualifying Balance" means an LOL Balance that was in a Class Member Account at the time a minimum payment increase was implemented pursuant to the Change-in-

Terms; or, in the case of Class Members who accepted the Alternative Offer prior to the time the minimum payment increase would have been implemented pursuant to the Change-in-Terms, a LOL Balance that was in a Class Member Account at the time a minimum payment increase would have been implemented pursuant to the Change-in-Terms.

2.39    "Related Actions" means and includes all actions coordinated in MDL 2032 pursuant to 28 U.S.C. § 1407 and the New Mexico state court action styled *Herbison v. Chase Bank*, Bernalillo Cty. Case No. CV-09-1084 (N.M. 2d Jud. Dist. Ct.), N.M. Ct. App. Case No. 30,630, N.M. Case No. 32,696, as well as all other actions filed prior to the Fairness Hearing asserting Released Claims.  The Related Actions are encompassed in, and released by, this Agreement.  A list of the Related Actions currently known to the Parties is attached as Exhibit 1 hereto.

2.40    "Related Action Plaintiffs" means and includes:  (a) the plaintiffs in the Related Actions who are not also Class Representatives; and (b) the named plaintiffs in the Master Complaint who are not also Class Representatives.  A list of the Related Action Plaintiffs currently known to the Parties is attached as Exhibit 2 hereto.

2.41    "Released Claims" means any and all actual or potential claims, actions, causes of action, suits, counterclaims, cross claims, third party claims, contentions, allegations, and assertions of wrongdoing, and any demands for any and all debts, obligations, liabilities, damages (whether actual, compensatory, treble, punitive, exemplary, statutory, or otherwise), attorneys' fees, costs, expenses, restitution, disgorgement, injunctive relief, any other type of equitable, legal or statutory relief, any other benefits, or any penalties of any type whatever (whether sought by a Class Member directly or on behalf of a Class Member by another Person), regardless of when such claims accrue, whether known or unknown, suspected or unsuspected, contingent or non-contingent, discovered or undiscovered, whether asserted in federal court, state court, arbitration or otherwise, and whether triable before a judge or jury or otherwise, including but not limited to those based on breach of contract or any other contractual theory, breach of the implied covenant of good faith and fair dealing, unconscionability, unjust enrichment, or the unfair and deceptive acts and practices statutes of any of the states, or any other state, federal or local law, statute, regulation

CLASS SETTLEMENT & RELEASE

or common law, that any Class Representative, Class Member or Related Action Plaintiff acting for

or on behalf of a Class Member ever had, now has, or hereafter can, shall, or may in the future

have, arising out of or relating in any way to any conduct, acts, transactions, events, occurrences,

statements, omissions, or failures to act of any Released Party that are alleged or which could have

been alleged from the beginning of time in any of the complaints (including but not limited to the

Master Complaint) or other pleadings filed or presented in the Action or in any of the Related

Actions, or that otherwise relate in any way whatsoever to any or all of the Changes-in-Terms or to

the Alternative Offer.

2.42 "Released Parties" (or, individually, "Released Party") means Chase, the

Chase Issuance Trust, JPMorgan Chase & Co. and any Person with an ownership interest in any of

the Class Member Accounts, together with their predecessors, successors (including, without

limitation, acquirers of all or substantially all of its assets, stock or other ownership interests) and

assigns; the past, present, and future, direct and indirect, parents (including, but not limited to

holding companies), subsidiaries and affiliates of any of the above; and the past, present and future

principals, trustees, partners, claims administrators, officers, directors, employees, agents,

attorneys, shareholders, advisors, predecessors, successors (including, without limitation, acquirers

of all or substantially all of their assets, stock, or other ownership interests), assigns,

representatives, heirs, executors, and administrators of any of the above.

2.43 "Security" means an irrevocable letter of credit, bond, insurance policy, or

other form of security acceptable to Chase, as set forth in Section 8.5 of this Agreement.

2.44 "Settlement Administrator" means The Garden City Group, Inc., subject to

approval by the Court.

2.45 "Settlement Fund" has the meaning given to that term in Section 7.1 of this

Agreement.

2.46 "Settlement Notice A" means notice of the Settlement substantially in the

form attached hereto as Exhibit 3.

2.47 "Settlement Notice B" means notice of the Settlement substantially in the

form attached hereto as Exhibit 4.

CLASS SETTLEMENT & RELEASE

2.48 "Settlement Payment" has the meaning given to that term in Section 7.6 of this Agreement.

2.49 "Taxes" and "Tax Expenses" have the meanings given to those terms in Section 7.14 of this Agreement.

## III. PRELIMINARY APPROVAL

3.1 Promptly after this Agreement is fully executed by all signatories, the Class Representatives shall move the Court for the entry of a Preliminary Approval Order, substantially in the form attached hereto as Exhibit 5. The Parties shall cooperate in presenting such papers to the Court as may be necessary to effectuate the intent and purposes of this Agreement. The Preliminary Approval Order shall include the following:

a. A finding that the Notice Program, as described in Part V of this Agreement, is the only notice to the Class of the Settlement that is required, and that such Notice Program satisfies the requirements of Due Process, the FRCP and any other applicable laws;

b. A preliminary finding that this Settlement is fair, reasonable, adequate and within the range of possible approval;

c. A scheduled date for a Fairness Hearing to determine: (a) whether the proposed Settlement should be finally approved as fair, reasonable and adequate to the Class; (b) whether Final Judgment should be entered dismissing with prejudice this Action and those Related Actions coordinated in MDL 2032; (c) whether Class Counsel's application for attorneys' fees, costs and expenses should be approved; and (d) whether any application for service awards for the Class Representatives and/or Related Action Plaintiffs should be approved;

d. The establishment of a procedure for Class Members to object to the proposed Settlement, Class Counsel's application for attorneys' fees, costs and expenses, and/or any application for service awards for the Class Representatives and/or Related Action Plaintiffs, and setting a deadline for the filing of any such objections;

e. The establishment of a deadline for Persons with Additional Accounts who were not previously sent the Notice of Pendency, and Incomplete Opt-Outs, to request exclusion from the Class;

f.      The entry of a preliminary injunction enjoining the Class Representatives and the Class, and any Person allegedly acting for or on their behalf, or seeking benefits for the Class, either directly, representatively or in any other capacity, and all other Persons from commencing, prosecuting, pursuing or continuing against the Released Parties any action, suit, demand or proceeding in any court, tribunal or other forum asserting any of the Released Claims, including but not limited to in this Action or any of the Related Actions; and

g.      The entry of a stay of all proceedings in this Action and all Related Actions, except as may be necessary to implement the Settlement or comply with the terms of the Settlement.

## IV.   CAFA NOTICE

4.1      All relevant approval and court filing dates related to this Settlement will be scheduled to ensure compliance with CAFA, including but not limited to its notice provisions. Class Representatives, Class Counsel and the Settlement Administrator will cooperate reasonably with Chase to ensure CAFA compliance so that the releases described in this Agreement are fully enforceable.

## V.   NOTICE PROGRAM

5.1      Notice of the Settlement shall be provided to the Class pursuant to the Notice Program set forth in this Part V.

5.2      Following entry of the Preliminary Approval Order, the Settlement Administrator shall create an updated mailing list that includes the names and mailing addresses of all Class Members.  Using the most updated mailing addresses used for disseminating the Notice of Pendency, as updated by Class Members in response thereto and as supplemented by data provided by Chase with respect to the Additional Accounts, the Settlement Administrator shall use the NCOA to further update the mailing list.

5.3      Within ten (10) Business Days following the entry of the Preliminary Approval Order, the Settlement Administrator shall send (via first-class mail, postage pre-paid) Settlement Notice A to all Class Members previously sent the Notice of Pendency (according to the records of the Settlement Administrator), except for Incomplete Opt-Outs.  Within 10 Business

Days following the entry of the Preliminary Approval Order, the Settlement Administrator shall send (via first-class mail, postage pre-paid) Settlement Notice B to all Persons with Additional Accounts who were not previously sent the Notice of Pendency (according to the records of the Settlement Administrator) and Incomplete Opt-Outs.  If the Settlement Administrator is unable to determine whether a Person identified with respect to one of the Additional Accounts was sent the Notice of Pendency, such Person shall be sent Settlement Notice B rather than Settlement Notice A.

5.4     For all settlement notices that are returned with forwarding address information, the Settlement Administrator shall re-mail the applicable settlement notice once to the new address indicated.

5.5     The Settlement Administrator shall continue to maintain the case website, located at the web address www.chaseminpaymentlawsuit.com, which by the time of the mailing of the settlement notices shall include links to the following documents from the case:  the Master Complaint, Chase's answer thereto, the Court's order granting in part and denying in part Chase's motion to dismiss Plaintiffs' claims, the Court's order granting class certification, this Agreement, the Preliminary Approval Order and Settlement Notice A.

5.6     At or before the Fairness Hearing, the Settlement Administrator shall file with the Court a declaration confirming that the Notice Program provided for in this Part V has been implemented, and setting forth a complete, conclusive and final list of all Persons who submitted valid and timely requests for exclusion from the Class.

5.7     All costs incurred in connection with the Notice Program shall be paid from the Settlement Fund.

## VI.     OBJECTIONS AND OPT-OUTS

6.1     Any Class Member may object to the proposed Settlement, or any aspect thereof, Class Counsel's application for an award of attorneys' fees, costs and expenses, and/or any application for service awards for the Class Representatives and/or the Related Action Plaintiffs. Any such objections must be mailed to each of the Settlement Administrator, Class Counsel and Chase's Counsel, at the addresses indicated in the settlement notices.  The Parties shall ask the

1  Court to establish an objection deadline no later than 35 calendar days following the last date on

2  which the settlement notices are to be mailed by the Settlement Administrator.  For an objection to

3  be considered by the Court, the objection must be signed by the Class Member and served on the

4  Settlement Administrator, Class Counsel and Chase's Counsel postmarked not later than the

5  objection deadline specified in the settlement notices, and must contain all of the information

6  specified in the settlement notices.  No later than ten (10) Business Days following the objection

7  deadline, for the Court's convenience, the Settlement Administrator shall provide to the Court

8  copies of all objections.

9          6.2    Only Persons with Additional Accounts who were not sent the Notice of

10  Pendency (according to the records of the Settlement Administrator) and Incomplete Opt-Outs may

11  request exclusion from the Class.  The Parties shall ask the Court to establish a deadline, no later

12  than 35 calendar days following the last date on which Settlement Notice B is mailed by the

13  Settlement Administrator, for such Persons with Additional Accounts and Incomplete Opt-Outs to

14  request exclusion from the Class.  For a request for exclusion to be considered valid, it must be sent

15  to the Settlement Administrator and postmarked not later than the deadline specified in Settlement

16  Notice B, must contain all of the information specified in Settlement Notice B and must be

17  personally signed by the Class Member.  No Class Member or any other Person shall have the right

18  to request exclusion on behalf of any other Class Member.  No group or mass-produced requests

19  for exclusion shall be considered valid.

20          6.3    All fees, costs and expenses of the Settlement Administrator incurred in

21  connection with this Part VI shall be paid from the Settlement Fund.

22  **VII.**    **SETTLEMENT CONSIDERATION**

23          7.1    Within five (5) Business Days following entry of the Preliminary Approval

24  Order, Chase shall pay or cause to be paid to the Settlement Administrator the total sum of

25  $100,000,000.00.  This amount shall constitute the "Settlement Fund."  The Settlement Fund shall

26  be the exclusive monetary obligation of Chase in connection with the Settlement, and the Class

27  Representatives, on behalf of themselves and the Settlement Class, and Class Counsel agree that no

28  further money, funds or other remuneration shall be sought from Chase in connection with the

Settlement, whether for attorneys' fees, costs or expenses, service awards, Administrative Costs, or anything else.  Chase shall not be required to pay any further amounts (i.e., in addition to the Settlement Fund) to any Class Representatives, Class Counsel, Class Members, Related Action Plaintiffs or their counsel, the Settlement Administrator, or anyone else.  Under no circumstances shall Chase be liable for any sums in excess of the Settlement Fund.  Chase shall not be responsible in any way for the management or administration of the Settlement Fund.  The Settlement Administrator shall deposit and hold the Settlement Fund in a segregated, interest-bearing account at a financial institution with more than $20 billion in assets in an account or accounts insured by an agency or agencies of the United States government, with insurance that exceeds the amounts deposited.

7.2     The Settlement Fund, plus interest accrued thereon subsequent to deposit, shall be distributed as follows, and in the following order:  (1) to pay Administrative Costs; (2) to pay Taxes and Tax Expenses; (3) to pay attorneys' fees, costs and expenses, as awarded by the Court; (4) to pay service awards for the Class Representatives and Related Action Plaintiffs, as awarded by the Court; (5) to pay Class Members pursuant to Section 7.6 hereto; and (6) to pay amounts as set forth in Section 7.11 hereto.

7.3     Administrative Costs shall be approved by Class Counsel.

7.4     It shall be the duty of the Settlement Administrator to distribute the Settlement Fund.  All disbursements from the Settlement Fund shall be made consistent with this Agreement, upon instruction to the Settlement Administrator from Class Counsel with ten (10) Business Days prior notice to Chase's Counsel, or as otherwise ordered by the Court.  To the extent Chase objects to any disbursement from the Settlement Fund, Class Counsel and Chase shall resolve any such dispute consistent with the terms of Section 13.4 of this Agreement.  Approved Administrative Costs shall be paid from the Settlement Fund.

7.5     The "Net Settlement Fund" is equal to the Settlement Fund plus interest accrued thereon subsequent to deposit, and less the following:

a.     Administrative Costs;

b.     Taxes and Tax Expenses;

CLASS SETTLEMENT & RELEASE

c.    Court-approved attorneys' fees, costs and expenses; and

d.    Court-approved service awards to the Class Representatives and Related Action Plaintiffs.

7.6    The Net Settlement Fund shall be distributed to Class Members as directed by Class Counsel, as set forth in this Section 7.6. Each Class Member shall receive a total "Settlement Payment" that is equal to a "Base Payment" of $25 plus an "Additional Payment" intended to give the most compensation to those Class Members most affected by the Changes-in-Terms, taking into account, *inter alia*, the amount of Balance Transfer Fees paid, the size of the Qualifying Balances and the original time the Class Member would have had to repay Qualifying Balances, had the Class Member only made minimum payments for as long as the Qualifying Balance would have been outstanding. The Additional Payment shall be calculated pursuant to the following steps:

- Step 1: Calculate "Available Additional Payment Funds": The "Available Additional Payment Funds" shall be determined by subtracting from the Net Settlement Fund the product derived from multiplying the total number of Class Members by $25.00.

- Step 2: Calculate "Total Available Loan Month Dollars": The "Total Available Loan Month Dollars" for each Qualifying Balance shall be calculated by: (1) first determining the amount of the principal balance for the Qualifying Balance for every month, commencing with the month of the inception of the Qualifying Balance and ending in the month where the principal balance becomes zero, using a 2% monthly payment for the relevant account for the period following the applicable Change-in-Terms; and then (2) determining the aggregate sum of all such monthly principal balances. That is, for each Qualifying Balance:

(a) Commencing with the month of the inception of the Qualifying Balance and ending in the month immediately preceding the applicable Change-in-Terms, one "point" is assigned for every one dollar remaining in the principal balance each month. One "point" is

equal to one "Loan Month Dollar." For most Qualifying Balances, specific monthly balance amounts are reasonably available in Chase's historical account data for the months beginning in approximately January 2007. For those months prior to the Change-in-Terms for which specific monthly balance amounts are reasonably available in Chase's historical account data, such specific monthly balance amounts will be used for this Step 2(a). For those months prior to the Change-in-Terms for which specific monthly balance amounts are not reasonably available in Chase's historical account data, the monthly balance amounts for this Step 2(a) shall be based on a proportionate monthly reduction in the initial principal balance between the inception of the Qualifying Balance and the first month for which specific monthly balance amount information is reasonably available for the Qualifying Balance in Chase's historical account data.

(b) Starting with the principal balance remaining for the Qualifying Balance at the time of the applicable Change-in-Terms, and applying a 2 % monthly payment for the relevant account each month, one Loan Month Dollar is assigned for every one dollar remaining in the principal balance each month until the principal balance reaches zero.

(c) The total of all Loan Month Dollars, for all months, calculated in Steps 2(a) and 2(b) above, equals the "Total Available Loan Month Dollars" for that Qualifying Balance

- Step 3: Calculate the "Total Lost Loan Month Dollars": The "Total Lost Loan Month Dollars" for each Qualifying Balance shall be calculated by: (1) first determining the sum of the Loan Month Dollars occurring during the months including and following the Change-in-Terms (as calculated pursuant to Step 2(b)

above); (2) next determining the amount of the principal balance for the Qualifying Balance for every month, commencing with the month of the applicable Change-in-Terms and ending in the month where the principal balance becomes zero, using a 5% monthly payment for the relevant account; and (3) then determining the difference between the sums derived in parts (1) and (2) in this Step 3. That is, starting with the principal balance remaining for the Qualifying Balance at the time of the applicable Change-in-Terms, the Loan Month Dollars are calculated for all months including and following the Change-in-Terms, until the principal balance reaches zero, applying two alternative account payments streams: (a) applying a 2% monthly payment for the relevant account each month; and (b) applying a 5% monthly payment for the relevant account each month. For each month following the Change-in-Terms, the difference between the Loan Month Dollars under the two alternative measures equals the "Lost Loan Month Dollars" for that month. The Lost Loan Month Dollars for all months post-Change in Terms are then summed to arrive at the "Total Lost Loan Month Dollars" for that Qualifying Balance. For those Class Member Accounts where, subsequent to the Change-in-Terms, the minimum payment terms and APR(s) applicable to the Qualifying Balance(s) that applied prior to the Change-in-Terms were "restored" by Chase (*i.e.*, minimum monthly payment requirement at level that applied before Change-in-Terms  and Qualifying Balance(s) subject to the APRs that applied before the Change-in-Terms), the "Total Lost Loan Month Dollars" for each Qualifying Balance in such Class Member Account shall be limited to the total of the Lost Loan Month Dollars calculated for that Qualifying Balance for the months prior to and including the month of such "restoration."

- Step 4: Calculate "Lost Portion Factor":  The "Lost Portion Factor" shall be determined for each Qualifying Balance by dividing the Total Lost Loan Month Dollars (Step 3) by the Total Available Loan Month Dollars (Step 2).

- Step 5: Calculate "Lost Fee Value": The "Lost Fee Value" shall be determined for each Qualifying Balance by multiplying the Lost Portion Factor (Step 4) by the amount of the Balance Transfer Fee paid (or estimated to be paid) by the Class Member in connection with the applicable Qualifying Balance. For most, but not all, Qualifying Balances, Chase's available historical account data identifies the corresponding Balance Transfer Fee paid. For those Qualifying Balances for which a positive (*i.e.*, non-zero) Balance Transfer Fee amount is reflected in Chase's historical account data, such amount shall be used as the Balance Transfer Fee amount for purposes of calculating the Lost Fee Value. For the other Qualifying Balances, the Balance Transfer Fee amount to be used for calculating the Lost Fee Value shall be the average (*i.e.*, mean) of the Balance Transfer Fees paid for all Qualifying Balances for which a positive Balance Transfer Fee amount is reflected in Chase's historical account data.

- Step 6: Calculate "Total Lost Fees": "Total Lost Fees" for each Class Member shall be determined by adding the total of the Lost Fee Value(s) (Step 5) for all of their Qualifying Balance(s).

- Step 7: Calculate "Payment Factor": The "Payment Factor" shall be determined by dividing the Available Additional Payment Funds (Step 1) by the aggregate sum of all Total Lost Fees (Step 6) for all Class Members.

- Step 8: Calculate "Additional Payment": The "Additional Payment" shall be calculated for each Class Member by multiplying their Total Lost Fees (Step 6) times the Payment Factor (Step 7).

7.7     The Payment Advisor shall provide the Settlement Administrator with the Settlement Payment amounts calculated for each Class Member Account. The Settlement Administrator shall match account-level and balance-level data such that each Class Member can be matched to their respective Class Member Account(s) for purposes of distributing Settlement Payments. All data provided pursuant to this Section shall be kept confidential pursuant to the Protective Order and shall continue to be maintained in a secure environment.

7.8     Within thirty (30) calendar days after the Effective Date, the Payment Advisor shall prepare a Distribution Plan that includes the final calculation of the Settlement Payment amount for each Class Member, and shall provide such Distribution Plan to Class Counsel for their review and approval, with a copy to Chase.  Once Class Counsel approves the Distribution Plan, they shall submit the Distribution Plan to the Settlement Administrator with a letter indicating that the Distribution Plan is approved.  All reasonable fees and expenses of the Payment Advisor incurred in connection with this Part VII shall be paid from the Settlement Fund.  Neither Class Counsel nor Chase shall have any liability for any claim arising from or relating to any calculation or other work performed by the Payment Advisor or the Settlement Administrator.  Chase shall not be responsible for any fees or expenses of the Payment Advisor or Settlement Administrator not paid from the Settlement Fund.

7.9     Within twenty (20) Business Days after receiving the Distribution Plan, the Settlement Administrator shall commence mailing the Settlement Payments, in the form of checks, to the Class Members.  Settlement Payment checks shall be sent via first-class mail, postage pre-paid.  Settlement Payments that are returned to the Settlement Administrator with a forwarding address shall be remailed once to the new address indicated.  Any Settlement Payment check that is undeliverable or uncashed 120 calendar days after the date of the instrument shall be paid pursuant to Section 7.11 of this Agreement.

7.10    Only the primary obligor on the Class Member Account shall be entitled to any Settlement Payment.  If a Class Member is deceased, the Settlement Administrator may deliver a Settlement Payment to such Person as reasonably appears to be authorized to act on behalf of the deceased Class Member's estate, and neither the Settlement Administrator, nor Class Counsel, nor Chase shall be liable to any Person claiming a superior interest in such Settlement Payment or challenging the authority of the Person to whom the Settlement Payment is delivered.

7.11    After distribution of the Net Settlement Fund, the total gross amount of Settlement Payment checks sent to Class Members that are undeliverable or uncashed 120 business days after the date of the instrument (the "Remaining Funds") shall be made available (a) first to pay Other Claims at Chase's request, and subject to Class Counsel's approval, which approval shall

not be unreasonably withheld, and (b) in the event any Remaining Funds remain in the Settlement Fund on June 30, 2014, or 60 days after the Effective Date, whichever date is later, such Remaining Funds shall be paid as *cy pres* to Consumer Action, to be used to support its efforts to promote consumer financial education.  Chase's name (as well as its logos, trademarks or service marks) may not be used in connection with or in association with any *cy pres* funded program in the absence of Chase's advance express written consent.  No press release or other disclosure of the source of *cy pres* funding (except for those mandated by law) may be made in the absence of Chase's advance express written consent.  This section shall not prevent the parties from disclosing to any *cy pres* recipients the source of the *cy pres* funds they are receiving.  No Remaining Funds shall revert to Chase or otherwise be paid to Chase.

7.12    The Settlement Fund at all times shall be deemed a "qualified settlement fund" within the meaning of United States Treasury Reg. § 1.468B-l.  In addition, the Settlement Administrator shall timely make such elections as necessary or advisable to carry out the provisions of this Section, including the "relation back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Settlement Administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

7.13    For the purpose of Treasury Regulation § 1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Settlement Administrator.  The Settlement Administrator shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. § 1.468B-2(k)).  Such returns (as well as the election described in Section 7.12 of this Agreement) shall be consistent with this Section and in all events shall reflect that all Taxes (including any estimated Taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in Section 7.5 of this Agreement.

7.14    All:  (a) taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon the Released Parties with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes ("Taxes"); and (b) expenses and costs incurred in connection with the operation and implementation of this Section (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in paragraph 7.13 of this Agreement ("Tax Expenses"), shall be paid out of the Settlement Fund; in no event shall the Released Parties have any responsibility for or liability with respect to the Taxes (as defined herein) or the Tax Expenses (as defined herein).  Taxes and Tax Expenses shall be timely paid by the Settlement Administrator out of the Settlement Fund without prior order from the Court, and the Settlement Administrator shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(l)).  The Parties hereto agree to cooperate with the Settlement Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Section.

7.15    Chase agrees that it will not exercise its right to increase APRs on Class Members' Alternative Offer balances, and that it will maintain a 2% minimum monthly payment requirement for all Class Member Accounts with Alternative Offer balances as long as they include Alternative Offer balances, unless a Default occurs with respect to the Class Member.

## VIII.   ATTORNEYS' FEES, COSTS AND EXPENSES

8.1    The amount of attorneys' fees, costs and expenses to be paid to Class Counsel shall be determined by the Court.  Class Counsel will seek attorneys' fees, exclusive of their litigation costs and expenses, in an amount not to exceed 27 percent of the Settlement Fund. In addition, Class Counsel will seek reimbursement of litigation costs and expenses.

8.2     All attorneys' fees, costs and expenses awarded by the Court shall be paid from the Settlement Fund.  Notwithstanding anything herein, the Court's failure to approve, in whole or in part, any award of attorneys' fees, costs and expenses to Class Counsel shall not prevent the occurrence of the Effective Date, nor shall such non-approval be grounds for termination of the Agreement.  In the event the Court declines to approve, in whole or in part, the payment of attorneys' fees, costs and expenses to Class Counsel in the amounts sought by Class Counsel, or at all, the remaining provisions of this Agreement shall remain in full force and effect. An appeal of the Final Approval Order based solely on attorneys' fees, costs or service awards shall not have any effect on the finality of the Final Approval Order, and in such circumstance the Settlement Administrator shall undertake to distribute all undisputed amounts of the Settlement Fund to the Class consistent with the principles set forth in this Agreement, seeking such guidance from the Court as may be necessary.

8.3     Chase shall not be liable for the payment of any attorneys' fees, costs or expenses, in connection with this Action or the Related Actions, other than its obligation to fund the Settlement Fund.  Chase shall have no liability arising from any claim regarding the division of any award of attorneys' fees, costs and expenses between or among Class Counsel and any other counsel.

8.4     Class Counsel, in their sole discretion, shall allocate and distribute any award of attorneys' fees, costs, and expenses.  Other than any amounts paid to Class Counsel earlier pursuant to Section 8.5 herein, the Settlement Administrator shall distribute to Class Counsel, from the Settlement Fund, any attorneys' fees, costs and expenses awarded by the Court within five (5) Business Days following the Effective Date.

8.5     Beginning five (5) Business Days following entry of the Final Approval Order, Class Counsel shall be entitled to payment from the Settlement Fund of such attorneys' fees, costs and expenses as may be awarded by the Court, notwithstanding any appeal or potential appeal, but only upon delivery to Chase of Security, ensuring the repayment to Chase of all sums paid to Class Counsel, including interest at the same rate earned by the portion of the Settlement Fund that remains in the account held by the Settlement Administrator, if any appeal is timely filed

CLASS SETTLEMENT & RELEASE

and if the Final Approval Order, any award of attorneys fees' and costs, or both, is reversed, vacated or substantially modified on appeal.  Chase shall be entitled to reimbursement of all transaction costs, if any, incurred in connection with presenting the Security to the issuer in the event repayment is required pursuant to this Section 8.5.  If the Security is not honored when presented or if the Security's issuer or obligor for any reason fails to perform or delays in performance, Class Counsel are and will be jointly and severally obligated to repay to Chase, within ten (10) Business Days from the date of dishonor or failure of performance, any and all amounts previously paid from the Settlement Fund, including interest as set forth above, without recourse to the Security, and Chase shall have the right to seek immediate *ex parte* relief from the Court (and to pursue any and all other lawful remedies) to enforce Class Counsel's repayment obligation.  Class Counsel shall not be entitled to advancement or reimbursement from the Settlement Fund of any costs, fees or expenses incurred in procuring the Security or any other costs, fees or expenses incurred pursuant to this Section 8.5.  Chase shall not unreasonably withhold acceptance of Security provided pursuant to this Section.

## IX.     **SERVICE AWARDS**

9.1     Class Counsel and Class Representatives may petition the Court for the payment of service awards, in an amount not to exceed $7,500 for each of the Class Representatives, and in an amount not to exceed $1,000 for each of the Related Action Plaintiffs as of the date of this Agreement, to recognize their efforts, time and expenses in connection with the prosecution of the Action.  Any amounts awarded by the Court pursuant to this paragraph shall be paid from the Settlement Fund.  Notwithstanding anything herein, the Court's failure to approve, in whole or in part, any service award shall not prevent the occurrence of the Effective Date, nor shall such non-approval be grounds for termination of the Agreement.

## X.      **FINAL APPROVAL ORDER AND JUDGMENT**

10.1     On a date to be set by the Court for the Fairness Hearing, Class Representatives and Chase will seek from the Court a Final Approval Order, in the form attached hereto as Exhibit 6, granting final approval of the Settlement and entering a final judgment.  The Final Approval Order will provide, among other things:

a.      That this Action is properly maintained as a class action pursuant to FRCP 23;

b.      That Class Representatives and Class Counsel fairly and adequately represent the interests of the Class Members;

c.      That the Notice Program satisfied the requirements of Due Process, the FRCP and any other applicable laws;

d.      That the Settlement is fair, reasonable and adequate to the Class Members, and that Chase and each Class Member shall be bound by the Settlement, including the releases contained in the Agreement;

e.      That the Settlement represents a fair resolution of all claims asserted or which could have been asserted on behalf of the Class, and fully and finally resolves all such claims;

f.      That the Settlement and Agreement should be, and are, approved;

g.      A permanent injunction enjoining every Class Member from commencing, prosecuting, pursuing or continuing any and all Released Claims against any and all Released Parties, and ordering all Class Members to dismiss with prejudice any and all actions, suits, demands or claims asserting any Released Claim;

h.      Dismissal with prejudice of this Action and those Related Actions coordinated in MDL 2032 pursuant to 28 U.S.C. § 1407; and

i.      Retention of jurisdiction of all matters relating to the modification, interpretation, administration, implementation, effectuation and enforcement of this Agreement and Settlement.

## XI.    **RELEASE AND DISMISSAL**

11.1    As of the Effective Date of the Agreement, the Class Representatives and each Class Member, their respective heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, assigns and all persons acting for or on their behalf, shall be deemed to have fully, finally and forever released the Released Parties from all Released Claims.  Without limiting the foregoing, the Released Claims specifically include

claims that the Class Representatives and Class Members do not know or suspect to exist in their favor as of or prior to the Effective Date.  The Parties agree (and each Class Member by operation of law shall be deemed to have agreed) that this paragraph constitutes a waiver of Section 1542 of the California Civil Code and any similar or comparable provisions, rights and benefits conferred by the law of any state or territory of the United States or any jurisdiction, and any principle of common law.  Section 1542 of the California Civil Code provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

The Class Representatives understand and acknowledge (and each Class Member by operation of law shall be deemed to have acknowledged) the significance of these waivers of California Civil Code Section 1542 and/or of any other applicable law relating to limitations on releases.  In connection with such waivers and relinquishment, the Class Representatives acknowledge (and each Class Member by operation of law shall be deemed to have acknowledged) that they are aware that they may hereafter discover facts in addition to, or different from, those facts which they now know or believe to be true with respect to the subject matter of the Settlement, but that they release fully, finally and forever all Released Claims, and in furtherance of such intention, the release will remain in effect notwithstanding the discovery or existence of any such additional or different facts.  The Parties acknowledge (and all Class Members by operation of law shall be deemed to have acknowledged) that the release of unknown claims as set forth herein was separately bargained for and was a key element of the Settlement.

11.2     The Class Representatives, on their own behalf and on behalf of all Class Members, covenant and agree that the Class Members shall not hereafter be permitted to seek to establish (or permit another to act for them in a representative capacity to seek to establish) liability against any Released Party for any Released Claim.

11.3     The Settlement and this Agreement shall not affect any debts owed by any of the Class Representatives, any of the Related Action Plaintiffs or any Class Member to Chase, and

all Class Representatives, Related Action Plaintiffs and Class Members will remain fully obligated on any and all such debts.  This Section shall not act as confirmation as to any debt owed or purportedly owed to Chase by any Class Representative, Related Action Plaintiff or Class Member.

11.4    Chase agrees not to sue the Class Representatives or Class Counsel, or the Related Action Plaintiffs or their counsel, for malicious prosecution or abuse of process based on the filing of this Action or the Related Actions, or any papers previously filed therein.

## XII.    TERMINATION OF AGREEMENT

12.1    This Agreement is conditioned upon preliminary approval and final approval without material modification by the Court in this Action.  Among other things, and without limitation, any modification to the provisions governing requests for exclusion, the release or the definitions of Released Claims or Released Parties are deemed material.  In the event that the Agreement is not so approved, the Parties shall return to the *status quo ante* as of May 11, 2012 as if no Agreement had been negotiated or entered into.  Moreover, the Parties shall be deemed to have preserved all of their rights or defenses as of May 11, 2012, and shall not be deemed to have waived any substantive or procedural rights of any kind that they may have as to each other or any member of the Class.  Likewise, in the event that the Agreement is approved without material modification by the Court in this Action, but is later reversed or vacated on appeal, each of the Parties shall have the right to withdraw from the Agreement and return to the *status quo ante* as of May 11, 2012, for all litigation purposes, as if no Agreement had been negotiated or entered into, and shall not be deemed to have waived any substantive or procedural rights of any kind that they may have as to each other or any member of the Class.

## XIII.   MISCELLANEOUS PROVISIONS

13.1    Gender and Plurals.  As used in this Agreement, the masculine, feminine, or neutral gender, and the singular or plural number, shall each be deemed to include the others whenever the context so indicates.

13.2    Binding Effect.  This Settlement shall be binding upon, and inure to the benefit of, the heirs, successors and assigns of the Class Representatives, Related Action Plaintiffs, Class Members, and Released Parties.

13.3   <u>Cooperation of Parties</u>. Each of the Parties shall, in good faith, execute all documents and perform all acts necessary and proper to effectuate the terms of this Agreement. Class Counsel shall cooperate reasonably with any efforts by Chase to enforce any injunctions, ordered pursuant to the Preliminary Approval Order or Final Approval Order in this Action, regarding the Related Actions or other actions.

13.4   <u>Dispute Resolution</u>. The Parties agree to meet and confer in good faith in regard to any dispute relating to the Settlement and will submit any dispute to non-binding mediation before seeking relief from the Court.

13.5   <u>Entire Agreement</u>. This Agreement constitutes the entire agreement between and among the Parties with respect to the settlement of this Action and supersedes all prior negotiations and discussions, including but not limited to the mediator's proposal described in Section 1.14 above. The Parties, and each of them, represent and warrant that no other party or any agent or attorney of any of the Parties has made any promise, representation or warranty whatsoever not contained in this Agreement to induce them to execute the same. The Parties, and each of them, represent and warrant that they have not executed this Agreement in reliance on any promise, representation or warranty not contained in this Agreement.

13.6   <u>Competency Of Parties</u>. The Parties, and each of them, acknowledge, warrant, represent and agree that in executing and delivering this Agreement, they do so freely, knowingly and voluntarily, that they had an opportunity to discuss its terms and their implications with legal counsel, that they are fully aware of the contents and effect of the Agreement and that such execution and delivery is not the result of any fraud, duress, mistake or undue influence whatsoever.

13.7   <u>No Conflict Intended</u>. Any inconsistency between the headings used in this Agreement and the text of the paragraphs of this Agreement shall be resolved in favor of the text.

13.8   <u>Governing Law</u>. This Agreement shall be governed by, construed and enforced in accordance with the laws of Delaware.

   CLASS SETTLEMENT & RELEASE

13.9    <u>Counterparts</u>.  This Agreement may be executed in separate counterparts, each of which when so executed shall constitute an original, and all of which together shall constitute the same instrument.

13.10    <u>Jurisdiction</u>.  The Court shall retain jurisdiction over the implementation, enforcement, and performance of this Settlement, and shall have exclusive jurisdiction over any suit, action, proceeding or dispute arising out of or relating to this Settlement that cannot be resolved by negotiation and agreement by counsel for the Parties.

13.11    <u>Confidentiality and Protective Order</u>.  The Parties agree and re-affirm that the Protective Order shall remain in full effect, and all documents, data, testimony, and information designated for protection under the Protective Order shall retain all protections provided for thereunder.  Further, any and all drafts of this Agreement and other settlement documents relating to the negotiations between the Parties will remain confidential and will not be disclosed or duplicated except as necessary to obtain preliminary and/or final court approval.  This provision will not prohibit the Parties from submitting this Agreement to the Court in order to obtain preliminary and/or final approval of the Settlement, or from making this Agreement available to the Class.

13.12    <u>Non-Disparagement</u>.  The Parties, Chase's Counsel and Class Counsel shall not publicly disparage each other or take any action designed to harm the public perception of each other regarding any issue related to the Settlement or this Action, and they shall not issue any press releases or solicit any media inquiries in regard to the Settlement or this Action.

13.13    <u>Authority</u>.  Chase represents and warrants that it has all requisite power and authority to execute, deliver and perform this Agreement and to consummate the transactions contemplated hereby.  The execution, delivery and performance by Chase of this Agreement and the consummation by it of the actions contemplated hereby have been duly authorized by all necessary corporate action on the part of Chase.  This Agreement has been duly and validly executed and delivered by Chase's authorized agent.  Class Counsel represent and warrant that they have all requisite power and authority to execute, deliver and perform this Agreement and to consummate the transactions contemplated hereby, on their own behalf and on behalf of the Class.

Class Counsel represent that they have presented the key terms of this Settlement to at least one counsel for plaintiff(s) of record in each of the Related Actions coordinated in MDL 2032, and, as of the date of execution of this Agreement, no such Related Action Plaintiff or counsel in a Related Action has indicated to Class Counsel any objection to the Settlement.

13.14   <u>Construction</u>.  Each of the Parties has cooperated in the drafting and preparation of this Agreement.  Hence, in any construction to be made of this Agreement, the same shall not be construed against any of the Parties.  The invalidity of any one provision in this Agreement shall not render this Agreement otherwise invalid and unenforceable.

13.15   <u>Modification</u>.  No modification of or amendment to this Agreement shall be valid unless it is in writing and signed by all Parties hereto.

13.16   <u>No Waiver</u>.  The failure of any of the Parties to enforce at any time any provision of this Agreement shall not be construed to be a waiver of such provision, or any other provision, nor in any way to affect the validity of this Agreement or any part hereof, or the right of any of the Parties thereafter to enforce that provision or each and every other provision.  No waiver of any breach of this Agreement shall constitute or be deemed a waiver of any other breach.

13.17   <u>Notices/Communications</u>.  All requests, demands, claims and other communications hereunder shall:  (a) be in writing; (b) be delivered by U.S. Mail with a copy via email; (c) be deemed to have been duly given on the date received; and (d) be addressed to the intended recipient as set forth below:

<u>If to Class Representatives or the Class</u>:

Elizabeth J. Cabraser
Michael W. Sobol
Roger N. Heller
Lieff, Cabraser, Heimann & Bernstein LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111

<u>If to Chase</u>:

Julia B. Strickland
Stephen J. Newman
Strook & Strook & Lavan LLP
2029 Century Park East, 16th Floor
Los Angeles, CA 90067
lacalendar@stroock.com

1   Each of the Parties may change the address to which requests, demands, claims or other

2   communications hereunder are to be delivered by giving the other Parties notice in the manner set

3   forth herein.

4

5

6

7

8   Dated: _7-20_____, 2012          By: _David Greenberg_____
                                              David Greenberg
9

10  Dated: _____, 2012        By: _____
                                              James Hanisch
11

12  Dated: _____, 2012        By: _____
                                              Jacob Kuramoto
13

14  Dated: _____, 2012        By: _____
                                              Carole Lazinski

15  Dated: _____, 2012        By: _____
                                              Michael Moore
16

17  Dated: _____, 2012        By: _____
                                              Melissa Neuman
18

19  Dated: _____, 2012        By: _____
                                              Richard Reinertson

20  Dated: _____, 2012        By: _____
                                              Regina Smolensky
21

22  Dated: _____, 2012        By: _____
                                              Frederic Soliman

23  Dated: _____, 2012        By: _____
                                              Brian Wilkinson
24

25  Dated: _____, 2012        By: _____
                                              Orly Williams
26

27

28

                              -31-          CLASS SETTLEMENT & RELEASE

LA 51562757v1

1   Each of the Parties may change the address to which requests, demands, claims or other

2   communications hereunder are to be delivered by giving the other Parties notice in the manner set

3   forth herein.

4

5

6

7

8   Dated: _____, 2012   By: _____
9                                              David Greenberg

10  Dated: _____7/20_____, 2012   By: _~~James F. Smith~~_____
11                                              James Hanisch

11  Dated: _____, 2012   By: _____
12                                              Jacob Kuramoto

13  Dated: _____, 2012   By: _____
14                                              Carole Lazinski

15  Dated: _____, 2012   By: _____
16                                              Michael Moore

16  Dated: _____, 2012   By: _____
17                                              Melissa Neuman

18  Dated: _____, 2012   By: _____
19                                              Richard Reinertson

20  Dated: _____, 2012   By: _____
21                                              Regina Smolensky

21  Dated: _____, 2012   By: _____
22                                              Frederic Soliman

23  Dated: _____, 2012   By: _____
24                                              Brian Wilkinson

25  Dated: _____, 2012   By: _____
26                                              Orly Williams

27

28

LA 51562757v1

1  Each of the Parties may change the address to which requests, demands, claims or other

2  communications hereunder are to be delivered by giving the other Parties notice in the manner set

3  forth herein.

4

5

6

7

8  Dated: _____, 2012        By: _____

9                                          David Greenberg

10 Dated: _____, 2012        By: _____

                                            James Hanisch

11 Dated: _July 20_____, 2012          By: _____

12                                          Jacob Kuramoto

13 Dated: _____, 2012        By: _____

14                                          Carole Lazinski

15 Dated: _____, 2012        By: _____

16                                          Michael Moore

   Dated: _____, 2012        By: _____

17                                          Melissa Neuman

18 Dated: _____, 2012        By: _____

19                                          Richard Reinertson

20 Dated: _____, 2012        By: _____

21                                          Regina Smolensky

   Dated: _____, 2012        By: _____

22                                          Frederic Soliman

23 Dated: _____, 2012        By: _____

24                                          Brian Wilkinson

25 Dated: _____, 2012        By: _____

                                            Orly Williams

26

27

28

                                    -31-        CLASS SETTLEMENT & RELEASE

LA 51562757v1

1    Each of the Parties may change the address to which requests, demands, claims or other

2    communications hereunder are to be delivered by giving the other Parties notice in the manner set

3    forth herein.

4

5

6

7

8    Dated: _____, 2012          By: _____
                                                        David Greenberg
9
10   Dated: _____, 2012          By: _____
                                                        James Hanisch
11
     Dated: _____, 2012          By: _____
12                                                      Jacob Kuramoto

13   Dated: _July 20_____, 2012          By: _Carole Lazinski_____
                                                        Carole Lazinski
14
15   Dated: _____, 2012          By: _____
                                                        Michael Moore
16
17   Dated: _____, 2012          By: _____
                                                        Melissa Neuman

18   Dated: _____, 2012          By: _____
                                                        Richard Reinertson
19
20   Dated: _____, 2012          By: _____
                                                        Regina Smolensky
21
22   Dated: _____, 2012          By: _____
                                                        Frederic Soliman

23   Dated: _____, 2012          By: _____
                                                        Brian Wilkinson
24
25   Dated: _____, 2012          By: _____
                                                        Orly Williams
26

27

28

                                       -31-           CLASS SETTLEMENT & RELEASE

     LA 51562757v1

1    Each of the Parties may change the address to which requests, demands, claims or other

2    communications hereunder are to be delivered by giving the other Parties notice in the manner set

3    forth herein.

4

5

6

7

8    Dated: _____, 2012          By: _____
9                                                    David Greenberg

10   Dated: _____, 2012          By: _____
11                                                   James Hanisch

12   Dated: _____, 2012          By: _____
13                                                   Jacob Kuramoto

14   Dated: _____, 2012          By: _____
                                                     Carole Lazinski
15   Dated: ____7/20_____, 2012           By: _____
16                                                   Michael Moore

17   Dated: _____, 2012          By: _____
                                                     Melissa Neuman
18   Dated: _____, 2012          By: _____
19                                                   Richard Reinertson

20   Dated: _____, 2012          By: _____
21                                                   Regina Smolensky

22   Dated: _____, 2012          By: _____
                                                     Frederic Soliman
23   Dated: _____, 2012          By: _____
24                                                   Brian Wilkinson

25   Dated: _____, 2012          By: _____
26                                                   Orly Williams

27

28

1   Each of the Parties may change the address to which requests, demands, claims or other

2   communications hereunder are to be delivered by giving the other Parties notice in the manner set

3   forth herein.

4

5

6

7

8   Dated: _____, 2012          By: _____

9                                                              David Greenberg

10  Dated: _____, 2012          By: _____

11                                                             James Hanisch

12  Dated: _____, 2012          By: _____

13                                                             Jacob Kuramoto

14  Dated: _____, 2012          By: _____

15                                                             Carole Lazinski

16  Dated: _____, 2012          By: _____

17                                                             Michael Moore

18  Dated: __July 23__, 2012          By: _Melissa Neuman / by S_

19                                                             Melissa Neuman

20  Dated: _____, 2012          By: _____

21                                                             Richard Reinertson

22  Dated: _____, 2012          By: _____

23                                                             Regina Smolensky

24  Dated: _____, 2012          By: _____

25                                                             Frederic Soliman

26  Dated: _____, 2012          By: _____

27                                                             Brian Wilkinson

28  Dated: _____, 2012          By: _____

                                                               Orly Williams

LA 51562757v1

1  Each of the Parties may change the address to which requests, demands, claims or other

2  communications hereunder are to be delivered by giving the other Parties notice in the manner set

3  forth herein.

4

5

6

7

8  Dated: _____, 2012          By: _____

9                                                              David Greenberg

10 Dated: _____, 2012          By: _____

11                                                              James Hanisch

12 Dated: _____, 2012          By: _____

13                                                              Jacob Kuramoto

14 Dated: _____, 2012          By: _____

15                                                              Carole Lazinski

16 Dated: _____, 2012          By: _____

17                                                              Michael Moore

18 Dated: _____, 2012          By: _____

19                                                              Melissa Neuman

20 Dated: *July 20*, 2012          By: _____

21                                                              Richard Reinertson

22 Dated: _____, 2012          By: _____

23                                                              Regina Smolensky

24 Dated: _____, 2012          By: _____

25                                                              Frederic Soliman

26 Dated: _____, 2012          By: _____

27                                                              Brian Wilkinson

28 Dated: _____, 2012          By: _____
                                                                Orly Williams

1   Each of the Parties may change the address to which requests, demands, claims or other

2   communications hereunder are to be delivered by giving the other Parties notice in the manner set

3   forth herein.

4

5

6

7

8   Dated: _____, 2012        By: _____

9                                              David Greenberg

10  Dated: _____, 2012        By: _____

11                                             James Hanisch

12  Dated: _____, 2012        By: _____

13                                             Jacob Kuramoto

14  Dated: _____, 2012        By: _____

15                                             Carole Lazinski

16  Dated: _____, 2012        By: _____

17                                             Michael Moore

18  Dated: _____, 2012        By: _____

19                                             Melissa Neuman

20  Dated: _____, 2012        By: _____

21                                             Richard Reinertson

22  Dated: *July 20*, 2012                By: *Regina M Smolensky*

23                                             Regina Smolensky

24  Dated: _____, 2012        By: _____

25                                             Frederic Soliman

26  Dated: _____, 2012        By: _____

27                                             Brian Wilkinson

28  Dated: _____, 2012        By: _____
                                               Orly Williams

-31-                          CLASS SETTLEMENT & RELEASE

1    Each of the Parties may change the address to which requests, demands, claims or other

2    communications hereunder are to be delivered by giving the other Parties notice in the manner set

3    forth herein.

4

5

6

7

8    Dated: _____, 2012          By: _____

9                                                             David Greenberg

10   Dated: _____, 2012          By: _____

11                                                            James Hanisch

12   Dated: _____, 2012          By: _____

13                                                            Jacob Kuramoto

14   Dated: _____, 2012          By: _____

15                                                            Carole Lazinski

16   Dated: _____, 2012          By: _____

17                                                            Michael Moore

18   Dated: _____, 2012          By: _____

19                                                            Melissa Neuman

20   Dated: _____, 2012          By: _____

21                                                            Richard Reinertson

22   Dated: _____, 2012          By: _____

23                                                            Regina Smolensky

24   Dated: _July 20, 2012_, 2012              By: _____

25                                                            Frederic Soliman

26   Dated: _____, 2012          By: _____

27                                                            Brian Wilkinson

28   Dated: _____, 2012          By: _____

                                                             Orly Williams

                                          -31-          CLASS SETTLEMENT & RELEASE

LA 51562757v1

1    Each of the Parties may change the address to which requests, demands, claims or other

2    communications hereunder are to be delivered by giving the other Parties notice in the manner set

3    forth herein.

4

5

6

7

8    Dated: _____, 2012          By: _____
                                                              David Greenberg
9

10   Dated: _____, 2012          By: _____
                                                              James Hanisch
11

12   Dated: _____, 2012          By: _____
                                                              Jacob Kuramoto
13

14   Dated: _____, 2012          By: _____
                                                              Carole Lazinski

15   Dated: _____, 2012          By: _____
                                                              Michael Moore
16

17   Dated: _____, 2012          By: _____
                                                              Melissa Neuman

18   Dated: _____, 2012          By: _____
                                                              Richard Reinertson
19

20   Dated: _____, 2012          By: _____
                                                              Regina Smolensky
21

22   Dated: _____, 2012          By: _____
                                                              Frederic Soliman

23   Dated: _July 20_____, 2012          By: _____
                                                              Brian Wilkinson
24

25   Dated: _____, 2012          By: _____
                                                              Orly Williams
26

27

28

                                     -31-          CLASS SETTLEMENT & RELEASE

LA 51562757v1

1  Each of the Parties may change the address to which requests, demands, claims or other

2  communications hereunder are to be delivered by giving the other Parties notice in the manner set

3  forth herein.

4

5

6

7

8  Dated: _____, 2012         By: _____
9                                                         David Greenberg

10 Dated: _____, 2012         By: _____
                                                           James Hanisch
11
   Dated: _____, 2012         By: _____
12                                                        Jacob Kuramoto

13 Dated: _____, 2012         By: _____
14                                                        Carole Lazinski

15 Dated: _____, 2012         By: _____
16                                                        Michael Moore

   Dated: _____, 2012         By: _____
17                                                        Melissa Neuman

18 Dated: _____, 2012         By: _____
19                                                        Richard Reinertson

20 Dated: _____, 2012         By: _____
21                                                        Regina Smolensky

   Dated: _____, 2012         By: _____
22                                                        Frederic Soliman

23 Dated: _____, 2012         By: _____
24                                                        Brian Wilkinson

25 Dated: _July 20 th_____, 2012         By: _____
                                                           Orly Williams
26

27

28

LA 51562757v1                    -31-            CLASS SETTLEMENT & RELEASE

Dated: _____7/20____, 2012          CHASE BANK USA, N.A.


By: _____
                                              Raymond Fischer
                                           Chief Financial Officer

APPROVED AS TO FORM AND CONTENT:

Dated: _____, 2012          LEIFF CABRASER HEINMANN & BERNSTEIN,
                                           LLP


By: _____
                                              Michael Sobol

                                           Attorneys for Plaintiffs


Dated: _____, 2012          THE STURDEVANT LAW FIRM, P.C.


By: _____
                                              James C. Sturdevant

                                           Attorneys for Plaintiffs


Dated: _____, 2012          GISKAN SOLOTAROFF ANDERSON &
                                           STEWART LLP


By: _____
                                              Oren S. Giskan

                                           Attorneys for Plaintiffs

CLASS SETTLEMENT & RELEASE

LA 51562757v1

Dated: _____, 2012                CHASE BANK USA, N.A.

By: _____
                                                    Raymond Fischer

                                                Chief Financial Officer

APPROVED AS TO FORM AND CONTENT:

Dated: July 20, 2012                LEIFF CABRASER HEINMANN & BERNSTEIN,
                                                    LLP

By: _____
                                                    Michael W. Sobol

                                                Attorneys for Plaintiffs

Dated: July 20, 2012                THE STURDEVANT LAW FIRM, P.C.

By: _____
                                                    James C. Sturdevant

                                                Attorneys for Plaintiffs

Dated: July 20, 2012                GISKAN SOLOTAROFF ANDERSON &
                                                    STEWART LLP

By: _____
                                                    Oren S. Giskan

                                                Attorneys for Plaintiffs

1   Dated: _July 20_ , 2012                    GREEN & NOBLIN, P.C.

2

3                                             By: _Robert S. Green_

4                                                       Robert S. Green

5                                             Attorneys for Plaintiffs

6   Dated: _____, 2012             GIRARD GIBBS LLP

7

8                                             By: _____

9                                                       Eric H. Gibbs

10                                            Attorneys for Plaintiffs

11

12  Dated: _____, 2012             MILBERG LLP

13

14                                            By: _____

15                                                     Jeff S. Westerman

16                                            Attorneys for Plaintiffs

17

18  <u>APPROVED AS TO FORM:</u>

19

20

21  Dated: _____, 2012             STROOCK & STROOCK & LAVAN LLP

22

23                                            By: _____

24                                                     Julia B. Strickland

25                                            Attorneys for Defendant
                                              CHASE BANK USA, N.A.
26

27

28

1    Dated: _____, 2012          GREEN & NOBLIN, P.C.

2

3                                          By: _____

4                                                  Robert S. Green

5                                          Attorneys for Plaintiffs

6    Dated: July 20 _____, 2012           GIRARD GIBBS LLP

7

8                                          By: _____

9                                                  Eric H. Gibbs

10                                         Attorneys for Plaintiffs

11

12   Dated: _____, 2012          MILBERG LLP

13

14                                         By: _____

15                                                 Jeff S. Westerman

16                                         Attorneys for Plaintiffs

17

18   APPROVED AS TO FORM:

19

20

21   Dated: _____, 2012          STROOCK & STROOCK & LAVAN LLP

22

23                                         By: _____

24                                                 Julia B. Strickland

25                                         Attorneys for Defendant
                                           CHASE BANK USA, N.A.
26

27

28

1  Dated: _____, 2012          GREEN & NOBLIN, P.C.

2

3                                        By: _____
4                                                   Robert S. Green

5                                        Attorneys for Plaintiffs

6  Dated: _____, 2012          GIRARD GIBBS LLP

7

8                                        By: _____
9                                                   Eric H. Gibbs

10                                       Attorneys for Plaintiffs

11

12 Dated: ____7/20____, 2012             MILBERG LLP

13

14                                       By: _____
15                                                  Jeff S. Westerman

16                                       Attorneys for Plaintiffs

17

18 APPROVED AS TO FORM:

19

20

21 Dated: _____, 2012          STROOCK & STROOCK & LAVAN LLP

22

23                                       By: _____
24                                                  Julia B. Strickland

25                                       Attorneys for Defendant
                                          CHASE BANK USA, N.A.
26

27

28

LA 51562757v1

1   Dated: _____, 2012          GREEN & NOBLIN, P.C.

2

3                                          By: _____
4                                                      Robert S. Green

5                                          Attorneys for Plaintiffs

6   Dated: _____, 2012          GIRARD GIBBS LLP

7

8                                          By: _____
9                                                      Eric H. Gibbs

10                                         Attorneys for Plaintiffs

11

12  Dated: _____, 2012          MILBERG LLP

13

14                                         By: _____
15                                                      Jeff S. Westerman

16                                         Attorneys for Plaintiffs

17

18  APPROVED AS TO FORM:

19

20

21  Dated: _July 23_____, 2012            STROOCK & STROOCK & LAVAN LLP

22

23                                         By: _____
24                                                      Julia B. Strickland

25                                         Attorneys for Defendant
                                           CHASE BANK USA, N.A.
26

27

28

**EXHIBIT 1**

**RELATED ACTIONS**

1.   *Borny v. Chase Bank USA, N.A.*
     USDC, Central Dist. of Colorado
     Case No. 1:09 cv 00688
     MDL Individual Case No. C 09-3794-MMC

2.   *Boulas v. JPMorgan Chase & Co., aka J.P. Morgan Chase & Co.*
     USDC, Northern Dist. of Ohio
     Case No. 1:09 cv 0348
     MDL Individual Case No. C 09-2962 MMC

3.   *Carnahan v. Chase Bank USA, N.A.*
     USDC, Southern Dist. of New York
     Case No. 09 CIV 1321
     MDL Individual Case No. C 09-3040 MMC

4.   *Clausen v. Chase Bank USA, N.A.*
     USDC, Dist. of Oregon
     Case No. CV 09-3017 CL
     MDL Individual Case No. C 09-3039 MMC

5.   *Conrad v. Chase Bank USA, N.A.; J.P. Morgan Chase & Co.*
     USDC, Central Dist. of California
     Case No. CV 09-1486
     MDL Individual Case No. C 09-3677 MMC

6.   *Daniels v. Chase Bank USA, N.A.*
     USDC, Eastern Dist. of New York
     Case No. CV 09 1188
     MDL Individual Case No. C 09-4196 MMC

7.   *Durant v. Chase Bank USA, N.A.; Chase Issuance Trust*
     USDC, Eastern Dist. Pennsylvania
     Case No. 2:09-cv-02114
     MDL Individual Case No. C 09 03790 MMC

8.   *Foshe v. Chase Bank USA, N.A.*
     USDC, Northern Dist. of Illinois
     Case No. 09 C 50036
     MDL Individual Case No. C 09-2961 MMC

9.   *Glenn v. Chase Bank USA, N.A.*
     USDC, Southern Dist. of New York
     Case No. 09 CIV 1898
     MDL Individual Case No. C 09-3038 MMC

**EXHIBIT 1**

**RELATED ACTIONS**

10. *Glensy, et al. v. Chase Bank USA, N.A.; Chase Issuance Trust*
USDC, Dist. of New Jersey
Case No. 1:09-cv-981
MDL Individual Case No. C 09-2963 MMC

11. *Goodman v. Chase Bank USA, N.A.*
USDC, Eastern Dist. of New York
Case NO. CV 09 626
MDL Individual Case No. C 09-3710 MMC

12. *Heigh v. Chase Bank USA, N.A.*
USDC, Southern Dist. of New York
Case No. 09 CIV 3015
MDL Individual Case No. C 09-3710 MMC

13. *Herbison v. Chase Bank USA*
Bernalillo County, New Mexico
Case No. CV-09-1084 (N.M. 2d Jud. Dist. Ct.), N.M. Ct. App. Case No. 30,630, N.M. Case No. 32,696

14. *Knapp v. Chase Bank USA, N.A.*
USDC, Northern Dist. of Illinois
Case No. 09CV1570
MDL Individual Case No. C 09-3708 MMC

15. *Laakman v. Chase Bank USA, N.A.*
USDC, Central Dist. of California
Case No. CV 09-1190
MDL Individual Case No. C 09-3036 MMC

16. *Maycroft, et al. v. Chase Bank USA, N.A.*
USDC, Northern Dist. of Illinois, Eastern Division
Case No. 09CV1557
MDL Individual Case No. C 09-3707 MMC

17. *Miller, et al. v. J.P. Morgan Chase & Co.; Chase Manhattan Bank USA, N.A.*
USDC, Western Dist. of Washington, at Seattle
Case No. C09-263
MDL Individual Case No. C 09-2999 MMC

18. *Miller v. Chase Bank USA, N.A.; J.P. Morgan Chase & Co.*
USDC, Eastern Dist. of Pennsylvania
Case No. 2:09-cv-01213
MDL Individual Case No. C 09-03706 MMC

19. *Moon v. Chase Bank USA, N.A.*
USDC, Northern Dist. of California
Case No. C09-00830

CLASS SETTLEMENT & RELEASE

**EXHIBIT 1**

**RELATED ACTIONS**

20. *Moore v. Chase Bank USA, N.A.*
USDC, Northern Dist. of California
Case No. C09-00348

21. *Norman v. Chase Bank USA, N.A.*
USDC, Northern Dist. of California
Case No. C09-03678

22. *Pendleton v. Chase Bank USA, N.A.*
USDC, Northern Dist. of Illinois, Eastern Division
Case No. 1:09-cv-01590
MDL Individual Case No. C 09-3793 MMC

23. *Rodriguez, et al. v. Chase Bank USA, N.A.*
USDC, Dist. of Massachusetts
Case No. 1:09-cv-10614
MDL Individual Case No. C-03791 MMC

24. *Sauer v. Chase Bank USA, N.A.*
USDC, Northern Dist. of California
Case No. CV 09 0809

25. *Skaggs v. Chase Bank USA, N.A.*
USDC., Central Dist. of California
Case No. CV 09-01845
MDL Individual Case No. C 09-3676 MMC

26. *Smolensky v. Chase Bank USA, N.A.*
USDC, Eastern Dist. of Wisconsin
Case No. 09-C-00566
MDL Individual Case No. C 09-03792 MMC

27. *Spicer v. Chase Bank USA, N.A.*
USDC, Dist. of Maryland, Northern Division
Case No. 8:09-cv-01195
MDL Individual Case No. C 09-3709 MMC

28. *Stockton v. Chase Bank USA, N.A.*
USDC, Northern Dist. of California
Case No. C 09-0587

29. *Vanderlaan v. Chase Bank USA, N.A.*
USDC, Western Dist. of Michigan
Case No. 1:09-cv-394
MDL Individual Case No. C 09 3640 MMC

30. *Voystock v. Chase Bank USA, N.A.*
USDC, Dist. of Massachusetts
Case No. 1:09-cv-10713

CLASS SETTLEMENT & RELEASE

**EXHIBIT 1**

**RELATED ACTIONS**

31.  *Williams v. Chase Bank USA, N.A.*
     USDC, Dist. of New Mexico
     Case No. 6:09-cv-225
     MDL Individual Case No. C 09-3916 MMC

32.  *Woods v. Chase Bank USA, N.A.; J.P. Morgan Chase & Co.*
     USDC, Central Dist. of California
     Case No. CV 09-000683
     MDL Individual Case No. C 09-3037 MMC

33.  *Young-Ayers v. Chase Bank USA, N.A.*
     USDC, Dist. of Arizona
     Case No. 2:09-cv-00495
     MDL Individual Case No. C 09-3675 MMC

# EXHIBIT 2

## RELATED ACTION PLAINTIFFS

1. Lori Boghdan
2. Christopher Borny
3. Evie Boulas
4. Donna Bourgeois
5. JoAnn Candelaria
6. James Carnahan
7. Charles Clausen
8. Margaret Conley
9. Edward Conrad
10. Rich Daniels
11. Peggy Durant
12. Margaret A. Foshe
13. Susan Francovig
14. Robert R. Glenn
15. Rex Glensy
16. Gregory Goodman
17. Suzanne Goodman
18. Beverly Heigh
19. Bruce Heigh
20. Daniel J. Herbison
21. Christian Iovin
22.  Melanie King
23. Peter G. Knapp
24. David Laakman
25. Kain Macy
26. Nancy Maycroft
27. Scott Miller
28. Violet Miller
29. Emily Molstad
30. Kathy K. Moon
31. Peter Norman
32. Michael A. Pendleton
33. Martin Rodriguez
34. Diane M. Rooney
35. Timothy A. Sauer
36. David M. Skaggs
37. Sheree Smiley
38. Linda L. Spicer
39. Eugene R. Stockton
40. Lee Vanderlaan

**EXHIBIT 2**

**RELATED ACTION PLAINTIFFS**

41. Heidi Vanderlaan

42. Thomas Voystock

43. Brian Woods

44. Meredith T. Young-Ayers

45. Marc Zimit

**EXHIBIT 3 (Settlement Notice A)**

### United States District Court For the Northern District Of California

# Notice of Proposed Class Action Settlement and Hearing to Chase Credit Cardholders

**The Court authorized this notice. This is not a solicitation from a lawyer.
You are not being sued. Please do not contact the Court or Chase.**

| 1. | Background & Introduction |
|---|---|

This notice summarizes your rights under the proposed settlement of a class action lawsuit, as described below. You are eligible to receive a payment if you are a member of the Class as set forth below. A previous notice, mailed in approximately November 2011, described this lawsuit and the Court's certification of this lawsuit as a class action. This notice describes the proposed settlement of the lawsuit and your rights in connection with the proposed settlement.

This lawsuit concerns promotional loan offers that some Chase credit cardholders accepted, whereby the loan was subject to a fixed interest rate (APR) until the loan balance was paid off in full. In November 2008 and June 2009, Chase sent some of these cardholders a "Change in Terms" notice, raising their minimum monthly payment from 2% to 5% of their outstanding account balance and, in some cases, applying a $10 monthly fee to their account. Plaintiffs brought this lawsuit alleging that the Change in Terms was improper. Chase contends that the Change in Terms was lawful and denies that its conduct was in any way illegal or improper. Plaintiffs and Chase have agreed to a settlement to resolve this lawsuit, as described below.

Any questions? Read below and, for more information, visit www.chaseminpaymentlawsuit.com.

## Table of Contents

1. Background & Introduction ……………………………………………………………………1
**Basic information about the class action**……………………………………………………………..2
2. What is this lawsuit about?...................................................................................................2
3. Why did I get this notice?....................................................................................................2
4. Who is in the Class?............................................................................................................2
**Information about the settlement**……………………………………………………………. 2
5. What are the terms of the proposed settlement?.................................................................2
6. What are the benefits of the proposed settlement?............................................................ 3
7. How will my settlement payment be determined and sent?...............................................3
8. How will the lawyers and class representatives be compensated?.....................................3
9. What happens next?.............................................................................................................4
**Your rights and options**………………………………………………………………………..4
10. What are my options?..........................................................................................................4
11. How do I object to, or comment on, the settlement?..........................................................4
12. What claims will be released by this settlement?...............................................................5
13. Do I have a lawyer in this class action?............................................................................ 7
14. Should I hire my own lawyer for this case?.......................................................................7
**Getting more information**………………………………………………………………………7
15. Where can I get more information?.....................................................................................7

**EXHIBIT 3 (Settlement Notice A)**

# Basic information about the class action

**2.      What is this lawsuit about?**

This lawsuit concerns promotional loan offers that some Chase credit cardholders accepted, whereby the loan was subject to a fixed interest rate (APR) until the loan balance was paid off in full.  In November 2008 and June 2009, Chase sent some of these cardholders a "Change in Terms" notice, raising their minimum monthly payment from 2% to 5% of their outstanding account balance and, in some cases, applying a $10 monthly fee to their account. Plaintiffs brought this lawsuit alleging that the Change in Terms was improper.

Chase contends that the Change in Terms was lawful and denies that its conduct was in any way illegal or improper.  The Court has not decided whether plaintiffs or Chase are correct. The Court dismissed certain of plaintiffs' claims, but did not dismiss plaintiffs' claim that Chase violated the "implied covenant of good faith and fair dealing."  Plaintiffs' claim has not been decided on the merits.  By agreeing to the settlement, neither Chase nor plaintiffs make any admissions regarding the merits of the allegations, claims or defenses in this case.

The United States District Court for the Northern District of California is overseeing this class action.  The lawsuit is known as *In re: Chase Bank USA, N.A. "Check Loan" Contract Litigation*, MDL No. 2032, Case No. 3:09-md-2032 MMC.

**3.      Why did I get this notice?**

Chase's records show that your account was subject to one of the "Change in Terms" notices, and that you are in the Class (the Class definition is set forth in section 4 below).

**4.      Who is in the class?**

If you received this notice, you have been identified as a member of the Class based on Chase's records.  The Class is defined as:

All persons or entities in the United States who entered into a loan agreement with Chase, whereby Chase promised a fixed APR until the loan balance was paid in full, and (i) whose minimum monthly payment was increased by Chase to 5% of the outstanding balance, or (ii) who were notified by Chase of a minimum payment increase and subsequently closed their account or agreed to an alternative change in terms offered by Chase.

The final Class will consist of all persons and entities within this Class definition except those who submitted a valid request for exclusion by the appropriate deadline.  The records of the Settlement Administrator show that you did not exclude yourself from the Class by the deadline provided in the previous notice mailed in approximately November 2011.

# Information about the Settlement

**5.      What are the terms of the proposed settlement?**

The complete terms of the proposed settlement are set forth in a Class Settlement Agreement and Release, which is on file with the Court and is also available at

**EXHIBIT 3 (Settlement Notice A)**

www.chaseminpaymentlawsuit.com. This notice provides only a summary of the terms of the settlement. The settlement benefits are summarized below.

**6.      What are the benefits of the proposed settlement?**

If the settlement is approved and becomes final, Chase will pay One Hundred Million Dollars ($100,000,000.00) into a Settlement Fund. This money will be used: (1) to pay the costs of distributing this notice and other costs of administering the settlement and Settlement Fund, including taxes; (2) to pay court-awarded attorneys' fees and litigation expenses of the attorneys appointed by the Court to represent the Class ("Class Counsel") and service awards to plaintiffs to compensate them for their efforts and expenses incurred on behalf of the Class; (3) to make settlement payments to Class Members, as described in section 7 below; and (4) to the extent any amounts remain in the Settlement Fund as a result of uncashed settlement checks, to satisfy other claims related to the Change in Terms with the remainder paid as *cy pres* to Consumer Action for use in promoting consumer financial education.

In addition, certain Class Members who received the Change in Terms notice were allowed to maintain a 2% minimum monthly payment in exchange for agreeing to an increase in the APR applicable to their fixed rate promotional loans, to 7.99% APR. This was sometimes referred to as the "Alternative Offer." As part of the settlement, Chase has agreed that it will not exercise its right to increase APRs on Class Members' Alternative Offer balances, and will maintain a 2% minimum monthly payment for all Class Member Accounts with Alternative Offer balances as long as they include Alternative Offer balances, unless a Class Member defaults.

**7.      How will my settlement payment be determined and sent?**

If the Settlement becomes effective, Class Members will be sent a settlement check by the Settlement Administrator in the amount of their individual share of the Settlement Fund available for distribution. Each Class Member's share will be comprised of: (i) a $25.00 base payment; plus (ii) for some, but not all, Class Members, an additional payment intended to give the most compensation to those Class Members most affected by the Change in Terms, taking into account, among other things, the amount of the initial transaction fees paid for their fixed rate promotional loans (if there is no record of a transaction fee, an average transaction fee will be used), how much of the promotional balances were paid back before the Change in Terms occurred, how long the promotional loans were in the Class Member's account before the Change in Terms, and whether and when the promotional balances were restored to their original terms after the Change in Terms were announced.

**8.      How will the lawyers and class representatives be compensated?**

Class Counsel (identified in Section 13 below) will ask the Court to award them up to 27% of the Settlement Fund (or, $27,000,000.00) for their attorneys' fees, plus reimbursement of their litigation expenses incurred in prosecuting this case. In addition, Class Counsel will ask the Court to award plaintiffs representing the Class service awards of up to $7,500 each, and to award certain other plaintiffs who filed related actions relating to the Change in Terms service awards of up to $1,000 each, to compensate them for their efforts, time and expenses incurred on behalf of the Class in this lawsuit.

The Court will determine the appropriate amounts to be paid to Class Counsel and to plaintiffs in this and related actions. The settlement is not conditioned upon approval of any of

- 3 -

**EXHIBIT 3 (Settlement Notice A)**

the awards described in this section. Once it is filed, a copy of Class Counsel's motion requesting attorneys' fees and expenses will be available from the Settlement Administrator and at www.chaseminpaymentlawsuit.com.

**9.    What happens next?**

The Court will hold a "Fairness Hearing" on _____, 2012, at ___ _.m. at the United States District Court, Northern District of California, 450 Golden Gate Avenue, San Francisco, California 94102, Courtroom 7, 19th Floor, to consider whether to give final approval to the settlement and whether to award attorneys' fees and expenses to Class Counsel and service awards to plaintiffs in this and related actions. The Court will only hear objections at the hearing from those Class Members who timely object to the settlement (see section 11 below) and provide timely notice of their intent to appear at the Fairness Hearing. You may participate in the Fairness Hearing with or without an attorney, but if you choose to be represented by an attorney you must do so at your own expense.

YOU DO NOT HAVE TO APPEAR AT THE FAIRNESS HEARING TO RECEIVE THE BENEFITS OF THE SETTLEMENT.

# Your rights and options

**10.    What are my options?**

You do not need to do anything in order to receive the benefits of the settlement. If the settlement becomes effective, you will be mailed a settlement payment as described in section 7 above.

You may object to the settlement by following the steps described in section 11 below. You do not need to object or comment on the settlement in order to receive a settlement payment.

You may not exclude yourself from the Class at this time. The instructions and deadline for excluding yourself from the Class were provided in a previous notice, mailed in approximately November 2011, and the deadline has now passed.

**11.    How do I object to, or comment on, the settlement?**

You may object to, or comment on, all or any portion of the proposed settlement, Class Counsel's request for attorneys' fees and expenses, and/or the requested service awards for the plaintiffs in this and related actions. Any objection must be explained in writing, and must include:

a.    the name of this Action;

b.    your full name, address and telephone number, and signature (an attorney's signature is not sufficient);

c.    a statement that you are a Class Member and an explanation of the basis upon which you claim to be a Class Member;

d.    all grounds for your objection, accompanied by any legal support for your objection known to you or your counsel;

e.    the identity of all counsel who represent you, including any former or current counsel who may be entitled to compensation for any reason related to your objection;

- 4 -

**EXHIBIT 3 (Settlement Notice A)**

f.      a statement confirming whether you intend to personally appear and/or testify at the Fairness Hearing;

g.      the identity of all counsel representing you who will appear at the Fairness Hearing, if any;

h.      a list of all persons who will be called to testify at the Fairness Hearing in support of your objection;

i.      the number of times in which you have objected to a class action settlement within the five years preceding the date that you file your objection and the caption of each case in which you have made such objection; and

j.      the number of times in which your counsel or your counsel's law firm have objected to a class action settlement within the five years preceding the date that you file your objection and the caption of each case in which the counsel or the firm has made such objection.

To be considered, objections must be mailed to the Settlement Administrator, Class Counsel, and Chase's counsel at the addresses listed below, and must be post-marked no later than [35 DAYS AFTER NOTICE SENT].

**Settlement Administrator**

Chase Bank USA Contract Settlement
c/o GCG
P.O. Box 35011
Seattle, WA 98124-1011

| **Class Counsel** | **Chase's counsel**: |
|---|---|
| Chase Check Loan Case Correspondence | Julia B. Strickland |
| LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP | STROOCK & STROOCK & LAVAN LLP |
| 275 Battery Street, 29th Floor | 2029 Century Park East, Suite 1600 |
| San Francisco, CA  94111-3336 | Los Angeles, CA  90067 |

You have the right to consult with your own attorney, at your own expense, before deciding how best to proceed.

**12.      What claims will be released by this Settlement?**

If the settlement is approved and becomes effective, it will be legally binding on all Class Members.  In summary, you will release all claims that were alleged, or that could have been alleged, in this class action relating to the Change in Terms and Alternative Offer.  The release, which is in the Class Settlement Agreement and Release on file with the Court and available at www.chaseminpaymentlawsuit.com, is as follows:

As of the Effective Date of the Agreement, the Class Representatives and each Class Member, their respective heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, assigns and all persons acting for or on their behalf, shall be deemed to have fully, finally and forever released Chase, the Chase Issuance Trust, JPMorgan Chase & Co. and any Person with an ownership interest in any of the Class Member Accounts, together with their predecessors, successors (including, without

- 5 -

**EXHIBIT 3 (Settlement Notice A)**

limitation, acquirers of all or substantially all of its assets, stock or other ownership interests) and assigns; the past, present, and future, direct and indirect, parents (including, but not limited to holding companies), subsidiaries and affiliates of any of the above; and the past, present and future principals, trustees, partners, claims administrators, officers, directors, employees, agents, attorneys, shareholders, advisors, predecessors, successors (including, without limitation, acquirers of all or substantially all of their assets, stock, or other ownership interests), assigns, representatives, heirs, executors, and administrators of any of the above, ("Released Parties"), from any and all actual or potential claims, actions, causes of action, suits, counterclaims, cross claims, third party claims, contentions, allegations, and assertions of wrongdoing, and any demands for any and all debts, obligations, liabilities, damages (whether actual, compensatory, treble, punitive, exemplary, statutory, or otherwise), attorneys' fees, costs, expenses, restitution, disgorgement, injunctive relief, any other type of equitable, legal or statutory relief, any other benefits, or any penalties of any type whatever (whether sought by a Class Member directly or on behalf of a Class Member by another Person), regardless of when such claims accrue, whether known or unknown, suspected or unsuspected, contingent or non-contingent, discovered or undiscovered, whether asserted in federal court, state court, arbitration or otherwise, and whether triable before a judge or jury or otherwise, including but not limited to those based on breach of contract or any other contractual theory, breach of the implied covenant of good faith and fair dealing, unconscionability, unjust enrichment, or the unfair and deceptive acts and practices statutes of any of the states, or any other state, federal or local law, statute, regulation or common law, that any Class Representative, Class Member or Related Action Plaintiff acting for or on behalf of a Class Member ever had, now has, or hereafter can, shall, or may in the future have, arising out of or relating in any way to any conduct, acts, transactions, events, occurrences, statements, omissions, or failures to act of any Released Party that are alleged or which could have been alleged from the beginning of time in any of the complaints (including but not limited to the Master Complaint) or other pleadings filed or presented in the Action or in any of the Related Actions, or that otherwise relate in any way whatsoever to any or all of the Changes-in-Terms or to the Alternative Offer, ("Released Claims"). Without limiting the foregoing, the Released Claims specifically include claims that the Class Representatives and Class Members do not know or suspect to exist in their favor as of or prior to the Effective Date.  The Parties agree (and each Class Member by operation of law shall be deemed to have agreed) that this paragraph constitutes a waiver of Section 1542 of the California Civil Code and any similar or comparable provisions, rights and benefits conferred by the law of any state or territory of the United States or any jurisdiction, and any principle of common law.

The Class Representatives, on their own behalf and on behalf of all Class Members, covenant and agree that they shall not hereafter be permitted to seek to establish (or permit another to act for them in a representative capacity to seek to establish) liability against any Released Party for any Released Claim.

- 6 -

**EXHIBIT 3 (Settlement Notice A)**

**13.  Do I have a lawyer in this class action?**

Yes.  The Court decided that the law firms representing plaintiffs are qualified to represent you and all of the other Class Members, and has appointed them as "Class Counsel."    The law firms who have been appointed as Class Counsel are:  Lieff, Cabraser, Heimann & Bernstein, LLP, The Sturdevant Law Firm, P.C., Giskan, Solotaroff, Anderson & Stewart LLP, Green & Noblin, P.C., Girard Gibbs LLP, and Milberg LLP.

You do not have to pay Class Counsel for their time or expenses incurred in this case out of your pocket.  Instead, Class Counsel will petition the Court for an award of their fees and expenses; any amount awarded will be paid from the Settlement Fund.

**14.  Should I hire my own lawyer for this case?**

You do not need to hire your own lawyer because Class Counsel represents you and the other members of the Class already.  However, you have the right to hire your own lawyer.  If you want your own lawyer separate from Class Counsel, you will have to pay that lawyer.

# Getting more information

**15.  Where can I get more information?**

More information can be found at www.chaseminpaymentlawsuit.com.  That website includes links to the Master Complaint filed by plaintiffs, Chase's answer thereto, the Court's order granting in part and denying in part Chase's motion to dismiss plaintiffs' claims, the Court's order granting class certification, the Class Settlement Agreement and Release, the Preliminary Approval Order and this Settlement Notice.

You may also obtain more information by calling the Settlement Administrator, toll free, at:

You may also examine and copy the class action complaint and other pleadings in this class action at any time during regular office hours in the office of the Clerk of the United States District Court for the Northern District of California, San Francisco Division, at 450 Golden Gate Ave., San Francisco, California 94102.

DO NOT CONTACT THE COURT OR CHASE.

\*          \*          \*

By order of the United States District Court for the Northern District of California.

Dated:   _____, 2012

- 7 -

**EXHIBIT 4 (Settlement Notice B)**

### United States District Court For the Northern District Of California

# Notice of Proposed Class Action Settlement and Hearing to Chase Credit Cardholders

**The Court authorized this notice. This is not a solicitation from a lawyer.
You are not being sued. Please do not contact the Court or Chase.**

### 1.    Background & Introduction

This notice summarizes your rights under the proposed settlement of a class action lawsuit, as described below. You are eligible to receive a payment if you are a member of the Class as set forth below.

This lawsuit concerns promotional loan offers that some Chase credit cardholders accepted, whereby the loan was subject to a fixed interest rate (APR) until the loan balance was paid off in full. In November 2008 and June 2009, Chase sent some of these cardholders a "Change in Terms" notice, raising their minimum monthly payment from 2% to 5% of their outstanding account balance and, in some cases, applying a $10 monthly fee to their account. Plaintiffs brought this lawsuit alleging that the Change in Terms was improper. Chase contends that the Change in Terms was lawful and denies that its conduct was in any way illegal or improper. Plaintiffs and Chase have agreed to a settlement to resolve this lawsuit, as described below.

Any questions? Read below and, for more information, visit www.chaseminpaymentlawsuit.com.

| Your legal rights and options in this lawsuit | |
|---|---|
| Your legal rights are affected, and you have a choice to make now. Your options are explained in this notice. | |
| **Option 1:**<br>**Do nothing** | By doing nothing, you will remain in the Class and will be mailed a settlement payment if the settlement becomes effective, in exchange for giving up your right to bring your own lawsuit on the issues raised in this class action. See sections 10-12 for details. |
| **Option 2:**<br>**Opt Out** | If you exclude yourself from the Class (sometimes referred to as "opting out"), you will give up your right to receive a settlement payment, but will retain any rights you may have to bring your own lawsuit on the issues raised in this class action. See section 13 for details. The deadline for excluding yourself is **[35 DAYS AFTER NOTICE SENT]** |
| **Option 3:**<br>**Object or Comment** | If you do not exclude yourself from the Class, you may object to, or comment on, the settlement. See section 14 for details. The deadline for submitting objections or comments is **[35 DAYS AFTER NOTICE SENT]** |

- 1 -

**EXHIBIT 4 (Settlement Notice B)**

<u>Table of Contents</u>

1.    Background & Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

**Basic information about the class action** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
2.    What is this lawsuit about? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
3.    Why did I get this notice? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
4.    Who is in the Class? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
**Information about the settlement** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3
5.    What are the terms of the proposed settlement? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
6.    What are the benefits of the proposed settlement? . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
7.    How will my settlement payment be determined and sent? . . . . . . . . . . . . . . . . . . . . . 3
8.    How will the lawyers and class representatives be compensated? . . . . . . . . . . . . . . . . . 4
9.    What happens next? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
**Your rights and options** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
10.   What are my options? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
11.   How do I stay in the Class?
12.   What happens if I do nothing? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
13.   How do I exclude myself from the Class? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5
14.   How do I object to, or comment on, the settlement? . . . . . . . . . . . . . . . . . . . . . . . . . . .5
15.   What claims will be released by this settlement? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
16.   Do I have a lawyer in this class action? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
17.   Should I hire my own lawyer for this case? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
**Getting more information**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
18.   Where can I get more information? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

# Basic information about the class action

## 2.　　　What is this lawsuit about?

This lawsuit concerns promotional loan offers that some Chase credit cardholders accepted, whereby the loan was subject to a fixed interest rate (APR) until the loan balance was paid off in full.  In November 2008 and June 2009, Chase sent some of these cardholders a "Change in Terms" notice, raising their minimum monthly payment from 2% to 5% of their outstanding account balance and, in some cases, applying a $10 monthly fee to their account. Plaintiffs brought this lawsuit alleging that the Change in Terms was improper.

Chase contends that the Change in Terms was lawful and denies that its conduct was in any way illegal or improper. The Court has not decided whether plaintiffs or Chase are correct. The Court dismissed certain of plaintiffs' claims, but did not dismiss plaintiffs' claim that Chase violated the "implied covenant of good faith and fair dealing."  Plaintiffs' claim has not been decided on the merits.  By agreeing to the settlement, neither Chase nor plaintiffs make any admissions regarding the merits of the allegations, claims or defenses in this case.

The United States District Court for the Northern District of California is overseeing this class action.  The lawsuit is known as *In re: Chase Bank USA, N.A. "Check Loan" Contract Litigation*, MDL No. 2032, Case No. 3:09-md-2032 MMC.

## 3.　　　Why did I get this notice?

Chase's records show that your account was subject to one of the "Change in Terms" notices, and that you are within the Class definition, which is set forth in section 4 below.

**EXHIBIT 4 (Settlement Notice B)**

A previous notice was sent in approximately November 2011 to most of the class members, describing this lawsuit and the Court's certification of this lawsuit as a class action. You are receiving this current notice because either: (1) you were inadvertently not sent the previous notice; or (2) you received the previous notice and the Settlement Administrator's records show that you submitted a request to be excluded from this class action that was incomplete or otherwise invalid in some way.

**4.      Who is in the class?**

The Class is defined as:

All persons or entities in the United States who entered into a loan agreement with Chase, whereby Chase promised a fixed APR until the loan balance was paid in full, and (i) whose minimum monthly payment was increased by Chase to 5% of the outstanding balance, or (ii) who were notified by Chase of a minimum payment increase and subsequently closed their account or agreed to an alternative change in terms offered by Chase.

The final Class will consist of all persons and entities within this Class definition except those individuals who submitted a valid request for exclusion by the appropriate deadline. If you want to exclude yourself from the Class, you must follow the instructions in Section 13 below.

# Information about the Settlement

**5.      What are the terms of the proposed settlement?**

The complete terms of the proposed settlement are set forth in a Class Settlement Agreement and Release, which is on file with the Court and is also available at www.chaseminpaymentlawsuit.com. This notice provides only a summary of the terms of the settlement. The settlement benefits are summarized below.

**6.      What are the benefits of the proposed settlement?**

If the settlement is approved and becomes final, Chase will pay One Hundred Million Dollars ($100,000,000.00) into a Settlement Fund. This money will be used: (1) to pay the costs of distributing this notice and other costs of administering the settlement and Settlement Fund, including taxes; (2) to pay court-awarded attorneys' fees and litigation expenses of the attorneys appointed by the Court to represent the Class ("Class Counsel") and service awards to plaintiffs to compensate them for their efforts and expenses incurred on behalf of the Class; (3) to make settlement payments to Class Members, as described in section 7 below; and (4) to the extent any amounts remain in the Settlement Fund as a result of uncashed settlement checks, to satisfy other claims related to the Change in Terms with the remainder paid as *cy pres* to Consumer Action for use in promoting consumer financial education.

In addition, certain Class Members who received the Change in Terms notice were allowed to maintain a 2% minimum monthly payment in exchange for agreeing to an increase in the APR applicable to their fixed rate promotional loans, to 7.99% APR. This was sometimes referred to as the "Alternative Offer." As part of the settlement, Chase has agreed that it will not exercise its right to increase APRs on Class Members' Alternative Offer balances, and will maintain a 2% minimum monthly payment for all Class Member Accounts with Alternative Offer balances as long as they include Alternative Offer balances, unless a Class Member defaults.

**7.      How will my settlement payment be determined and sent?**

If the Settlement becomes effective, Class Members will be sent a settlement check by the

- 3 -

**EXHIBIT 4 (Settlement Notice B)**

Settlement Administrator in the amount of their individual share of the Settlement Fund available for distribution.  Each Class Member's share will be comprised of: (i) a $25.00 base payment; plus (ii) for some, but not all, Class Members, an additional payment intended to give the most compensation to those Class Members most affected by the Change in Terms, taking into account, among other things, the amount of the initial transaction fees paid for their fixed-rate promotional loans (if there is no record of a transaction fee, an average transaction fee will be used), how much of the promotional balances were paid back before the Change in Terms occurred, how long the promotional loans were in the Class Member's account before the Change in Terms, and whether and when the promotional balances were restored to their original terms after the Change in Terms were announced.

**8.    How will the lawyers and class representatives be compensated?**

Class Counsel (identified in Section 16 below) will ask the Court to award them up to 27% of the Settlement Fund (or, $27,000,000.00) for their attorneys' fees, plus reimbursement of their litigation expenses incurred in prosecuting this case.  In addition, Class Counsel will ask the Court to award the plaintiffs representing the Class service awards of up to $7,500 each, and to award certain other plaintiffs who filed related actions relating to the Change in Terms service awards of up to $1,000 each, to compensate them for their efforts, time, and expenses incurred on behalf of the Class in this lawsuit.

The Court will determine the appropriate amounts to be paid to Class Counsel and to the plaintiffs in this and related actions.  The settlement is not conditioned upon approval of any of the awards described in this section.  Once it is filed, a copy of Class Counsel's motion requesting attorneys' fees and expenses will be available from the Settlement Administrator and at www.chaseminpaymentlawsuit.com.

**9.    What happens next?**

The Court will hold a "Fairness Hearing" on _____, 2012, at ___ .m. at the United States District Court, Northern District of California, 450 Golden Gate Avenue, San Francisco, California 94102, Courtroom 7, 19th Floor, to consider whether to give final approval to the settlement and whether to award attorneys' fees and expenses to Class Counsel and service awards to plaintiffs in this and related actions.  The Court will only hear objections at the hearing from those Class Members who timely object to the settlement (see section 14 below) and provide timely notice of their intent to appear at the Fairness Hearing.  You may participate in the Fairness Hearing with or without an attorney, but if you choose to be represented by an attorney you must do so at your own expense.

YOU DO NOT HAVE TO APPEAR AT THE FAIRNESS HEARING TO RECEIVE THE BENEFITS OF THE SETTLEMENT.

# Your rights and options

**10.    What are my options?**

You do not need to do anything in order to receive the benefits of the settlement.  If you do nothing and the settlement becomes effective, you will be mailed a settlement payment as described in section 7 above.

You may exclude yourself from this class action (sometimes referred to as "opting out") by following the steps described in section 13, below.  If you exclude yourself from this class

**EXHIBIT 4 (Settlement Notice B)**

action, you will give up your right to receive a settlement payment but will retain any right you may have to sue Chase for the issues raised in this class action.

   If you do not exclude yourself from this class action, you may object to the settlement by following the steps described in section 14, below.  <u>You do not need to object or comment on the settlement in order to receive a settlement payment</u>.

   Please note that if you have received this current notice and believe that you have previously submitted a request to be excluded from this class action, the Settlement Administrator's records indicate that you did not submit a timely and valid request for exclusion previously.  If you still wish to be excluded from this class action, you must submit another request for exclusion by following the steps described in section 13 below.

**11.     How do I stay in the Class?**

   To stay in the Class, do nothing at this time.

**12.     What happens if I do nothing?**

   By doing nothing, you are staying in the Class.  If the settlement becomes effective, you will be mailed a settlement payment.  You will not be able to sue Chase as part of any other lawsuit about the issues raised in this class action.  You will also be legally bound by all of the orders that the Court issues and judgments the Court makes in this class action.

**13.     How do I exclude myself from the Class?**

   To exclude yourself from the Class, you must send an email to Info@chaseminpaymentlawsuit.com or mail your request to Chase Bank USA Contract Settlement, c/o GCG, P.O. Box 35011, Seattle, WA 98124-1011.  Your letter or email must include your name, address, and the following statement:  "I request to be excluded from In re: Chase Bank USA, N.A. Check Loan Contract Litigation."  To submit a timely request for exclusion by mail, you must postmark it by no later than **[35 DAYS AFTER NOTICE SENT]**. To submit a timely request for exclusion by email, you must email it no later than **[35 DAYS AFTER NOTICE SENT].**

**14.     How do I object to, or comment on, the settlement?**

   If you do not exclude yourself from the Class, you may object to, or comment on, all or any portion of the proposed settlement, Class Counsel's request for attorneys' fees and expenses, and/or the requested service awards for the plaintiffs in this and related actions, at the Fairness Hearing.  Any objection must be explained in writing and must include:

   a.     the name of this Action;
   b.     your full name, address and telephone number, and signature (an attorney's signature is not sufficient);
   c.     a statement that you are a Class Member and an explanation of the basis upon which you claim to be a Class Member;
   d.     all grounds for your objection, accompanied by any legal support for your objection known to you or your counsel;
   e.     the identity of all counsel who represent you, including any former or current counsel who may be entitled to compensation for any reason related to your objection;

**EXHIBIT 4 (Settlement Notice B)**

f.      a statement confirming whether you intend to personally appear and/or testify at the Fairness Hearing;

g.      the identity of all counsel representing you who will appear at the Fairness Hearing, if any;

h.      a list of all persons who will be called to testify at the Fairness Hearing in support of your objection;

i.      the number of times in which you have objected to a class action settlement within the five years preceding the date that you file your objection and the caption of each case in which you have made such objection; and

j.      the number of times in which your counsel or your counsel's law firm have objected to a class action settlement within the five years preceding the date that you file your objection and the caption of each case in which the counsel or the firm has made such objection.

To be considered, objections must be mailed to the Settlement Administrator, Class Counsel, and Chase's counsel at the addresses listed below, and must be post-marked no later than **[35 DAYS AFTER NOTICE SENT]**.

**Settlement Administrator**
Chase Bank USA Contract Litigation
c/o GCG
P.O. Box 35011
Seattle, WA 98124-1011

| | |
|---|---|
| **Class Counsel** | **Chase's counsel**: |
| Chase Check Loan Case Correspondence | Julia B. Strickland |
| LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP | STROOCK & STROOCK & LAVAN LLP |
| 275 Battery Street, 29th Floor | 2029 Century Park East, Suite 1600 |
| San Francisco, CA 94111-3336 | Los Angeles, CA 90067 |

You have the right to consult with your own attorney, at your own expense, before deciding how best to proceed.

**15.      What claims will be released by this Settlement?**

If the settlement is approved and becomes effective, it will be legally binding on all Class Members. In summary, you will release all claims that were alleged, or that could have been alleged, in this class action relating to the Change in Terms and Alternative Offer. The release, which is in the Class Settlement Agreement and Release on file with the Court and available at www.chaseminpaymentlawsuit.com, is as follows:

As of the Effective Date of the Agreement, the Class Representatives and each Class Member, their respective heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, assigns and all persons acting for or on their behalf, shall be deemed to have fully, finally and forever released Chase, the Chase Issuance Trust, JPMorgan Chase & Co. and any Person with an ownership interest in any of the Class Member Accounts, together with their predecessors, successors (including, without limitation, acquirers of all or substantially all of its assets, stock or other

**EXHIBIT 4 (Settlement Notice B)**

ownership interests) and assigns; the past, present, and future, direct and indirect, parents (including, but not limited to holding companies), subsidiaries and affiliates of any of the above; and the past, present and future principals, trustees, partners, claims administrators, officers, directors, employees, agents, attorneys, shareholders, advisors, predecessors, successors (including, without limitation, acquirers of all or substantially all of their assets, stock, or other ownership interests), assigns, representatives, heirs, executors, and administrators of any of the above, ("Released Parties"), from any and all actual or potential claims, actions, causes of action, suits, counterclaims, cross claims, third party claims, contentions, allegations, and assertions of wrongdoing, and any demands for any and all debts, obligations, liabilities, damages (whether actual, compensatory, treble, punitive, exemplary, statutory, or otherwise), attorneys' fees, costs, expenses, restitution, disgorgement, injunctive relief, any other type of equitable, legal or statutory relief, any other benefits, or any penalties of any type whatever (whether sought by a Class Member directly or on behalf of a Class Member by another Person), regardless of when such claims accrue, whether known or unknown, suspected or unsuspected, contingent or non-contingent, discovered or undiscovered, whether asserted in federal court, state court, arbitration or otherwise, and whether triable before a judge or jury or otherwise, including but not limited to those based on breach of contract or any other contractual theory, breach of the implied covenant of good faith and fair dealing, unconscionability, unjust enrichment, or the unfair and deceptive acts and practices statutes of any of the states, or any other state, federal or local law, statute, regulation or common law, that any Class Representative, Class Member or Related Action Plaintiff acting for or on behalf of a Class Member ever had, now has, or hereafter can, shall, or may in the future have, arising out of or relating in any way to any conduct, acts, transactions, events, occurrences, statements, omissions, or failures to act of any Released Party that are alleged or which could have been alleged from the beginning of time in any of the complaints (including but not limited to the Master Complaint) or other pleadings filed or presented in the Action or in any of the Related Actions, or that otherwise relate in any way whatsoever to any or all of the Changes-in-Terms or to the Alternative Offer, ("Released Claims"). Without limiting the foregoing, the Released Claims specifically include claims that the Class Representatives and Class Members do not know or suspect to exist in their favor as of or prior to the Effective Date. The Parties agree (and each Class Member by operation of law shall be deemed to have agreed) that this paragraph constitutes a waiver of Section 1542 of the California Civil Code and any similar or comparable provisions, rights and benefits conferred by the law of any state or territory of the United States or any jurisdiction, and any principle of common law.

The Class Representatives, on their own behalf and on behalf of all Class Members, covenant and agree that they shall not hereafter seek to establish (or permit another to act for them in a representative capacity to seek to establish) liability against any Released Party for any Released Claim.

**EXHIBIT 4 (Settlement Notice B)**

**16. Do I have a lawyer in this class action?**

Yes. The Court decided that the law firms representing plaintiffs are qualified to represent you and all of the other Class Members, and has appointed them as "Class Counsel." The law firms who have been appointed as Class Counsel are: Lieff, Cabraser, Heimann & Bernstein, LLP, The Sturdevant Law Firm, P.C., Giskan, Solotaroff, Anderson & Stewart LLP, Green & Noblin, P.C., Girard Gibbs LLP, and Milberg LLP.

You do not have to pay Class Counsel for their time or expenses incurred in this case out of your pocket. Instead, Class Counsel will petition the Court for an award of their fees and expenses; any amount awarded will be paid from the Settlement Fund.

**17. Should I hire my own lawyer for this case?**

You do not need to hire your own lawyer because Class Counsel represents you and the other members of the Class already. However, you have the right to hire your own lawyer. If you want your own lawyer separate from Class Counsel, you will have to pay that lawyer.

# Getting more information

**18. Where can I get more information?**

More information can be found at www.chaseminpaymentlawsuit.com. That website includes links to the Master Complaint filed by plaintiffs, Chase's answer thereto, the Court's order granting in part and denying in part Chase's motion to dismiss plaintiffs' claims, the Court's order granting class certification, the Class Settlement Agreement and Release, the Preliminary Approval Order and a Settlement Notice.

You may also obtain more information by calling the Settlement Administrator, toll free, at:

You may also examine and copy the class action complaint and other pleadings in this class action at any time during regular office hours in the office of the Clerk of the United States District Court for the Northern District of California, San Francisco Division, at 450 Golden Gate Ave., San Francisco, California 94102.

DO NOT CONTACT THE COURT OR CHASE.

\*        \*        \*

By order of the United States District Court for the Northern District of California.

Dated: _____, 2012

# EXHIBIT 5

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: Chase Bank USA, N.A. "Check Loan" Contract Litigation | MDL No. 2032 |
| | Case No. 3:09-md-02032 MMC (JSC) |
| ──────────────────────────── | **[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS SETTLEMENT** |
| THIS DOCUMENT APPLIES TO ALL ACTIONS | |

The Parties have entered into a Class Settlement Agreement and Release, dated July 20, 2012 ("Settlement") which, if approved, would resolve this certified class action.  Plaintiffs have filed a motion for preliminary approval of the Settlement.  Upon review and consideration of the motion papers and the Settlement and all exhibits thereto, including the proposed forms of notice to the Class, the Court finds that there is sufficient basis for: (1) granting preliminary approval of the Settlement; (2) approving the Parties' proposed Notice Program and forms of notice substantially similar to those forms attached to the Settlement and directing that notice be disseminated to the Class pursuant to the Notice Program provided in the Settlement; (3) appointing a Settlement Administrator and Payment Advisor to conduct the respective duties set forth for those positions in the Settlement, and (4) setting a hearing (the "Fairness Hearing"), at which the Court will consider: (a) whether to grant final approval of the Settlement; (b) Class Counsel's application for attorneys' fees, costs and expenses; and (c) any application for service awards for the Class Representatives and/or Related Action Plaintiffs.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.     Capitalized terms not otherwise defined herein shall have the same meaning as set forth in the Settlement.

2.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, and venue is proper in this District, pursuant to the Transfer Order from the United States Judicial Panel on Multidistrict Litigation (Dkt. No. 1).

3.     Pursuant to this Court's order dated May 13, 2011 (Dkt. No. 172), the certified Class in this matter was defined as follows: "All persons or entities in the United States who entered into a loan agreement with Chase, whereby Chase promised a fixed APR until the loan balance was paid in full, and (i) whose minimum monthly payment was increased by Chase to 5% of the outstanding balance, or (ii) who were notified by Chase of a minimum monthly payment increase and subsequently closed their account or agreed to an alternative change in terms offered by Chase."  Persons within the Class definition who submitted timely and valid requests for exclusion pursuant to the previously-disseminated Notice of Pendency (*see* Dkt. No. 194, Ex. A), as determined by the records of the Settlement Administrator, are excluded from the Class.

PROPOSED ORDER GRANTING PRELIMINARY APPROVAL OF CLASS SETTLEMENT
CASE NO. 3:09-MD-02032 MMC (JSC)

4.      The Court preliminarily approves the proposed Settlement as fair, reasonable and adequate, entered into in good faith, free of collusion, and within the range of possible judicial approval.

5.      The Court approves the Notice Program set forth in the Settlement.  The Court approves the form and content of the proposed forms of notice, in the forms attached to the Settlement as Exhibits 3 and 4.   The Court finds that the Notice Program, including the proposed forms of notice, constitutes the best notice practicable under the circumstances, constitutes valid, due, and sufficient notice to the Class in full compliance with the requirements of applicable law, including Federal Rule of Civil Procedure 23 and the Due Process Clause of the United States Constitution, and is the only notice to the Class of the Settlement that is required.

6.      The Court appoints The Garden City Group, Inc. ("GCG") to serve as the Settlement Administrator, and directs GCG to carry out all duties and responsibilities of the Settlement Administrator specified in the Settlement.

7.      The Court appoints Litinomics, Inc. ("Litinomics") to serve as Payment Advisor and directs Litinomics to carry out all duties and responsibilities of the Payment Advisor specified in the Settlement.

8.      All costs of disseminating notice to the Class of the Settlement and other Administrative Costs, as defined in the Settlement, shall be approved by Class Counsel.  All approved Administrative Costs shall be paid from the Settlement Fund.

9.      The Settlement Administrator shall create an updated mailing list that includes the names and mailing addresses of all Class Members.  Using the most updated mailing addresses used for disseminating the Notice of Pendency, as updated by Class Members in response thereto and as supplemented by data provided by Chase with respect to the Additional Accounts, the Settlement Administrator shall use the NCOA to further update the mailing list.  No later than 10 Business Days after the entry of this Order, GCG shall: (i) mail (via first-class mail, postage pre-paid) notice in the form attached to the Settlement as Exhibit 3 ("Settlement Notice A") to all Class Members previously sent the Notice of Pendency (according to the records of GCG), except for Incomplete Opt-Outs, and (ii) mail (via first-class mail, postage pre-paid) notice in the form attached to the Settlement as

2

PROPOSED ORDER GRANTING PRELIMINARY APPROVAL OF CLASS SETTLEMENT
CASE NO. 3:09-MD-02032 MMC (JSC)

Exhibit 4 ("Settlement Notice B") to those Persons with Additional Accounts (as defined in the Settlement) who were inadvertently not sent the Notice of Pendency (according to the records of GCG) and Incomplete Opt-Outs.  For each notice that is returned with forwarding address information, GCG shall re-mail the applicable settlement notice once to the new address provided.

10.     GCG shall continue to maintain a case website, located at the web address www.chaseminpaymentlawsuit.com, which by the time of the mailing of the settlement notices shall include links to the following documents from the case:  the Master Complaint, Chase's answer thereto, the Court's order granting in part and denying in part Chase's motion to dismiss Plaintiffs' claims, the Court's order granting class certification, the Settlement, the Preliminary Approval Order and Settlement Notice A.

11.     Only Persons with Additional Accounts who were not sent the Notice of Pendency (according to the records of the Settlement Administrator) and Incomplete Opt-Outs may request exclusion from the Class by submitting a timely request for exclusion to GCG, pursuant to the instructions set forth in Settlement Notice B.  The deadline for such Persons to request exclusion shall be 35 days after the last day for GCG to mail Settlement Notice B pursuant to this Order.  No Class Member or any other Person shall have the right to request exclusion on behalf of any other Class Member.  No group or mass-produced requests for exclusion shall be considered valid.

12.     At or before the Fairness Hearing, GCG shall file with the Court a declaration confirming that the Notice Program has been implemented, and setting forth a complete list of all Persons who submitted timely and valid requests for exclusion from the Class.

13.     With respect to Class Members previously sent the Notice of Pendency but who did not attempt to request exclusion in response thereto, the Court finds that they have already been provided with an opportunity to exclude themselves from the Class, and that a second opportunity is not necessary or required under Federal Rule of Civil Procedure 23(e)(4) and the circumstances of this case.  The Notice of Pendency provided adequate information to Class Members about their rights and the claims in this class action.  Moreover, the Notice of Pendency informed Class Members that they would be bound by any judgments that the Court makes in this case if they did not exclude themselves from the Class at that time.

3

PROPOSED ORDER GRANTING PRELIMINARY APPROVAL OF CLASS SETTLEMENT
CASE NO. 3:09-MD-02032 MMC (JSC)

14.     The Court directs that the Fairness Hearing be scheduled for _____, 2012, at __o'clock __.m. to assist the Court in determining whether the Settlement should be finally approved as fair, reasonable and adequate to the Class; whether Final Judgment should be entered dismissing with prejudice this Action and those Related Actions coordinated in MDL 2032; whether Class Counsel's application for attorneys' fees, costs, and expenses should be approved; and whether any application for service awards for the Class Representatives and/or Related Action Plaintiffs should be approved.

15.     The Parties shall file any motions in support of final approval of the Settlement by no later than 15 days after the last day for GCG to mail settlement notices.  Class Counsel shall file their application for attorneys' fees, costs and expenses ("Fee Application") by no later than 15 days after the last day for GCG to mail settlement notices.  After it is filed, Class Counsel's Fee Application shall be posted on the case website maintained by GCG.

16.     Any Class Member who does not timely and validly exclude themselves from the Class may object to, or comment on, the Settlement, Class Counsel's Fee Application, or any application for service awards for the Class Representatives and/or Related Action Plaintiffs.  The Court will only consider objections that are timely and valid.  To be considered, an objection must be in writing and be signed by the Class Member making the objection; must be mailed to each of the Settlement Administrator, Class Counsel and Chase's Counsel, postmarked no later than 35 days after the last day for GCG to mail settlement notices, at the addresses provided in the settlement notices; and must include the following:  (i) the name of this action; (ii) the objecting Class Member's full name, address, telephone number, and signature (an attorney's signature is not sufficient); (iii) a statement that the objector is a Class Member and an explanation of the basis upon which the objector claims to be a Class Member; (iv) all grounds for the objection, accompanied by any legal support known to the objector or his or her counsel; (v) the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection, (vi) a statement confirming whether the objector intends to personally appear and/or testify at the Fairness Hearing; (vii) the identity of all counsel representing the objector who will appear at the Fairness Hearing, if any; (viii) a list of all persons who will be called to testify at the Fairness Hearing in support of the objection; (ix) the number of times in which the objector has objected to a class action

settlement within the five years preceding the date that the objector files the objection and the caption of each case in which such objection was made; and (x) the number of times in which objector's counsel or objector's counsel's law firm has objected to a class action settlement within the five years preceding the date that the objector files the objection and the caption of each case in which the objector's counsel or counsel's firm has made such objection.  No later than ten (10) Business Days following the objection deadline, the Settlement Administrator shall provide to the Court copies of all objections.  Any Class Member who does not submit a timely and valid objection shall be deemed to have waived all objections and shall forever be foreclosed from making any objection to the fairness, adequacy, or reasonableness of the Settlement and any Order and Final Judgment entered approving it, Class Counsel's Fee Application, or any application for service awards for the Class Representatives or Related Action Plaintiffs.

17.     The Parties may take discovery of Class Members who submit objections, including depositions of no longer than 4 hours each at a location convenient to the objecting Class Member, limited to issues related to the Class Member's objection.  The Parties may also seek documentary evidence or other tangible things that are related to the Class Member's objection, which the objecting Class Member must produce at least two (2) Business Days before his or her noticed deposition. Failure by an objecting Class Member to make himself or herself reasonably available for a deposition or to comply with expedited discovery requests may result in the Court striking the Class Member's objection and/or otherwise denying that Class Member the opportunity to make an objection or be further heard.  The Court reserves the right to tax the costs of any such discovery to the objecting Class Member or the objecting Class Member's separate counsel should the Court determine that the objection is frivolous or is made for an improper purpose.  The Court may, in its discretion, order any objecting Class Member who subsequently files a notice of appeal to post an appropriate appellate bond.

18.     The Parties may file any papers in connection with any Class Member objections, and any reply or other papers in support of final approval of the Settlement or Class Counsels' Fee Application, by no later than 77 days after the last day for GCG to mail settlement notices.

19.     The Court reserves the right to modify the date of the Fairness Hearing and related

deadlines set forth herein.  In that event, the revised Fairness Hearing date and any revised deadlines shall be posted on the case website referred to in the settlement notices, and the Parties shall not be required to re-send or otherwise publish any new class notice.

20.     Pending a final determination of whether the Settlement should be approved, all Class Representatives, Class Members, and any Person allegedly acting for or on their behalf, or seeking benefits for the Class, either directly, representatively or in any other capacity, are preliminarily enjoined from commencing, prosecuting, pursuing, or continuing against the Released Parties any action, suit, demand, or proceeding in any court, tribunal, or other forum asserting any of the Released Claims, including but not limited to in this Action or any of the Related Actions.

21.     Pending a final determination of whether the Settlement should be approved, all proceedings in this Action and all Related Actions, except as may be necessary to implement the Settlement or comply with the terms of the Settlement, are hereby stayed.

22.     The following chart summarizes the dates and deadlines set by this Order:

| | |
|---|---|
| Last day to mail settlement notices to the Class: | **[10 Business Days after entry of Preliminary Approval Order]** |
| Last day for Plaintiffs to file motion(s) in support of final approval of the Settlement, and for Class Counsel to file their Fee Application: | **[15 days after the last day to mail settlement notices]** |
| Last day for all Class Members to postmark comments and objections to the settlement or Fee Application: | **[35 days after the last day to mail settlement notices]** |
| Last day for Class Members with Additional Accounts and Incomplete Opt-Outs to postmark or email opt-out requests: | **[35 days after the last day to mail settlement notices]** |
| Last day for the Parties to file any additional papers in support of final approval of the Settlement, responses to objections, and any replies in support of Class Counsel's Fee Application: | **[77 days after the last day to mail settlement notices]** |
| Fairness Hearing: | **[91 days after the last day to mail settlement notices]** |

IT IS SO ORDERED.

Dated:  _____        _____

MAXINE M. CHESNEY
United States District Judge

6

PROPOSED ORDER GRANTING PRELIMINARY APPROVAL OF CLASS SETTLEMENT
CASE NO. 3:09-MD-02032 MMC (JSC)

# EXHIBIT 6

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: Chase Bank USA, N.A. "Check Loan" Contract Litigation | MDL No. 2032 |
| | Case No. 3:09-md-02032 MMC (JSC) |
| ———————————————————— | **[PROPOSED] FINAL APPROVAL ORDER** |
| THIS DOCUMENT APPLIES TO ALL ACTIONS | |

This matter came before the Court for hearing pursuant to the Court's Preliminary Approval Order dated _____, 2012, and on the motion for and papers in support of final approval of the proposed Class Settlement Agreement and Release, dated July 20, 2012 (the "Settlement").  Due and adequate notice having been given to the Class of the proposed Settlement, as required by the Preliminary Approval Order, and upon consideration of all papers filed and proceedings had herein, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1. Capitalized terms not otherwise defined herein shall have the same meaning as set forth in the Settlement.

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, and venue is proper in this District, pursuant to the Transfer Order from the United States Judicial Panel on Multidistrict Litigation (Dkt. No. 1).

3. The "Class" and "Class Member(s)" for purposes of this Order means the class certified by the Court in its May 13, 2011 order as follows:

> All persons or entities in the United States who entered into a loan agreement with Chase, whereby Chase promised a fixed APR until the loan balance was paid in full, and (i) whose minimum monthly payment was increased by Chase to 5% of the outstanding balance, or (ii) who were notified by Chase of a minimum payment increase and subsequently closed their account or agreed to an alternative change in terms offered by Chase.

Excluded from the Class are such Persons entitled to request exclusion pursuant to Section 6.2 of the Settlement and who timely and validly requested exclusion in response to Settlement Notice B, as determined by the Settlement Administrator.  Also excluded from the Class are: (a) Prior Opt-Outs; and (b) any Persons within the Class definition certified by the Court who, according to the Settlement Administrator's records, were not sent the Notice of Pendency and were not sent Settlement Notice B pursuant to Section 5.3 of the Settlement.

4. The Persons listed in Schedule 1, filed under seal with the Court, submitted timely requests to be excluded from the Class, according to the Settlement Administrator's records, and are hereby excluded from the Class, are not Class Members as that term is defined and used herein, and shall not be bound by this Final Approval Order or any release provided herein.

1

5.     The Court reiterates that this Action is properly maintained as a class action pursuant to Federal Rule of Civil Procedure 23, and that the Class Representatives and Class Counsel fairly and adequately represent the interests of the Class Members.

6.     The Court finds that the Notice Program provided for in the Settlement, and previously approved and directed by the Court, has been implemented by the Settlement Administrator and the Parties, and that such Notice Program, including the approved forms of notice, constitutes the best notice practicable under the circumstances and fully satisfied due process, the requirements of Rule 23 of the Federal Rules of Civil Procedure, and all other applicable laws.

7.     The Court finds that the Settlement, including the exhibits thereto, is fair, reasonable, and adequate to the Class Members, is in the best interests of the Class Members, has been entered into in good faith, and should be and hereby is fully and finally approved pursuant to Federal Rule of Civil Procedure 23.  The Settlement represents a fair resolution of all claims asserted on behalf of the Class Representatives and the Class Members, and fully and finally resolves all such claims.  Chase and each Class Member shall be bound by the Settlement, including the releases contained therein, and the Parties, the Settlement Administrator, and the Payment Advisor are hereby directed to implement the Settlement in accordance with the terms and provisions thereof.

8.     The Court has considered and hereby overrules all objections to the Settlement.  The Court orders that each objector who intends to file an appeal shall, within 10 days of filing a notice of appeal, post a bond pursuant to Rule 7 of the Federal Rules of Appellate Procedure in the amount of $_____.

9.     As of the Effective Date of the Settlement, each Class Representative and each Class Member, and their respective heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, assigns and all persons acting for or on their behalf, shall be deemed to have, and by operation of this Final Approval Order shall have, fully, finally and forever released the Released Parties from all Released Claims, as more fully set forth in the Settlement.  The Class Representatives, on their own behalf and on behalf of all Class Members, covenant and agree that the Class Members shall not hereafter be permitted to seek to establish (or permit another to act for them in a representative capacity to seek to establish) liability against any Released Party for any

Released Claim.

10. Chase shall not sue the Class Representatives, Class Counsel, or the Related Action Plaintiffs or their counsel for malicious prosecution or abuse of process based on the filing of this Action or the Related Actions.

11. This Final Approval Order, the Preliminary Approval Order, the Settlement, and any act performed or document executed pursuant to or in furtherance thereof:

a. Shall not be offered or received against the Released Parties as evidence of, or be construed as or deemed to be evidence of, any admission or concession by the Released Parties as to (i) the truth or relevance of any fact alleged in this Action or any of the Related Actions, (ii) the validity of any claim that has been or could have been asserted in the Master Class Action Complaint or in any other action or proceeding, including but not limited to this Action or the Related Actions, or (iii) any liability, negligence, fault, or wrongdoing of the Released Parties;

b. Shall not be offered as or received against any of the Released Parties as evidence of, or construed as or deemed to be evidence of, any admission or concession of any liability, negligence, fault or wrongdoing, or in any way referred to for any other reason as against any of the Parties to the Settlement, in any other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Settlement, except that the Released Parties may refer to it to effectuate the releases and other protections granted them under the Settlement;

c. Shall not be deemed an admission by Chase or any of the Released Parties that they are subject to the jurisdiction of any court; and

d. Shall not be construed against Chase or any of the Released Parties as an admission or concession that the consideration to be given under the Settlement represents the amount which could be or would have been recovered after trial.

12. The Released Parties may file the Settlement and this Final Approval Order in any action that may be brought against them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar, reduction, set-off or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

13.     The Court orders that, upon the Effective Date, the Settlement shall be the exclusive remedy for any and all Released Claims of each and every Class Representative and Class Member. The Court thus hereby permanently bars and enjoins every Class Member from commencing, prosecuting, pursuing or continuing any and all Released Claims against any and all Released Parties. The Court hereby orders every Class Member to dismiss with prejudice any and all actions, suits, demands, or claims asserting any Released Claim.

14.     The Court hereby dismisses with prejudice this Action and those Related Actions coordinated in MDL 2032 pursuant to 28 U.S.C. § 1407.

15.     Without affecting the finality of this Final Approval Order in any way, the Court hereby retains continuing jurisdiction over (a) all matters relating to the modification, interpretation, administration, implementation, effectuation and enforcement of the Settlement and the Parties' stipulated protective order; (b) further proceedings, if necessary, on Class Counsel's Fee Application; and (c) the Parties, Class Counsel and Class Members for the purpose of construing, enforcing, and administering the Settlement and this Final Approval Order.

16.     If an appeal, writ proceeding or other challenge is filed as to this Final Approval Order, and if thereafter the Final Approval Order is not ultimately upheld, all orders entered, stipulations made and releases delivered in connection herewith, or in the Settlement or in connection therewith, shall be null and void to the extent provided by and in accordance with the Settlement.

17.     Without further order of the Court, the Parties may agree to reasonably necessary extensions of time to carry out any of the provisions of the Settlement.

IT IS SO ORDERED.

Dated: _____                              _____

MAXINE M. CHESNEY
United States District Judge

4

PROPOSED FINAL APPROVAL ORDER
CASE NO. 3:09-MD-02032 MMC (JSC)