1  Elizabeth J. Cabraser (State Bar No. 83151)
   Michael W. Sobol (State Bar No. 194857)
2  Roger N. Heller (State Bar No. 215348)
   LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
3  275 Battery Street, 30th Floor
   San Francisco, CA  94111-3336
4  Telephone:     (415) 956-1000
   Facsimile:     (415) 956-1008
5
   *Plaintiffs' Liaison Counsel*
6

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11 | In Re: Chase Bank USA, N.A. "Check Loan" | MDL No. 2032
12 | Contract Litigation |
   | | Case No. 3:09-md-02032 MMC (JSC)
13 | ———————————————————— |
   | | The Honorable Maxine M. Chesney
14 | THIS DOCUMENT APPLIES TO ALL |
   | ACTIONS | **NOTICE OF MOTION AND MOTION FOR**
15 | | **AWARD OF ATTORNEYS' FEES AND**
   | | **EXPENSES AND FOR SERVICE AWARDS;**
16 | | **MEMORANDUM OF POINTS AND**
   | | **AUTHORITIES**
17 | |
   | | Date:   November 16, 2012
18 | | Time:   9:00 a.m.
   | | Ctrm:   Courtroom 7, 19th Floor
19 | |

20

21

22

23

24

25

26

27

28

1    TO ALL PARTIES AND COUNSEL OF RECORD:

2    Please take notice that on November 16, 2012, at 9:00 a.m., in Courtroom 7, 19th floor of

3    the United States District Court for the Northern District of California, San Francisco Division,

4    located at 450 Golden Gate Avenue, San Francisco, California 94102, Class Counsel will, and

5    hereby does, move for an Order awarding the following from the common Settlement Fund: (a)

6    $25 million in attorneys' fees, and reimbursement of $1,194,415.20 in litigation expenses; and (b)

7    service awards to the Class Representatives and Related Action Plaintiffs, as defined in the parties'

8    proposed Class Settlement Agreement and Release, filed July 23, 2012 (Dkt. No. 339 at 15) (the

9    "Settlement").

10    As discussed in the accompanying memorandum, this motion is made on the grounds that

11    the requested awards are fair, reasonable and justified under applicable law.

12    This motion is based upon this notice, the attached memorandum of points and authorities,

13    the accompanying declarations of Michael W. Sobol, James C. Sturdevant, Oren Giskan, Robert

14    S. Green, Eric H. Gibbs, Jeff S. Westerman, Michael Moore, Brian Wilkinson, Carole Lazinski,

15    David Greenberg, Jacob Kuramoto, James Hanisch, Melissa Neuman, Orly Williams, Regina

16    Smolensky, Richard Reinertson, Frederic Soliman, Bruce McFarlane and Ken McEldowney, the

17    Declaration of Eric H. Gibbs in Support of Plaintiffs' Motion for Preliminary Approval of Class

18    Settlement, filed July 23, 2012 (Dkt. No. 339) ("Gibbs PA Decl."), and other papers filed in

19    support of preliminary and final approval of the Settlement, any oral argument that is held

20    regarding this motion, the complete record in this litigation and such other matters as the Court

21    may consider.

22

23

24

25

26

27

28

1    Dated:  September 7, 2012              Respectfully submitted,

2                                          LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

3

4                                          By:     _/s/ Michael W. Sobol_____

5

6                                          Elizabeth J. Cabraser
                                           Michael W. Sobol
7                                          Roger N. Heller
                                           LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
8                                          275 Battery Street, 29th Floor
                                           San Francisco, CA  94111-3336
9                                          Telephone: (415) 956-1000
                                           Facsimile: (415) 956-1008
10
                                           *Plaintiffs' Liaison Counsel*
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................... 1

II. BACKGROUND ............................................................................. 2

    A.  The Settlement Represents an Outstanding Result for the Class. ............... 2

        1.  The Common Settlement Fund. ................................................. 2

        2.  Chase's Commitment to Not Raise APRs on Alternative
            Offer Balances. ................................................................... 3

    B.  Class Counsel Overcame Considerable Challenges in Prosecuting
        This Action. ................................................................................ 3

III. ARGUMENT ................................................................................ 7

    A.  The Requested Fee Award is Fair, Reasonable and Justified. ................... 7

        1.  The Common Fund Doctrine Applies. ........................................ 7

        2.  The Fee Award Here Should Be Calculated As a Percentage
            of the Common Settlement Fund. ............................................. 8

        3.  A Fee Based on the Ninth Circuit's "Benchmark" of 25
            Percent Is Well Justified Here. ............................................... 9

            a.  Class Counsel Achieved An Outstanding Monetary
                Result For the Class Through the Settlement Fund. ......... 10

            b.  Class Counsel Achieved Valuable Additional
                Benefits Beyond the Settlement Fund. ............................ 11

            c.  Successfully Prosecuting This Case Required
                Extraordinary Skill and Effort on the Part of Class
                Counsel. ......................................................................... 12

            d.  The Contingent Nature of the Case Supports the
                Requested Fee. ............................................................... 14

            e.  The Requested Fee is In Line With Fee Awards in
                Comparable Cases. ......................................................... 15

        4.  A Lodestar-Multiplier "Cross-Check" Confirms the
            Reasonableness of the Fee Requested. ..................................... 16

    B.  Class Counsels' Common Litigation Expenses Are Reasonable and
        Should Be Reimbursed. .................................................................. 19

    C.  The Requested Service Awards Are Reasonable and Appropriate
        Under the Circumstances. ............................................................... 20

IV. CONCLUSION ............................................................................ 22

# TABLE OF AUTHORITIES

## CASES

*Allapattah Servs., Inc. v. Exxon Corp.,*
  454 F. Supp. 2d 1185 (S.D. Fla. 2006) .................................................. 16

*Antonopulos v. N. Am. Thoroughbreds, Inc.,*
  U.S. Dist. LEXIS 12579 (S.D. Cal. May 6, 1991) ................................... 9

*Ballen v. City of Redmond,*
  466 F.3d 736 (9th Cir. 2006) ................................................................. 17

*Boeing Co. v. Van Gemert,*
  444 U.S. 472 (1980) ............................................................................. 7, 8

*Caudle v. Bristow Optical Co.,*
  224 F.3d 1014 (9th Cir. 2000) ............................................................... 18

*Chavez v. WIS Holding Corp.,*
  2010 U.S. Dist. LEXIS 56138 (S.D. Cal. 2010) ................................... 21

*Chrysler Corp. v. Dann,*
  223 A.2d 384 (Del. 1966) ...................................................................... 14

*Cook v. Tiffany & Co.,*
  2011 U.S. Dist. LEXIS 106230 (S.D. Cal. 2011) ................................. 21

*Craft v. County of San Bernardino,*
  624 F. Supp. 2d 1113 (C.D. Cal. 2008) ................................................ 18

*Crowhorn v. Nationwide Mut. Ins. Co.,*
  836 A.2d 558 (Del. Super. Ct. 2003) ................................................. 9, 10

*Elite Cleaning Co. v. Capel,*
  2006 Del. Ch. LEXIS 196 (Del. Ch. Nov. 20, 2006)................... 17, 18, 19

*Garner v. State Farm Mut. Auto. Ins. Co.,*
  2010 U.S. Dist. LEXIS 49482 (N.D. Cal. Apr. 22, 2010) ................. 9, 20

*Gatz v. Ponsoldt,*
  2009 Del. Ch. LEXIS 100 (Del. Ch. June 12, 2009) ....................... passim

*Goodrich v. E.F. Hutton Group,*
  681 A.2d 1039 (Del. 1996) ............................................................ 7, 8, 16

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998) ............................................................... 17

*Hensley v. Eckerhart,*
  461 U.S. 424 (1983)........................................................................ 10, 18

*In re Cablevision/Rainbow Media Group Tracking Stock Litig.,*
  2009 Del. Ch. LEXIS 84 (Del. Ch. May 22, 2009) ............................... 12

*In re Celera Corp. S'holder Litig.*,
2012 Del. Ch. LEXIS 66 (Del. Ch. Mar. 23, 2012) ............................................................ 9, 15

*In re Compellent Techs., Inc.*,
2011 Del. Ch. LEXIS 190 (Del. Ch. Dec. 9, 2011) ........................................................ 9, 15, 16

*In re Corel Corp. Inc. Sec. Litig.*,
293 F. Supp. 2d 484 (E.D. Pa. 2003) ............................................................................... 16

*In re Countrywide Fin. Corp. Secs. Litig*,
2011 U.S. Dist. LEXIS 126721 (C.D. Cal. Mar. 4, 2011) ............................................... 20

*In re Emerson Radio S'holder Derivative Litig.*,
2011 Del. Ch. LEXIS 50 (Del. Ch. Mar. 28, 2011) ........................................................ 15

*In re Ferrero Litig.*,
2012 U.S. Dist. LEXIS 94900 (S.D. Cal. 2012) .............................................................. 21

*In re Gen. Instruments Sec. Litig.*,
209 F. Supp. 2d 423 (E.D. Pa. 2001) ............................................................................... 16

*In re Heritage Bond Litig.*,
2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) ............................................ 11, 15

*In re Linerboard Antitrust Litig.*,
2004 U.S. Dist. LEXIS 10532 (E.D. Pa. Jun. 2, 2004) ................................................... 16

*In re M.D.C. Holdings Sec. Litig.*,
1990 U.S. Dist. LEXIS 15488 (S.D. Cal. Aug. 30, 1990) .................................................. 9

*In re Media Vision Tech. Sec. Litig.*,
913 F. Supp. 1362 (N.D. Cal. 1996) ................................................................................ 20

*In re Medical X-Ray Film Antitrust Litig.*,
U.S. Dist. LEXIS 14888 (E.D.N.Y. Aug. 7, 1998) .......................................................... 16

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) .................................................................................... 9, 11, 15

*In re Omnivision Technologies, Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2007) ................................................................... passim

*In re Public Serv. Co. of New Mexico*,
1992 U.S. Dist. LEXIS 16326 (S.D. Cal. July 28, 1992) ................................................... 9

*In re Relafen Antitrust Litig.*,
2004 U.S. Dist. LEXIS 28801 (D. Mass. Apr. 9, 2004) ................................................... 16

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005) ............................................................................................ 16

*In re Safety Components, Inc. Sec. Litig.*,
166 F. Supp. 2d 72 (D N.J. 2001) .................................................................................... 19

*In re Sumitomo Copper Litig.*,
74 F. Supp. 2d 393 (S.D.N.Y. 1999)....................................................................... 16

*In re Visa Check/Mastermoney Antitrust Litig.*,
297 F. Supp. 2d 503 (E.D.N.Y 2003) ..................................................................... 12

*In re Washington Public Power Supply System Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994) ........................................................... 7, 9, 17, 19

*Kerr v. Screen Extras Guild, Inc.*,
526 F.2d 67 (9th Cir. 1975) ........................................................................... 17, 19

*Knight v. Red Door Salons, Inc.*,
2009 U.S. Dist. LEXIS 11149 (N.D. Cal. Feb. 2, 2009) ........................... 9, 10, 11, 15

*Kurzweil v. Philip Morris Cos.*,
1999 U.S. Dist. LEXIS 18378 (S.D.N.Y. Nov. 30, 1999) ......................................... 16

*Rodriguez v. West Publishing Corp.*,
563 F.3d 948 (9th Cir. 2009) .................................................................................. 21

*Ryan v. Gifford*,
2009 Del. Ch. LEXIS 1 (Del. Ch. Jan. 2, 2009) ................................................. 9, 15

*Seinfeld v. Coker*,
847 A.2d 330 (Del. Ch. 2000)................................................................................. 10

*Six Mexican Workers v. Arizona Citrus Growers*,
904 F.2d 1301 (9th Cir. 1990) .................................................................................. 8

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ....................................................................... 7, 12, 20

*Steiner v. Am. Broad. Co.*,
248 Fed. Appx. 780 (9th Cir. Cal. 2007) ................................................................ 19

*Sugarland Indus. v. Thomas*,
420 A.2d 142 (Del. 1980) ....................................................................................... 10

*Swedish Hosp. Corp. v. Shalala*,
1 F.3d 1261 (D.C. Cir. 1993).................................................................................... 8

*Thorpe v. CERBCO*,
1997 Del. Ch. LEXIS 18 (Del. Ch. Feb. 6, 1997)................................................... 12

*Van Vranken v. Atlantic Richfield Co.*,
901 F. Supp. 294 (N.D. Cal. 1995) ................................................................... 19, 21

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ..................................................................... passim

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005)..................................................................................... 19

**STATUTES**

28 U.S.C. § 1407 ........................................................................................................ 4

**TREATISES**

3 *Newberg on Class Actions*
  § 14.03 .................................................................................................... 19

Federal Judicial Center, *Manual for Complex Litigation* (4th ed. 2004)
  § 27.71 .................................................................................................... 10

## I.      **INTRODUCTION**

Class Counsel[1] respectfully moves the Court for an award of attorneys' fees and reimbursement of litigation expenses for having successfully obtained substantial benefits for the more than 1 million Class Members pursuant to the parties' Class Settlement Agreement and Release ("Settlement").  Among other relief, the Settlement will establish a $100 million common fund.

After more than three years of hard-fought litigation, and on the eve of trial, Chase has agreed to pay $100 million to create a non-reversionary, common Settlement Fund.  Settlement payment checks will automatically be sent to all Class Members by direct mail, with no claims process.  The $100 million Settlement Fund amount represents about one-half of the total up-front transaction fees the Class Members originally paid for their fixed-APR loans at issue in this litigation, and about 1.5 times the total "lost fees," when the partial benefit that Class Members received for their loans is taken into account.  In addition, the Settlement ensures a fixed, capped rate of interest for "alternative offer" balances that otherwise could have been subject to large rate increases, an additional significant benefit for the Class.  The results achieved by Class Counsel are outstanding, particularly in light of the complex issues raised in this litigation and the numerous difficult challenges that Class Counsel had to overcome in order to achieve such results.

Class Counsel requests a fee award from the common Settlement Fund in the amount of 25 percent of the fund—*i.e.*, $25 million.  A 25 percent fee is the "benchmark" in the Ninth Circuit for common fund cases, is well within the range commonly awarded in comparable cases, and is well justified here given, *inter alia*: the considerable efforts required of Class Counsel in this litigation over the past several years, including extensive discovery, motion, and expert practice, as well as trial preparation which was scheduled to begin shortly after the parties reached the settlement agreement; the quality of the work performed, which resulted in numerous litigation successes—such as class certification—in addition to the ultimate benefits achieved

---

[1] Class Counsel are the six firms previously appointed by the Court to serve on the Plaintiffs' Executive Committee in this litigation, and later appointed as Class Counsel:  Lieff Cabraser Heimann & Bernstein LLP, The Sturdevant Law Firm, P.C., Giskan Solotaroff Anderson & Stewart LLP, Girard Gibbs LLP, Milberg LLP, and Green & Noblin, P.C.  *See* Settlement, ¶ 2.14; Dkt. Nos. 22, 172.

1   through the Settlement; the benefits achieved for the Class that are not reflected in the Settlement

2   Fund amount; the complexity of the issues involved; and the contingent nature of the litigation.

3          Class Counsel also respectfully requests reimbursement from the Settlement Fund of their

4   common litigation expenses, in the amount of $1,194,415.20.  These expenses were necessarily

5   incurred in connection with the prosecution of this action, are reasonable, and should be

6   reimbursed.

7          Finally, Class Counsel requests that the Court award the Class Representatives, as well as

8   one named plaintiff[2] who was deposed and extensively participated throughout the litigation,

9   service awards of $7,500 each, and the Related Action Plaintiffs service awards of $1,000 each,

10  from the Settlement Fund, to compensate them for their efforts on behalf of the Class in this

11  litigation.  The requested awards are reasonable and justified under the circumstances of this case.

12  **II.     BACKGROUND**

13          **A.     The Settlement Represents an Outstanding Result for the Class.**

14                  **1.     The Common Settlement Fund.**

15         The Settlement achieved by Class Counsel provides substantial monetary relief for all

16  Class Members.  Pursuant to the Settlement, Chase will pay $100 million into a common

17  Settlement Fund.  To put that figure into perspective, the total up-front transaction fees that Class

18  Members paid for their fixed-APR loans at issue were about $221 million.  When the partial

19  benefit that Class Members received for their loans is taken into account, the total "lost fees" are

20  about $61.9 million.[3]  The Settlement Fund will be automatically distributed to the Class after

21  payment of the costs of notice and other administrative expenses, Court-awarded attorneys' fees

22  and expenses, and service awards for the plaintiffs.

23         All Class Members will be automatically mailed a settlement check via direct first-class

24  mail.  (Settlement, ¶¶ 7.1, 7.9).  Each Class Member will receive a base payment of $25.00.

25  Moreover, most Class Members will receive an additional payment that is a *pro rata* partial

26  refund of the up-front transaction fees they paid for their loans, with the portion of the fee that is

27

28  [2] Plaintiff Michael Moore
    [3] *See* Declaration of Bruce McFarlane, filed herewith ("McFarlane Decl."), ¶ 16.

1  refunded being a function of the percentage of the class member's loan benefits that were "lost"

2  due to the Change-in-Terms.  (*Id.*, ¶ 7.6).  This allocation is appropriately and reasonably

3  designed to ensure that the most compensation is provided to those Class Members who were

4  most affected by the Change-in-Terms.  To the extent there are any remaining funds as a result of

5  uncashed or undeliverable settlement checks, such amounts will be available to pay other claims

6  regarding the Change-in-Terms, subject to Class Counsel's approval, so long as they are asserted

7  no later than December 31, 2013 by or on behalf of anyone who was sent the notice in this case,

8  with any remaining funds paid as *cy pres* to Consumer Action to support its efforts to promote

9  consumer financial education.  (*Id.*, ¶ 7.11).  Thus, the entire Settlement Fund will be paid out;

10  nothing will revert to Chase.  (*See id*).

11  ## 2.  Chase's Commitment to Not Raise APRs on Alternative Offer Balances.

12

13  In addition to the substantial common fund, the Settlement provides additional benefits as

14  well.  Specifically, some Class Members acceded to the so-called "alternative offer" after

15  receiving the Change-in-Terms, which subjected them to an increase in the APR applicable to

16  their loans, to 7.99%, in order to retain a 2% minimum monthly payment standard.  The 7.99%

17  APR that applied to these alternative offer balances was fixed for a period of approximately two

18  years following the Class Member's acceptance of the alternative offer, after which Chase

19  expressly reserved the option to increase the rate to the Class Member's "purchase APR," which

20  is virtually always higher, and often significantly so.  Pursuant to the Settlement, Chase agreed

21  that it will not increase the APRs applicable to Class Members' alternative offer balances, and

22  that it will maintain a 2% minimum monthly payment requirement for Class Member accounts

23  with alternative offer balances, unless an individual Class Member defaults.  (*Id.*, ¶¶ 2.18, 7.15).

24  This additional relief has significant value, as it could potentially save the Class tens of millions

25  of dollars in interest or more.  *See* McFarlane Decl., ¶ 19.

26  ## B.  Class Counsel Overcame Considerable Challenges in Prosecuting This Action.

27

28  The outstanding results that Class Counsel achieved for the Class can only be properly

1   viewed in light of the numerous challenges and obstacles that Class Counsel had to overcome to

2   achieve them.  To be in a position to adequately address the numerous complex issues raised in

3   this action—such as the intricacies of the credit card industry, credit portfolio management, and

4   credit-risk analysis—Class Counsel had to invest significant time and resources to develop

5   expertise in these areas, all the while litigating against a well-funded defendant with abundant

6   institutional knowledge regarding all of these subjects.

7           Moreover, Chase vigorously litigated at every step of the way during the more than three

8   years this action was pending, all the way through the eve of trial, requiring Class Counsel to

9   overcome numerous critical obstacles, several of which, on their own, could have undermined the

10  litigation entirely.  By way of background, upon Chase's imposition of the first of the two

11  Changes-in-Terms at issue in the case, in approximately January 2009, multiple actions were filed

12  against Chase throughout the country.  After several cases were consolidated and transferred to

13  this Court pursuant to 28 U.S.C. § 1407, Plaintiffs filed their Master Class Action Complaint

14  ("Master Complaint") on July 26, 2009.  (Dkt. No. 24).  Chase moved to dismiss all causes of

15  action alleged in the Master Complaint.  Class Counsel successfully defeated the motion as it

16  related to Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing,

17  overcoming Chase's arguments that, under applicable Delaware law, Chase's express contractual

18  discretion to change loan terms and permissive statutory language precluded an implied covenant

19  claim, and defeating Chase's first attempt to argue that Plaintiffs' state common law claim was

20  preempted by the National Bank Act and corresponding federal regulations.  *See* Compl. (Dkt. No.

21  24); Order re: MTD at 10-12 (Dkt No. 70).

22          The parties thereafter engaged in pre-certification discovery.  Both sides propounded and

23  responded to considerable written discovery, Chase produced tens of thousands of responsive

24  documents for review, and Class Counsel worked closely with the named plaintiffs to identify,

25  locate and produce hundreds of responsive documents.  Moreover, Class Counsel deposed Chase

26  executives and defended the depositions of 10 named plaintiffs.  Through their pre-certification

27  discovery and other significant investigative efforts, Class Counsel were able to substantiate their

28  allegations, and further understand and analyze Chase's conduct at issue and its impact on the

1    Class, and ultimately obtain the information needed to move for class certification.  *See*

2    Declaration of Michael W. Sobol, filed herewith ("Sobol Decl."), ¶ 11; Gibbs PA Decl., ¶¶ 11-16.

3         Chase aggressively opposed Plaintiffs' class certification motion—which included full

4    briefing, a hearing, expert submissions and expert depositions, a contested motion by Chase to

5    strike expert testimony, and supplemental post-hearing submissions filed at the Court's request.

6    The Court nevertheless certified Plaintiffs' implied covenant claim on May 13, 2011.  (Dkt. No.

7    172).  In achieving class certification, Class Counsel was able to overcome numerous formidable

8    arguments from Chase in opposition, including regarding the standard for determining reasonable

9    consumer expectations under Delaware law, purported differences between Class Members'

10   actual expectations about minimum payment requirements (with respect to which Chase

11   submitted expert survey analysis), variations among the promotional offers accepted by the Class

12   Members, and the challenges Plaintiffs faced in proving and measuring damages on a class-wide

13   basis.  *See* Sobol Decl., ¶ 12; Gibbs PA Decl., ¶ 9(d).

14        Chase thereafter sought interlocutory review of the Court's class certification Order,

15   pursuant to Fed. R. Civ. P. 23(f).  Class Counsel successfully opposed Chase's request, which

16   was denied.  (*See* Dkt. No. 190).  Class notice was then mailed to over one million Class

17   Members via direct mail.  Only about .02% of the Class (287 in total) opted-out.

18        After class certification, further merits discovery continued.  This included multiple sets

19   of requests for production, interrogatories, and requests for admission, and numerous fact and

20   expert depositions.  Class Counsel deposed eleven (11) current and former Chase executives and

21   employees (some of whom were deposed for multiple days) with knowledge regarding, among

22   other issues, Chase's decision to adopt the Change-in-Terms, Chase's analysis regarding the

23   Class Members' accounts, Chase's expectations regarding response to the Change-in-Terms, the

24   actual response of customers subject to the change, and the availability of Chase's historical data

25   regarding Class Members' accounts.  Moreover, Chase produced tens of thousands of additional

26   internal documents for review.  *See* Sobol Decl., ¶ 14; Gibbs PA Decl., ¶¶ 11-16.

27        Much of the discovery that Class Counsel obtained required contested motion practice.

28   Many potential discovery disputes were resolved through the extensive meet and confer efforts

among counsel, although some could not be; in all, a total of eighteen (18) discovery disputes were submitted to Magistrate Judges Larson and Corley.  Collectively, these efforts resulted in Class Counsel obtaining vital documents, data and deposition testimony they would not have otherwise obtained, including data that was essential for measuring class damages, documents initially withheld by Chase on privilege and relevance grounds, and documents Chase deemed to be protected by the "bank examination privilege," the latter category requiring continuing correspondence and discussion among Class Counsel, Chase and the Office of the Comptroller of the Currency.  *See* Sobol Decl., ¶ 15; Gibbs PA Decl., ¶ 17.

Further, the parties engaged in extensive expert practice, with both sides designating multiple experts for trial.  Plaintiffs' designated experts covered critical subjects such as historical credit card industry practices, the reasonable expectations of the Class Members and how they related to Chase's conduct at issue, an assessment of Chase's proffered expert survey regarding customer expectations, and the proper economic measurement and calculation of class damages.  Class Counsel worked closely with the experts on all of these areas, among other areas.  The parties' designated experts, including Chase's three designated experts, all submitted formal expert reports and/or rebuttal reports, and all were deposed.  *See* Sobol Decl., ¶ 16; Gibbs PA Decl., ¶¶ 18-22.

After the close of discovery, significant pre-trial motion practice continued.  On March 8, 2012, Chase filed a motion to transfer venue to the District of Delaware, which Class Counsel successfully opposed.  (Dkt. No. 239).  Moreover, on April 13, 2012 (the deadline for dispositive motions), the parties filed cross-motions for summary judgment/partial summary judgment, and Chase filed a motion to decertify the Class.  In its summary judgment motion, Chase renewed its argument that Plaintiffs' claim was preempted by federal law, and further argued that Plaintiffs' claim failed on the merits for a variety of reasons.  (Dkt. No. 290).  Plaintiffs, on the other hand, moved for partial summary judgment in their favor on Chase's preemption defense and other affirmative defenses.  (Dkt. No. 287).

In moving to decertify the Class, Chase argued that damages were necessarily an individualized issue based on each Class Member's expectations and would need to take into

1     account each Class Member's financial circumstances at the time of the change in terms,

2     including where they got the funds required to pay the increased minimum monthly payments,

3     whether they would have made higher monthly payments anyway, and whether they secured

4     alternative financing (or could have) and on what terms.  (Dkt. No. 289).  Chase was particularly

5     critical of the "lost loan" damages valuation that Plaintiffs intended to present at trial through

6     expert testimony.  The parties' cross-motions for summary judgment/ partial summary judgment

7     and Chase's decertification motion were fully briefed, and were pending at the time the parties

8     reached an agreement in principal in May 2012.

9        Moreover, as the July 2012 trial date approached, Class Counsel dutifully prepared for

10    trial.  Among other efforts that were well underway included the drafting of proposed jury

11    instructions and verdict forms, and the development of potential trial exhibit and witness lists,

12    which required considerable time and effort in culling through the voluminous pertinent

13    documents and deposition testimony.  Class Counsel also worked with a trial consultant to assist

14    in their preparation for the trial.  *See* Sobol Decl., ¶ 18; Gibbs PA Decl., ¶ 23.

**III.**     **ARGUMENT**

     **A.**     **The Requested Fee Award is Fair, Reasonable and Justified.**

         **1.**     **The Common Fund Doctrine Applies.**

18        The "common fund" doctrine applies where, as here, a litigation results in the recovery of

19    a certain and calculable fund on behalf of a group of beneficiaries.  Indeed, the Ninth Circuit and

20    other federal courts have long recognized that when counsel's efforts result in the creation of a

21    common fund that benefits plaintiffs and unnamed class members, counsel have an equitable right

22    to be compensated from that fund for their successful efforts in creating it.  *See Boeing Co. v. Van*

23    *Gemert*, 444 U.S. 472, 478 (1980) ("lawyer who recovers a common fund…is entitled to a

24    reasonable attorney's fee from the fund as a whole"); *Staton v. Boeing Co.*, 327 F.3d 938, 967

25    (9th Cir. 2003); *In re Washington Public Power Supply System Sec. Litig.*, 19 F.3d 1291, 1300

26    (9th Cir. 1994) ("those who benefit in the creation of a fund should share the wealth with the

27    lawyers whose skill and effort helped create it").  Delaware courts recognize this principal as well.

28    *See Goodrich v. E.F. Hutton Group*, 681 A.2d 1039, 1045 (Del. 1996) (where attorneys' efforts

result in the creation of a common fund, they "are entitled to receive a reasonable fee and reimbursement for expenses from that fund").[4]

This litigation has resulted in, among other benefits, a common Settlement Fund of $100 million which will be distributed to the Class after the payment of court-awarded attorneys' fees and costs, service awards, and administrative costs and taxes.  Class Members have not paid Class Counsel for their efforts during the litigation, and equity thus requires that Class Members pay a fair and reasonable fee to Class Counsel, no less than if they had hired private counsel to litigate their cases individually.  *See Boeing*, 444 U.S. at 479-81.

### 2.   The Fee Award Here Should Be Calculated As a Percentage of the Common Settlement Fund.

The fairest and most efficient way to calculate a reasonable fee where, as here, contingency fee litigation has produced a common fund is by awarding class counsel a percentage of the total fund.  *See Vizcaino*, 290 F.3d at 1047; *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (common fund fee is generally "calculated as a percentage of the recovery"); *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007) ("use of the percentage method in common fund cases appears to be dominant"); *Goodrich*, 681 A.2d at 1045-47 (under Delaware law, court has discretion to use percentage of fund or lodestar method; noting that percentage of fund method preferred by most courts).  The percentage-of-the-fund method comports with the legal marketplace, where counsel's success is frequently measured in terms of the results counsel has achieved.  *See Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993) (in common fund cases "the monetary amount of the victory is often the true measure of [counsel's] success").  By assessing the amount of the fee in terms of the amount of the benefit conferred on the class, the percentage method "more accurately reflects the economics of litigation practice" which, "given the uncertainties and hazards of litigation, must necessarily be result-oriented."  *Id*.

---

[4] The implied covenant claim litigated on behalf of the Class in this case was under Delaware law, and Delaware law thus governs the award of attorneys' fees here.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  Delaware law regarding attorneys' fees closely tracks that of the Ninth Circuit, and the Court may properly look to Ninth Circuit and other federal precedent to determine the appropriate fee here.  *See id.*

### 3.   A Fee Based on the Ninth Circuit's "Benchmark" of 25 Percent Is Well Justified Here.

In the Ninth Circuit, the "benchmark" for a fee award in a common fund case is 25 percent of the fund achieved.  *Vizcaino*, 290 F.3d at 1047; *Washington Public Power*, 19 F.3d at 1297.  An award in excess of the benchmark may be proper in certain circumstances.  *Vizcaino*, 290 F.3d at 1048-1050.  Courts in the Ninth Circuit frequently award fees greater than the benchmark.  *See, e.g.*, *Vizcaino*, 290 F.3d at 1048-1050; *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000); *Omnivision*, 559 F. Supp. 2d at 1047 ("[I]n most common fund cases, the award exceeds th[e] benchmark.").[5]

Likewise, Delaware courts regularly award fees of between 25 and 33 percent where a significant monetary benefit is achieved for a class after substantial litigation, including in cases where the benefit was achieved after far less litigation than has occurred here. *See, e.g., Gatz v. Ponsoldt,* 2009 Del. Ch. LEXIS 100, at *9-10 (Del. Ch. June 12, 2009) (33% fee where counsel "exert[ed] significant effort," including by "tak[ing] a significant amount of discovery and depos[ing] numerous witnesses"); *Crowhorn v. Nationwide Mut. Ins. Co.*, 836 A.2d 558, 565-66 (Del. Super. Ct. 2003) (33% fee); *Ryan v. Gifford*, 2009 Del. Ch. LEXIS 1, at *18, 40 (Del. Ch. Jan. 2, 2009) (33% fee where counsel engaged in "meaningful discovery" and "significant, hard fought motion practice"); *In re Compellent Techs., Inc.*, 2011 Del. Ch. LEXIS 190, at *48-49, 79 (Del. Ch. Dec. 9, 2011) (25% fee where settlement occurred less than two months after commencement); *In re Celera Corp. S'holder Litig.*, 2012 Del. Ch. LEXIS 66, at *118 (Del. Ch. Mar. 23, 2012) (25% fee where counsel "conducted expedited discovery during a fast-paced transaction, deposed eight witnesses, prepared and submitted a preliminary injunction brief, and settled on the eve of a preliminary injunction hearing").

Under the percentage of the fund approach, Ninth Circuit and Delaware courts consider a

---

[5] *See also, e*.g., *Knight v. Red Door Salons, Inc.*, 2009 U.S. Dist. LEXIS 11149, at *17 (N.D. Cal. Feb. 2, 2009) (30%); *In re Public Serv. Co. of New Mexico*, 1992 U.S. Dist. LEXIS 14888, at *21 (S.D. Cal. July 28, 1992) (one-third); *Antonopulos v. N. Am. Thoroughbreds, Inc.*, 1991 U.S. Dist. LEXIS 12579, at *2 (S.D. Cal. May 6, 1991) (one-third); *In re M.D.C. Holdings Sec. Litig.*, 1990 U.S. Dist. LEXIS 15488, at *31-32 (S.D. Cal. Aug. 30, 1990) (30% plus expenses); *Garner v. State Farm*, 2010 U.S. Dist. LEXIS 49482, at *5-6 (N.D. Cal. Apr. 22, 2010) (30% plus expenses).

1    number of factors to determine the appropriate fee percentage, including: (1) the results achieved;

2    (2) whether there are benefits to the class beyond the immediate generation of a cash fund; (3) the

3    complexities of the case and skill required of counsel; (4) the contingent nature of the fee; and (5)

4    awards in similar cases.  *See Vizcaino*, 290 F.3d at 1048-1050; *Knight v. Red Door Salons, Inc.*,

5    2009 U.S. Dist. LEXIS 11149, at *7 (N.D. Cal. Feb. 2, 2009); *Sugarland Indus. v. Thomas*, 420

6    A.2d 142, 149 (Del. 1980); *Crowhorn*, 836 A.2d at 565.  These factors would support a fee award

7    here in excess of the 25 percent benchmark, and they strongly support the 25 percent fee

8    requested.

9                          **a.      Class Counsel Achieved An Outstanding Monetary Result For**
                                     **the Class Through the Settlement Fund.**
10

11          The results obtained for the class are generally considered to be the most important factor

12   in determining the appropriate fee award in a common fund case.  *See Hensley v. Eckerhart*, 461

13   U.S. 424, 435-36 (1983); *Vizcaino*, 290 F.3d at 1049; *Omnivision*, 559 F. Supp. 2d at 1046; *Gatz*,

14   2009 Del. Ch. LEXIS 100, at *7 (citing *Seinfeld v. Coker*, 847 A.2d 330, 336 (Del. Ch. 2000));

15   *see also* Federal Judicial Center, *Manual for Complex Litigation*, § 27.71, p.336 (4th ed. 2004)

16   (the "fundamental focus is on the result actually achieved for class members").  The outstanding

17   monetary relief that Class Counsel achieved here in the form of the Settlement Fund, alone,

18   justifies a 25 percent fee.

19          The $100 million payment here represents about one-half (45.2%) of the approximately

20   $221 million total up-front transaction fees that Class Members paid for their fixed-APR loans.

21   *See McFarlane Decl.*, ¶ 16.  All Class Members will be sent a settlement check directly, with no

22   claims process, and the entire Settlement Fund will be paid out; no monies will revert to Chase.

23   Particularly given that Class Members received a significant portion of the loan benefits for

24   which they paid transaction fees,[6] the Settlement Fund is an excellent result.  Indeed, even if one

25   were only to focus on the amount of funds—*i.e.*, the Net Settlement Fund—that will be

26   distributed to the Class, the result here is excellent.

27   _____

28   [6] Plaintiffs' expert, Mr. McFarlane, has calculated the total "lost fees" to be approximately $61.9
     million.  *See McFarlane Decl.*, ¶ 16.

By any standard, this is an outstanding result that supports the requested fee award. Indeed, Ninth Circuit courts have repeatedly awarded class counsel fees of 25 percent or more in cases where the proportional recovery for the class was significantly lower than in this case. *See, e.g., In re Mego Fin. Corp.,* 213 F.3d at 457, 459, 463 (1/3 fee where fund amounted to one-sixth of estimated losses); *In re Heritage Bond Litig.,* 2005 U.S. Dist. LEXIS 13555, *28, 62 (C.D. Cal. June 10, 2005) (finding that a settlement fund amounting to about 36 percent of the class' net losses was an "exceptional result" and awarding a 1/3 fee); *Knight*, 2009 U.S. Dist. LEXIS 11149, at *9, 19 (30% fee where settlement fund equaled about half of alleged damages).

And while Plaintiffs put forward alternative measures of damages that, if permitted by the Court and accepted by the jury, might have resulted in a larger recovery, those measures were vigorously challenged by Chase and were the primary basis for Chase's pre-trial motion to decertify the Class that was pending at the time of the Settlement.  The Settlement provides substantial relief to all Class Members without further delay, and without the risks associated with Chase's pre-trial motions, trial, and an appeal.  The substantial monetary relief achieved by Class Counsel, particularly under the circumstances, strongly militates in favor of a 25 percent fee award here.

b.      **Class Counsel Achieved Valuable Additional Benefits Beyond the Settlement Fund.**

In addition, Class Counsel secured other important benefits for the Class which are not accounted for in the dollar value of the Settlement Fund.  Chase's agreement  that it will not increase the APRs associated with Class Members' alternative offer balances to their "purchase APRs" (which can approach as high as 30% APR), and to maintain a 2% minimum monthly payment for such accounts, could save the Class as much as tens of millions of dollars in interest or more.  *See* Settlement, ¶ 7.15; McFarlane Decl., ¶ 19.

The Ninth Circuit and other courts have repeatedly held that where, as here, class counsel achieves significant benefits that are not accounted for in the dollar value of the common settlement fund, the court "should consider the value of [such] relief as a relevant circumstance in determining what percentage of the common fund class counsel should receive as attorneys' fees."

1    *Staton*, 327 F.3d at 974; *see also Vizcaino*, 290 F.3d at 1049 (affirming enhanced fee award

2    where "the court found that counsel's performance generated benefits beyond the cash settlement

3    fund"); *Linney v. Cellular Alaska P'ship*, 1997 U.S. Dist. LEXIS 24300, *20 (N.D. Cal. July 18,

4    1997) (granting fee award of 1/3 of common fund where settlement provided additional non-

5    monetary relief); *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 525

6    (E.D.N.Y 2003) ("I agree that the substantial injunctive relief here should inform [the court's]

7    decision on awarding fees, and it has.").  The valuable additional benefits achieved here further

8    support a 25 percent fee award.

9                          **c.    Successfully Prosecuting This Case Required Extraordinary**
10                                 **Skill and Effort on the Part of Class Counsel.**

11          The complexity of the issues involved and skill and effort displayed by class counsel are

12   additional factors used in determining the proper fee under the percentage of the fund approach.

13   *See Vizcaino*, 290 F.3d at 1048; *Omnivision*, 559 F. Supp. 2d at 1047; *In re Cablevision/Rainbow*

14   *Media Group Tracking Stock Litig.*, 2009 Del. Ch. LEXIS 84, at *4 (Del. Ch. May 22, 2009);

15   *Thorpe v. CERBCO*, 1997 Del. Ch. LEXIS 18, at *17 (Del. Ch. Feb. 6, 1997).

16          Successfully prosecuting this action required considerable commitments of time,

17   resources, and energy, and the relief achieved simply would not have been possible but for the

18   commitment of Class Counsel.  Investigating, analyzing and litigating the numerous complex

19   factual and legal issues addressed in this action, required a greater undertaking than is typical in

20   most class actions.  *See* section II.B, *supra*.  Among other issues Class Counsel had to contend

21   with were:  federal preemption, Chase's express contractual right to change loan terms, Delaware

22   statutory language, the standard for measuring consumer expectations under Delaware law, the

23   objective measurement of such expectations, historical credit card industry practices, the

24   appropriate legal and economic measure of class damages, the significance of variations in Class

25   Member behavior, and Chase's motivations and justifications for the Change-in-Terms.

26          Moreover, as set forth above, Chase vigorously litigated every aspect of this case, from

27   the very beginning all the way through the eve of trial.  Overcoming Chase's formidable, and in

28   some instances potentially case-ending, defenses in this case required extremely hard work.  *See*

section II.B, *supra*.  Among other important tasks, Class Counsel did the following:

(1)    Factual investigation and legal research regarding the issues and claims in the litigation;

(2)    Communicating with the plaintiffs and other Class Members;

(3)    Drafting portions of five joint case management statements and participating in the corresponding case management conferences;

(4)    Propounding seven sets of requests for the production of documents, 27 special interrogatories, and two sets of requests for admission;

(5)    Responding and objecting to, and producing hundreds of  responsive documents in conjunction with, Chase's written discovery, which included multiple sets of interrogatories, requests for admission, and three sets of requests for production of documents;

(6)    Reviewing tens of thousands of documents produced by Chase;

(7)    Deposing 11 of Chase's current and former executives and employees (some of whom were deposed for multiple days), and deposing three of Chase's designated experts;

(8)    Defending the depositions of ten plaintiffs, and preparing them for deposition;

(9)    Retaining and consulting with experts, working with experts on their respective reports and rebuttal reports, and preparing them for, and defending, their depositions;

(10)    Successfully moving to compel further responses to discovery and further document production, including by obtaining Court orders requiring Chase to produce numerous documents it had previously withheld on privilege grounds or had redacted on relevance grounds, and by obtaining consent from the Office of the Comptroller of the Currency for Chase to produce hundreds of documents previously withheld on "bank examination privilege" grounds;

(11)    Engaging in extensive motion practice, including opposing Chase's motion to dismiss, moving to certify the Class, opposing Chase's motion to strike the declaration of Plaintiffs' industry expert at the class certification stage, opposing Chase's motion to transfer venue, filing a motion for partial summary judgment, opposing Chase's motion for summary judgment, opposing Chase's motion to decertify the Class, and numerous discovery disputes submitted to Magistrate Judge Larson and Magistrate Judge Corley;

(12)    Preparing for trial, including by analyzing potential trial exhibits and deposition testimony, and drafting jury instructions and verdict forms; and

(13)    Participating in six mediation sessions and numerous follow-up settlement discussions.[7]

---

[7] Gibbs PA Decl., ¶¶ 4-26; Sobol Decl., ¶¶ 8-39; *see also* Declaration of Eric H. Gibbs, filed herewith ("Gibbs FA Decl."), ¶¶ 21-27; Declaration of James C. Sturdevant, filed herewith ("Sturdevant Decl."), ¶¶ 19-20; Declaration of Oren Giskan, filed herewith ("Giskan Decl."), ¶ 4; Declaration of Robert S. Green, filed herewith ("Green Decl."), ¶¶ 6-18; Declaration of Jeff S.

1   The skill and effort displayed by Class Counsel here further justifies a 25 percent fee award.

2                    **d.      The Contingent Nature of the Case Supports the Requested
                             Fee.**

3

4          Courts have long recognized that the public interest is served by rewarding attorneys who

5   assume representation on a contingent basis with an enhanced fee to compensate them for the risk

6   that they might be paid nothing at all for their work.  *See Washington Public Power*, 19 F.3d at

7   1299 ("Contingent fees that may far exceed the market value of the services if rendered on a non-

8   contingent basis are accepted in the legal profession as a legitimate way of assuring competent

9   representation for plaintiffs who could not afford to pay on an hourly basis regardless whether

10  they win or lose."); *Vizcaino*, 290 F.3d at 1051 (courts reward successful class counsel in

11  contingency case "by paying them a premium over their normal hourly rates"); *Gatz*, 2009 Del.

12  Ch. LEXIS 100, at *9 & n.11 (Delaware courts likewise consider the contingent nature of fee in

13  determining award) (citing *Chrysler Corp. v. Dann*, 223 A.2d 384, 389 (Del. 1966)).

14         Class Counsel prosecuted this case on a purely contingent basis, agreeing to advance all

15  necessary expenses and that they would only receive a fee if there was a recovery.[8]  Class

16  Counsels' outlay of time and money in this case has been considerable; in all, Class Counsel and

17  their staffs have spent approximately 18,398.07 hours investigating, analyzing, researching,

18  litigating, and negotiating a favorable resolution of, this case, and have incurred well over $1

19  million in necessary litigation expenses.[9]  Class Counsel expended these resources despite the

20  very real risk that they may never be compensated at all.  In fact, the risk assumed was

21  considerably magnified in this case, given the complexity of the issues raised and the numerous

22

23  Westerman, filed herewith ("Westerman Decl."), ¶¶ 6-10.

24  [8] *See* Sobol Decl., ¶ 51; Gibbs FA Decl., ¶ 16; Sturdevant Decl., ¶ 23; Giskan Decl., ¶ 7; Green

25  Decl., ¶ 22; Westerman Decl., ¶ 13.

26  [9] Sobol Decl., ¶¶ 52, 58-61, Exs. B-C; Gibbs FA Decl., ¶¶ 12, 19; Sturdevant Decl, ¶¶ 24-25, 31,
    Ex. B; Giskan Decl., ¶¶ 8-9, 14, Ex. B; Green Decl., ¶¶ 23-24, 30, Ex. B; Westerman Decl., ¶¶

27  14-15, 21, Ex. B.  These amounts do not include the additional time and expenses that Class
    Counsel will have to incur going forward, including in connection with obtaining approval of the

28  Settlement and performing their obligations with respect to implementation of the Settlement.

formidable defenses that Chase advanced.  Class Counsel's "substantial outlay, when there is a risk that that none of it will be recovered, further supports the award of the requested fees" here. *Omnivision*, 559 F. Supp. 2d at 1047; *see also In re Emerson Radio S'holder Derivative Litig.*, 2011 Del. Ch. LEXIS 50, at *19 (Del. Ch. Mar. 28, 2011).

Further, the "opportunity costs" associated with prosecuting this case were significant. Class Counsel have had to turn down opportunities to work on other cases in order to devote the appropriate amount of time, resources, and energy necessary to handle this complex and demanding matter.[10]  Class Counsel's devotion to this case in lieu of other opportunities further supports the requested fee award here.  *See Vizcaino*, 290 F.3d at 1050; *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *69.

### e.    The Requested Fee is In Line With Fee Awards in Comparable Cases.

The "benchmark" 25 percent fee requested is well within the range commonly awarded in cases where, as here, substantial relief was obtained for the class after extensive, hard-fought litigation.   Indeed, Ninth Circuit and Delaware courts have repeatedly awarded fees of 25 percent and higher in cases where the proportionate recovery was significantly lower than in this case and where considerably less litigation occurred than here.  *See, e.g., In re Mego Fin. Corp.*, 213 F.3d at 459 (one-third fee awarded where recovery amounted to one-sixth of estimated losses); *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, *28, 62 (C.D. Cal. June 10, 2005) (settlement fund amounting to 36 percent of the class' net losses was an "exceptional result;" awarding one-third fee); *Knight*, 2009 U.S. Dist. LEXIS 11149, at *9, 19 (30% fee where settlement fund equaled about half of alleged damages); *Gatz*, 2009 Del. Ch. LEXIS 100, at *9-10 (33% fee where counsel took "significant amount of discovery"); *Ryan*, 2009 Del. Ch. LEXIS 1, at *18, 40 (33% fee where counsel engaged in "meaningful discovery" and "significant, hard fought motion practice"); *In re Compellent*, 2011 Del. Ch. LEXIS 190, at *48-49, 79 (25% fee where settlement occurred less than two months after commencement); *In re Celera Corp.*, 2012

---

[10] Sobol Decl., ¶ 50; Gibbs FA Decl., ¶ 16; Sturdevant Decl, ¶ 22; Giskan Decl., ¶ 6; Green Decl., ¶ 21; Westerman Decl., ¶ 12.

Del. Ch. LEXIS 66, at *118 (25% fee where counsel conducted discovery and case settled on the eve of a preliminary injunction hearing).[11]

The requested fee is also well within the range commonly awarded in cases where class counsel achieve a large settlement fund for the class' benefit. *See Vizcaino*, 290 F.3d at 1052, n.9 (survey of awards in cases with class settlements between $50-200 million); *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1210 (S.D. Fla. 2006) (31.3% fee for settlement fund of over $1 billion); *In re Linerboard Antitrust Litig.*, 2004 U.S. Dist. LEXIS 10532 (E.D. Pa. Jun. 2, 2004) (30% fee; $202 million fund); *In re Relafen Antitrust Litig.*, 2004 U.S. Dist. LEXIS 28801 (D. Mass. Apr. 9, 2004) (1/3 fee; $175 million fund); *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393 (S.D.N.Y. 1999) (28.3% fee; $132 million fund); *Kurzweil v. Philip Morris Cos.*, 1999 U.S. Dist. LEXIS 18378 (S.D.N.Y. Nov. 30, 1999) (30% fee; $123 million fund); *see also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 303 (3d Cir. 2005) (citing study finding that fee awards in the 25-30% range were "fairly standard" in class action settlements between $100-200 million).

### 4.   A Lodestar-Multiplier "Cross-Check" Confirms the Reasonableness of the Fee Requested.

A court applying the percentage-of-the-fund method may use the lodestar method as a "cross-check on the reasonableness of a percentage figure." *Vizcaino*, 290 F.3d at 1050 & n.5; *In re Compellent Techs., Inc.*, 2011 Del. Ch. LEXIS 190, at *83 (Del. Ch. Dec. 9, 2011). The cross-check is optional. *See Vizcaino*, 290 F.3d at 1050 ("while the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award"); *accord Goodrich*, 681 A.2d at 1047. A lodestar-multiplier cross-check here confirms that a 25% fee award is reasonable.

The first step in the lodestar-multiplier method is to multiply the number of hours counsel reasonably expended on the litigation by a reasonable hourly rate. *See Hanlon v. Chrysler Corp.*,

---

[11] *See also In re Corel Corp. Inc. Sec. Litig.*, 293 F. Supp. 2d 484, 489-490, 498 (E.D. Pa. 2003) (1/3 fee where settlement fund equaled about 15% of damages); *In re Gen. Instruments Sec. Litig.*, 209 F. Supp. 2d 423, 431, 434 (E.D. Pa. 2001) (1/3 fee where settlement fund equaled about 11% of estimated damages); *In re Medical X-Ray Film Antitrust Litig.*, 1998 U.S. Dist. LEXIS 14888, at *15, 20 (E.D.N.Y. Aug. 7, 1998) (1/3 fee where recovery was 17% of damages).

1    150 F.3d 1011, 1029 (9th Cir. 1998).  Once this raw lodestar figure is determined, the court may

2    take into consideration additional factors to enhance the lodestar such as: (1) the novelty and

3    difficulty of the questions involved; (2) the preclusion of other employment due to acceptance of

4    the case; (3) whether the fee is fixed or contingent; (4) the results obtained; (5) the experience,

5    reputation, and ability of the attorneys; and (6) awards in similar cases.  *See Kerr v. Screen Extras

6    Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975); *Hanlon*, 150 F.3d at 1029; *Ballen v. City of Redmond*,

7    466 F.3d 736, 746 (9th Cir. 2006); *Elite Cleaning Co. v. Capel*, 2006 Del. Ch. LEXIS 196, at *6-

8    7 (Del. Ch. Nov. 20, 2006).

9        The accompanying declarations of Class Counsel set forth the hours of work and billing

10   rates used to calculate their lodestar.  As described in those declarations, Class Counsel and their

11   staffs have devoted approximately 18,398.07 hours to this litigation, and have a total unadjusted

12   lodestar to date of approximately $9,276,705.15.  *See* Sobol Decl., ¶ 52, Ex. B; Gibbs FA Decl.,

13   ¶¶ 12, 19; Sturdevant Decl., ¶¶ 24-25, Ex. B; Giskan Decl., ¶¶ 8-9, Ex. B; Green Decl., ¶¶ 23-24,

14   Ex. B; Westerman Decl., ¶¶ 14-15, Ex. B.[12]

15       Class Counsels' hourly rates are reasonable.  In assessing the reasonableness of an

16   attorney's hourly rate, courts consider whether the claimed rate is "in line with those prevailing in

17   the community for similar services by lawyers of reasonably comparable skill, experience and

18   reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *accord Elite Cleaning*, 2006 Del.

19   Ch. LEXIS 196, at *6.  Moreover, Courts apply each biller's current rates for all hours of work

20   performed, regardless of when the work was performed, as a means of compensating for the delay

21   in payment. *See In re Washington Pub. Power*, 19 F.3d at 1305.  Class Counsel here are highly

22   regarded members of the bar who are experienced in the area of consumer class actions and

23   complex litigation.[13]  Class Counsels' customary rates, which were used in calculating the

24   lodestar here, are in line with prevailing fees in this District, have been approved by courts in this

---

[12] As noted above, these amounts do not include the additional time that Class Counsel will have to spend going forward in obtaining approval of, and implementing, the Settlement.  Nor do they include significant time spent, at the direction of Class Counsel, by other counsel that filed underlying actions coordinated in this litigation.

[13] Sobol Decl., ¶¶ 2-7; Gibbs FA Decl., ¶¶ 4-11, Ex. 2; Sturdevant Decl., ¶¶ 1-18, Ex. A; Giskan Decl., ¶¶ 2-3, Ex. A; Green Decl., ¶¶ 2-5, Ex. A; Westerman Decl., ¶¶ 2-5, Ex. A.

1  District and elsewhere, and are the same rates that they charge their hourly paying clients.[14]

2  Class Counsels' hourly rates are therefore reasonable.

3      The number of hours that Class Counsel billed is reasonable as well. *See Caudle v.*

4  *Bristow Optical Co*., 224 F.3d 1014, 1028 (9th Cir. 2000) (counsel entitled to recover for all

5  hours reasonably expended); *Elite Cleaning*, 2006 Del. Ch. LEXIS 196, at *6 -7 (same). Class

6  Counsel made every reasonable effort to prevent the duplication of work or inefficiencies that

7  might have resulted from having multiple firms working on this litigation. For example, meetings

8  among Class Counsel were kept to a minimum, were generally based on agendas prepared in

9  advance, and were focused on strategy decisions and the assignment of tasks. Moreover,

10  assignments were made for specific tasks and activities so that it was clear which firms and

11  personnel had primary responsibility over each task.[15]

12      Class Counsels' hours are particularly reasonable given Chase's vigorous defense of this

13  action all the way through the eve of trial, which necessitated, *inter alia*, extensive discovery

14  practice, multiple litigated motions, employing multiple experts on both sides, and trial

15  preparation. *See* sections II.B and III.A.3.c, *supra* (summarizing history of litigation and tasks

16  performed); *see also* Sobol Decl., ¶¶ 8-39; Gibbs FA Decl., ¶¶ 21-27; Sturdevant Decl, ¶¶ 19-20;

17  Giskan Decl., ¶ 4; Green Decl., ¶¶ 6-18; Westerman Decl., ¶¶ 6-10.[16]

18      Class Counsel seeks $25 million in fees, which is equal to their lodestar of $9,276,705.15,

19  adjusted by a multiplier of approximately 2.695. Courts regularly approve fee awards resulting in

20  multipliers which are significantly higher than that. *See, e.g., Craft v. County of San Bernardino,*

21  624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (approving 25% fee award yielding a multiplier of

22  5.2 and stating that "there is ample authority for such awards resulting in multipliers in this range

23

---

24  [14] Sobol Decl., ¶¶ 56-57; Gibbs FA Decl., ¶¶ 28-31; Sturdevant Decl., ¶¶ 29-30; Giskan Decl., ¶¶ 12-13, Ex. B; Green Decl., ¶¶ 28-29, Ex. C; Westerman Decl., ¶¶ 19-20.

25  [15] Sobol Decl., ¶¶ 40, 48-49; Gibbs FA Decl., ¶ 15; Sturdevant Decl., ¶ 21; Giskan Decl., ¶ 5; Green Decl., ¶¶ 19-20; Westerman Decl., ¶ 11.

26

27  [16] It is well established that in moving for fees, counsel is "not required to record in great detail how each minute of his time was expended." *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983). Instead, counsel need only "identify the general subject matter of his time expenditures."

28  *Id.* If the Court prefers to review Class Counsels' detailed time records, Class Counsel will make them available for *in camera* review.

1    or higher"); *Steiner v. Am. Broad. Co.,* 248 Fed. Appx. 780, 783 (9th Cir. Cal. 2007) (upholding

2    25% fee award yielding multiplier of 6.85, finding that it "falls well within the range of

3    multipliers that courts have allowed"); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294,

4    298-99 (N.D. Cal. 1995) (multiplier of 3.6 was "well within the acceptable range for fee awards

5    in complicated class action litigation" and stating that "[m]ultipliers in the 3-4 range are

6    common"); *see also Vizcaino*, 290 F.3d at 1051 and Appendix (affirming 28% fee award where

7    multiplier equaled 3.65; and citing cases approving multipliers in common fund cases averaging

8    3.32 and going as high as 19.6 ); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 123 (2d

9    Cir. 2005) (approving multiplier of 3.5); *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp.

10    2d 72, 104 (D N.J. 2001) (approving multiplier of 2.81 and citing cases approving multipliers

11    from 2.04 to 3.6); *see also* 3 *Newberg on Class Actions* § 14.03 (multipliers "ranging from one to

12    four are frequently awarded in common fund cases where the lodestar method is applied").

13        Moreover, under the circumstances of this case—including, *inter alia*, the exceptional

14    monetary and additional relief obtained for the Class; the fact that Class Counsel had to litigate

15    this case for more than three years against Chase's vigorous defense in order to obtain such relief;

16    the contingent nature of the fee; the significant risks assumed by Class Counsel in representing

17    the Class in this case; the complexity of the issues involved; and the skill and effort demonstrated

18    by Class Counsel in successfully litigating this action on behalf of the Class—a significant

19    multiplier is well justified here under applicable law.  *See Kerr*, 526 F.2d at 70; *Elite Cleaning*,

20    2006 Del. Ch. LEXIS 196, at *6-7; *see also Washington Public Power*, 19 F.3d at 1299-1300

21    ("[C]ourts have routinely enhanced the lodestar to reflect the risk of non-payment in common

22    fund cases" in accord with the "established practice in the private legal market of rewarding

23    attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly

24    rates for winning contingency cases.").  A lodestar-multiplier cross-check therefore further

25    supports the reasonableness of a 25% fee award here.

26    **B.    Class Counsels' Common Litigation Expenses Are Reasonable and Should Be Reimbursed.**

27    "Reasonable costs and expenses incurred by an attorney who creates a common fund are

28

MOT. FOR AWARD OF ATTORNEYS' FEES AND
EXPENSES AND FOR SERVICE AWARDS; MPA
CASE NO. 3:09-MD-02032 MMC (JSC)

1  reimbursed proportionally by those class members who benefit from the settlement." *In re Media*

2  *Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996); *see also, e.g., Garner v. State*

3  *Farm Mut. Auto. Ins. Co.,* 2010 U.S. Dist. LEXIS 49482, *6 (N.D. Cal. Apr. 22, 2010) (awarding

4  reasonable litigation expenses in addition to percentage fee award); *In re Countrywide Fin. Corp.*

5  *Secs. Litig*, 2011 U.S. Dist. LEXIS 126721, at *16-17 (C.D. Cal. Mar. 4, 2011) (same); *Gatz*,

6  2009 Del. Ch. LEXIS 100 at *1, 5 (same).

7  To date, Class Counsel have incurred a total of $1,194,415.20 in common litigation

8  expenses for which they seek reimbursement.  Sobol Decl., ¶¶ 60-61, Ex. C.  Such common

9  expenses were incurred by the Class Counsel firms collectively, and consist of:  the cost of

10  providing direct mail notice of class certification to the more than 1 million Class members, as

11  ordered by the Court, and related administrative costs of the Notice Administrator; expert costs;

12  costs of deposition and hearing transcripts; and mediation costs.  *See id.*  All of these common

13  expenses were reasonably necessary for the continued prosecution of this litigation, and were

14  incurred by Class Counsel for the benefit of the Class with no guarantee that they would be

15  reimbursed.  They should be reimbursed in full from the common fund.

16  These common expenses do *not* include significant additional costs that each of the six

17  Class Counsel firms incurred separately—related to items such as copying, postage, telephone,

18  legal research, travel, and filing fees.  Although these additional costs were reasonably incurred in

19  litigating this matter, Class Counsel does not seek separate reimbursement for them,[17] so as to not

20  unnecessarily burden the Court or, worse yet, create fodder for professional objectors who seek to

21  create a sideshow by dissecting every last expense.

22  **C.    The Requested Service Awards Are Reasonable and Appropriate Under the**
      **Circumstances.**

23

24  Class Counsel respectfully asks the Court to grant service awards from the common

25  Settlement Fund for the Class Representatives and the other named plaintiffs who participated in

26  this action.  *See Staton*, 327 F.3d at 977; *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958

27

28  _____
[17] Class Counsel may take these individual firm costs into consideration in allocating any fee award among counsel.

1    (9th Cir. 2009) (service awards "are fairly typical in class action cases.").  Such awards are

2    "intended to compensate class representatives for work done on behalf of the class [and] make up

3    for financial or reputational risk undertaken in bringing the action." *Rodriguez*, 563 F.3d at 958;

4    *Van Vranken*, 901 F.Supp. at 299.  The service awards requested here are well justified.

5           As described in their accompanying declarations, the Class Representatives devoted

6    considerable time and energy in representing the Class during the course of this litigation.

7    Among other things, they had their depositions taken by Chase and prepared for their depositions;

8    provided information, including sensitive personal information regarding their Chase accounts

9    and other finances; searched for and provided documents concerning their experiences with

10   Chase and other financial institutions in response to Chase's document requests; reviewed the

11   Master Complaint and other pleadings; worked with Class Counsel in responding to Chase's

12   multiple interrogatories and requests for admission; and consulted with Class Counsel about the

13   litigation and settlement negotiations.[18]  Their commitment is all the more remarkable given the

14   relatively modest size of their personal financial stakes in this case.  *See Van Vranken*, 901

15   F.Supp. at 299 ("In exchange for his participation, Van Vranken will not receive great personal

16   benefit.  He owns a moderately sized truck stop and his claim makes up only a tiny fraction of the

17   common fund.").

18          The requested $7,500 awards for the Class Representatives, and one plaintiff who was

19   deposed and extensively participated throughout the litigation,[19] are reasonable and consistent

20   with awards granted in the Ninth Circuit in similar circumstances.  *See, e.g., In re Ferrero Litig.*,

21   2012 U.S. Dist. LEXIS 94900, at *11 (S.D. Cal. 2012) (awarding service awards of $7,500 and

22   $10,000); *Cook v. Tiffany & Co.*, 2011 U.S. Dist. LEXIS 106230, at *10 (S.D. Cal. 2011)

23   (awarding service awards of $7,500); *Chavez v. WIS Holding Corp.*, 2010 U.S. Dist. LEXIS

24   56138, at *8 (S.D. Cal. 2010) (same).

25          The $1,000 service awards sought for the Related Action Plaintiffs are reasonable and

26

27   ---

[18] *See* Appendix of Class Representative Declarations in Support of Motion for Final Approval of
Class Settlement and Motion for Award of Attorneys' Fees and Expenses and for Service
28   Awards, filed herewith ("Class Rep Appendix") (declarations detailing efforts).
[19] *See* Class Rep Appendix, Tab. 5 (Moore Decl.)

justified.  The Related Action Plaintiffs not only agreed to be plaintiffs, thereby voluntarily lending their names to the litigation and stepping up to the plate, they also provided information that was used in drafting the complaints.  The requested awards are reasonable.

## IV.    CONCLUSION

For the foregoing reasons, Class Counsel respectfully requests that the Court award, from the common Settlement Fund, the following: attorneys' fees in the amount of $25 million, reimbursement of common litigation expenses in the amount of $1,194,415.20, and service awards as requested herein.  Class Counsel will provide the Court with a proposed order prior to the Fairness Hearing, which will address any objections or comments.

Dated:  September 7, 2012                Respectfully submitted,

                                         LIEFF CABRASER HEIMANN & BERNSTEIN, LLP


                                         By:_____/s/ Michael W. Sobol_____


                                         Elizabeth J. Cabraser
                                         Michael W. Sobol
                                         Roger N. Heller
                                         LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
                                         275 Battery Street, 29th Floor
                                         San Francisco, CA  94111-3336
                                         Telephone: (415) 956-1000
                                         Facsimile: (415) 956-1008

                                         James C. Sturdevant
                                         THE STURDEVANT LAW FIRM, P.C.
                                         354 Pine Street, Fourth Floor
                                         San Francisco, CA 94104
                                         Telephone: (415) 477-2410
                                         Facsimile: (415) 477-2420

                                         Oren S. Giskan
                                         GISKAN SOLOTAROFF ANDERSON
                                          & STEWART LLP
                                         11 Broadway, Suite 10004
                                         Telephone: (215) 847-8315
                                         Facsimile: (215) 964-9645

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Robert S. Green
GREEN & NOBLIN P.C.
700 Larkspur Landing Circle, Suite 275
Larkspur, CA 94939
Telephone: (415) 477-6700
Facsimile: (415) 477-6710

Eric H. Gibbs
Geoffrey A. Munroe
GIRARD GIBBS LLP
601 California Street, 14th Floor
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

Jeff Westerman
MILBERG LLP
One California Plaza
300 South Grand Avenue, Suite 3900
Los Angeles, CA 90071
Telephone: (213) 617-1200
Facsimile: (213) 617-1975

*Plaintiffs' Executive Committee*

1054537.3